Appeal No. 2013-1056

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

ANTICANCER, INC.

Plaintiff-Appellant,

v.

PFIZER, INC.,

Defendant-Appellee,

and

CROWN BIOSCIENCE, INC.,

Defendant-Appellee,

and

DOES 1-10

Defendants.

Appeal from the United States District Court for the Southern District
of California in Case No. 11-CV-0107, Judge Janis L. Sammartino

## PLAINTIFF-APPELLANT ANTICANCER, INC.'S OPENING BRIEF

Richard A. Clegg
Law Office of Richard Clegg
501 West Broadway, Suite 800
San Diego, CA 92101
619-400-4920 (Tel.)
Attorney for Plaintiff-Appellant AntiCancer, Inc.

## CERTIFICATE OF INTEREST

Counsel for the appellant AntiCancer, Inc., certifies the following:

1.  The full name of every party or amicus represented by me is:

AntiCancer, Inc.

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  None

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:  None

**4.**  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:  None

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES .......................................................1

STATEMENT OF JURISDICTION ..........................................................1

STATEMENT OF THE ISSUES ...............................................................2

STATEMENT OF THE CASE ..................................................................3

STATEMENT OF FACTS..........................................................................4

SUMMARY OF THE ARGUMENT .......................................................11

ARGUMENT AND STANDARDS OF REVIEW ..................................15

  A. STANDARDS OF REVIEW ..........................................................15

  B. ARGUMENT .................................................................................17

    I. The District Court Erred When It Granted Summary Judgment of
    Noninfringement Based Solely on AntiCancer's Preliminary Infringement
    Contentions. ...................................................................................17

    II. The Southern District's Patent Local Rules Violate FRCP 83, Because
    They Are Inconsistent with the Federal Rules of Civil Procedure In Cases
    Involving Accused Methods That Are Performed Secretly.............................25

    III. The District Judge Erred by Requiring AntiCancer to Pay Defendants'
    Legal Fees and Costs In Bringing Their Summary Judgment Motions, As A
    Conditional Sanction For Permitting AntiCancer to Supplement Its
    Infringement Contentions. ..........................................................28

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..............30

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 252 (1986) ......................................................................18

*Balsam Coffee Solutions Inc. v. Folgers Coffee Co.,*
2009 WL 4906860 (E.D. Tex. Dec. 9, 2009) ..........................................19

*Becton Dickinson & Co. v. C.R. Bard, Inc. ,*
922 F.2d 792 (Fed. Cir. 1990) ...............................................................18

*Bias v. Moynihan,*
508 F.3d 1212, 1223 (9th Cir. 2007) ......................................................16

*Biogenex Labs. v. Ventana Med. Sys.,*
2006 WL 2228940 (N.D. Cal. Aug. 3, 2006) ..........................................21

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990) ...............................................................................16

*Fink v. Gomez,*
239 F.d 989 (9th Cir. 2001) ...................................................................28

*Integrated Circuit Sys. v. Realtek Semiconductor Co.,*
308 F. Supp. 2d 1106 (N.D. Cal. 2004)...................................................21

*Jorgensen v. Cassiday,*
320 F.3d 906, 912 (9th Cir. 2003) ..........................................................16

*Linex Techs., Inc. v. Belkin Int'l, Inc.,*
628 F.Supp.2d 703 (E.D. Tex. 2008) ......................................................19

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,*
467 F.3d 1355 (Fed. Cir. 2006) .................................15, 20, 21, 22, 24, 25

*Petrolite Corp. v. Baker Hughes Inc.,*
96 F.3d 1423 (Fed. Cir. 1996) ...............................................................15

*Roadway Express, Inc. v. Piper,*
447 U.S. 752 (1980) ........................................................................28

*Stern v. U.S. Dist. Court for Dist. of Mass.,*
214 F.3d 4 (1st Cir. 2000) .....................................................15


## STATUTES

28 U.S.C. §1295(a) ...........................................................................1

28 U.S.C. §1338 ...............................................................................1

28 U.S.C. §1927 .............................................................................28


## RULES

Fed. R. Civ. P. 11 ..........................................................................28

Fed. R. Civ. P. 37 ..........................................................................28

Fed. R. Civ. P. 56 ..........................................................................17

Fed. R. Civ. P. 83 ..........................................................................25

Patent Local Rule 2.1(a)(2) .............................................................22

Patent Local Rule 3.1 .....................................2, 8, 9, 12, 13, 17, 20, 26

## STATEMENT OF RELATED CASES

Counsel for the appellant AntiCancer, Inc., certifies the following:

1.    No appeal in or from the same civil action or proceeding in the lower court or body was previously before this or any other appellate court.

2.    There is no case known to counsel to be pending in this or any other court that will directly affect or be directly affected by this court's decision in the pending appeal.

## STATEMENT OF JURISDICTION

The United States District Court for the Southern District of California had subject matter jurisdiction over the action below pursuant to 28 U.S.C. §1338, because the action was a civil action for patent infringement, which arose under the United States Patent Act, Title 35 of the United States Code.

The Court of Appeals for the Federal Circuit has exclusive jurisdiction over this appeal pursuant to 28 U.S.C. §1295(a), because it is an appeal from a final decision of a district court of the United States, in a civil action arising under the United States Patent Act, Title 35 of the United States Code.

This appeal is from the June 1 and July 2, 2012,[1] orders by the district judge granting the defendants' motion for summary judgment of noninfringement, based solely on AntiCancer's purportedly deficient Preliminary Infringement Contentions

---

[1]    The June 1, 2012, and July 2, 2012, orders are appended to this brief, as Addendum 1 and Addendum 2.

("PICs"). [A1-16; A17-18].  However, the summary judgment was not yet final and reviewable, because there were still some contract counts pending in the case. Therefore, on September 26, 2012, the parties filed a Joint Motion and Stipulation of Dismissal, With Prejudice, to dismiss the remaining counts. [A21-24].  On September 28, 2012, the district judge granted the parties' joint motion to dismiss the remaining counts, making its previous entry of summary judgment <u>final</u> and reviewable.  [A25].  AntiCancer filed its timely Notice of Appeal on October 26, 2012.  [A26-49].

## STATEMENT OF THE ISSUES

1.    Whether the District Court erred in granting summary judgment of non-infringement in the defendants' favor, based solely on AntiCancer's Preliminary Infringement Contentions.

2.    Whether the Patent Local Rules of the Southern District of California, including Patent Local Rule 3.1, conflict with the Federal Rules of Civil Procedure in a case in which the asserted claims are directed to methods and the full details of the accused methods are known to a defendant but not to the plaintiff.

3.    Whether the District Court abused its discretion by conditioning AntiCancer's ability to supplement its Preliminary Infringement Contentions on AntiCancer agreeing to pay certain legal fees and costs of the defendants.

# STATEMENT OF THE CASE

This is an appeal from the summary judgment of non-infringement that was entered by the Honorable Janis L. Sammartino of the United States District Court for the Southern District of California. [A1-16; A17-18].

On March 12, 2012, Defendant Pfizer, Inc. ("Pfizer") filed a Motion for Summary Judgment of Noninfringement Based on Defective Infringement Contentions. [A235-237]. On March 28, 2012, defendant Crown Biosciences, Inc. ("CrownBio") filed a Notice of Joinder in the motion. [A341-343].

On June 1, 2012, Judge Sammartino entered her first order on Pfizer's motion. [A1-16]. She ruled that AntiCancer's Preliminary Infringement Contentions ("PICs") were deficient. [A13]. She conditionally denied Pfizer's motion, however, to give AntiCancer an opportunity to serve supplemental PICs. [A15-16]. But that opportunity came with a price: AntiCancer could supplement its PICs, no later than 28-days after her ruling,[2] *only* if it would agree to pay the defendants' costs and attorney fees incurred in bringing the summary judgment motion. [A15-16].

---

[2]    Under the June 1 Order, AntiCancer's supplemental PICs would have been due only fourteen (14) days after the defendants' had filed their bills of fees and costs, which were required to be filed no later than fourteen (14) days after the Court's ruling.

On June 29, 2012, AntiCancer filed its "Notice of Objections to Court's Conditions for Amendment," objecting to the Court's conditions for allowing AntiCancer to supplement its original PICs. [A525-527]

On July 2, 2012, Judge Sammartino granted the motion for summary judgment of noninfringement against AntiCancer and in favor of the defendants, based solely on AntiCancer's original PICs. [A17-18].

Judge Sammartino's summary judgment was not yet final and reviewable because there were still some contract counts pending in the case. Therefore, on September 26, 2012, the parties filed a Joint Motion and Stipulation of Dismissal, With Prejudice, to dismiss the remaining counts. [A21-24]. On September 28, 2012, Judge Sammartino granted the parties' joint motion to dismiss the remaining counts. [A25]. AntiCancer filed its Notice of Appeal on October 26, 2012. [A26-49].

## STATEMENT OF FACTS

AntiCancer is a San Diego biotech company founded more than twenty-five years ago. It is internationally recognized for its innovations in preclinical research using live animals. Among AntiCancer's technologies are patented methods for using proteins that were derived from a species of green-glowing jellyfish called *Aequorea victoria*. These proteins fluoresce brightly under certain conditions, and although they may be modified to fluoresce in numerous colors, they are generally

4

referred to as "green fluorescent protein" or "GFP." AntiCancer's methods enable researchers to genetically modify cells, such as cancer cells, to express GFP. Researchers can then implant the modified cells into living mice. The activity of various genes, or the spread of the cancer cells, can then be tracked by viewing and recording the florescent light emitted by the modified cells inside the living mice.

U.S. Patent No. 6,649,159 ("the '159 Patent"), one of the two patents-in-suit, relates to the imaging of gene expression using GFP linked to the promoters of genes. Its methods include noninvasive means of recording and analyzing gene expression in animals and humans, and can be used to evaluate drugs for treating cancer and other diseases. *See generally* '159 Patent [A66-81].

U.S. Patent No. Re 39,337 ("the RE '337 Patent"), the other patent-in-suit, covers a process pioneered by AntiCancer, known as "surgical orthotopic implantation." With the technology of the RE '337 Patent, researchers can take fragments of human tumors from a human organ and implant them into the corresponding organ of a living mouse. The researchers can then conduct drug discovery and drug efficacy experiments. The RE '337 Patent's method can be used with AntiCancer's GFP-related imaging technology. *See generally* RE '337 Patent [A58-65].

The details of AntiCancer's patented method are not really at issue here. What is important to recognize is that AntiCancer methods are, by their very nature,

methods that would normally be practiced secretly and confidentially, behind a drug company's closed laboratory doors, as part of the company's confidential research and development activities.

AntiCancer's original Complaint, filed on January 19, 2011, did not include any patent infringement claims, and did not include any claims against CrownBio. Rather, the original Complaint asserted claims for (1) breach of contract; (2) breach of the duty of good faith and fair dealing; and (3) unjust enrichment, against only Pfizer. [A610-623].

After it had filed its original Complaint, AntiCancer discovered several technical papers that had been published by Pfizer and CrownBio, regarding their use of GFP. [A135-136; A82-105]. Although AntiCancer could not know all the details of Pfizer's or CrownBio's internal research activities, the published scientific papers made it possible for AntiCancer to draw some reasonable inferences about what the defendants were doing in their laboratories and how they were infringing AntiCancer's patents. [A135-136; A82-105].

On November 9, 2011, AntiCancer filed its First Amended Complaint to add CrownBio as a defendant and to add patent infringement claims against both Pfizer and CrownBio. [A128-193]. Specifically, the First Amended Complaint added Count IV (against Pfizer only), for infringement of the '159 Patent, and Count V

(against both Pfizer and CrownBio), for infringement of the RE '337 Patent.[3] [A135-137].

The First Amended Complaint met all the pleading requirements of the Federal Rules of Civil Procedure.  Both defendants filed an Answer in response to the Complaint, without filing any motion to dismiss or strike the First Amended Complaint.  At that point, the patent infringement issues in the case had been fully framed by the First Amended Complaint and by the defendants' Answers to the First Amended Complaint.  AntiCancer had met all the requirements of the Federal Rules to enter the discovery phase on its newly asserted patent infringement claims and, eventually, to have its infringement claims be decided *on the merits*.

The Southern District's Patent Local Rules and the district court's scheduling orders in the case, however, denied AntiCancer any opportunity to conduct discovery or to have its claims be decided on the merits.  It all came down to a matter of timing, which was dictated by the district's Patent Local Rules and by the court's scheduling orders in the case.

---

[3]    In the First Amended Complaint, AntiCancer also asserted the patent from which the RE '337 Patent was reissued (U.S. Patent No. 5,569,812 ("the '812 Patent)).  [A136-137].  Judge Sammartino granted CrownBio's motion for judgment on the pleadings, based on the fact that AntiCancer had surrendered the '812 Patent when the RE '337 Patent was issued.  [A54 (ECF No. 54); A55 (ECF No. 63].  AntiCancer is not appealing that ruling and is not attempting to enforce the '812 Patent.

On September 21, 2011, before AntiCancer had even filed its First Amended Complaint with its patent infringement claims, the magistrate judge assigned to the case (Magistrate Judge Ruben B. Brooks) convened a telephonic settlement conference. [A52 (ECF No. 12)]. In a Minute Order entered that same day, Magistrate Judge Brooks extended the deadline for AntiCancer to seek leave to amend its complaint to add CrownBio and to assert AntiCancer's patent infringement claims against Pfizer and CrownBio. [A52]. That same day, Magistrate Judge Brooks also entered a "Case Management Conference ORDER Regulating Discovery and Other Pretrial Proceedings." [A52 (ECF No. 13); A113-127].

Although AntiCancer had not yet even *filed* the First Amended Complaint with its infringement claims, the Case Management Conference Order required AntiCancer to serve its Preliminary Infringement Contentions by November 14, 2011 [A113-114], just 23-days later, which turned out to be just five (5) days after AntiCancer filed its First Amended Complaint with its patent infringement claims.[4] [A128-193].

---

[4]    AntiCancer filed its "Motion to Amend Complaint to Join Crown Bioscience Inc. as Defendant" on October 4, 2011. Pfizer filed a Non-Opposition to AntiCancer's motion on November 3, 2011. The Court granted AntiCancer's Motion to Amend Complaint to Join Crown Bioscience Inc. as Defendant on November 8, 2011. AntiCancer filed its First Amended Complaint on November 9, 2011. It was required to serve its PICs only *five days later*, on November 14,

At this point, the path of the litigation had varied somewhat from the path that is normally contemplated under the district's Civil Local Rules and its Patent Local Rules.  The Early Neutral Evaluation (ENE) referenced in Patent Local Rule 3.1 had already been held on June 24, 2011, several months before AntiCancer filed its patent infringement claims.  [A52 (ECF No. 10)].  A second ENE had been held on September 21, 2011, the same day Magistrate Judge Brooks extended the deadline for AntiCancer to seek leave to amend its original Complaint.  [A52 (ECF No. 14)].  No ENE was held after AntiCancer filed its First Amended Complaint with its patent infringement claims against Pfizer and CrownBio, which normally would have dictated the due date for AntiCancer's PICs. However, the case schedule that Magistrate Judge Brooks entered was consistent with the district's local rules, because it required AntiCancer to serve its PICs very soon after it had filed the First Amended Complaint with its infringement claims.

The big problem for AntiCancer was that the Court's September 21, 2012, Case Management Conference Order and the district's Patent Local Rule 3.1 required AntiCancer to serve detailed PICs at a time when AntiCancer could not possibly have taken any discovery to support its infringement claims and to learn the actual details of the defendants' internal research activities.   Moreover, under Patent Local Rule 3.6, AntiCancer's "Preliminary" infringement contentions were

_____

2011, to comply with Magistrate Judge Brooks' September 21 Case Management Order.

deemed to be its "Final" infringement contentions, subject only to a limited right to amend the contentions based on any future claim construction order entered by the Court. [*See generally* Patent Local Rules [A106-112] and Patent Local Rule 3.1 [A108]].

When AntiCancer could not provide a detailed description of what the defendants had actually done in their laboratories to infringe its patents so early in the infringement case, Pfizer filed its motion for summary judgment of noninfringement, based solely on AntiCancer's supposedly "deficient" PICs. [A235-237].  CrownBio joined in the motion.  [A341-343].

As noted above, the Court ruled that AntiCancer's PICs were deficient, in its June 1, 2011 Order.   [A1-16].   The Court, however, denied the motion for summary judgment to give AntiCancer an opportunity to supplement its PICs.  But, that opportunity came with a condition that amounted to a sanction:  AntiCancer would only be allowed to supplement its PICs if AntiCancer would agree to pay the costs and attorney's fees the defendants had incurred in bringing their summary judgment motion.  [A15-16].

Moreover, the June 1 ruling did not solve AntiCancer's underlying problem, because it did not give AntiCancer any time to conduct discovery to learn the full details of the defendants' internal research activities.   Even if AntiCancer had chosen to supplement its PICs and pay the defendants' attorneys fees, its PICs

would have been due only fourteen (14) days after the defendants' had filed their bills of fees and costs, which were required to be filed no later than fourteen (14) days after the Jun 1 ruling.  [A15-16].

On June 29, 2012, AntiCancer file its objection to the Court's conditions for allowing AntiCancer to supplement its original PICs.  [A525-527]

On July 2, 2012, Judge Sammartino adopted her June 1 ruling and entered summary judgment of noninfringement against AntiCancer and in favor of Pfizer and CrownBio. [A17-18].

## SUMMARY OF THE ARGUMENT

As discussed above, the patents-in-suit are directed to *methods* that are normally performed secretly, behind closed laboratories doors.  In such cases, there is no accused product that a patent owner can obtain and disassemble to establish the infringement.  There is no accused product that a patent owner can photograph and then paste the photographs into claim charts.  Where an accused method is performed secretly and behind closed doors, the patent owner is at a distinct disadvantage.  The patent owner can only try to develop a basic understanding of what the accused infringer is *probably* doing when it performs its accused method in a laboratory.  In such circumstances, the patent owner needs to have at least some opportunity to conduct discovery, before it can provide a detailed explanation of what the accused infringer is *actually* doing.

In this case, the district court erred in three separate respects when it granted summary judgment of noninfringement against AntiCancer and in favor of the defendants Pfizer and CrownBio, based solely on AntiCancer's Preliminary Infringement Contentions (referred to herein as "PICs").

First, the district court erred when it granted summary judgment of noninfringement based on its finding that AntiCancer's PICs failed to comply with the district's Patent Local Rule 3.1.

The issue of the sufficiency of AntiCancer's PICs was not properly resolved through summary judgment, because there was no real decision on the merits, and because there were most certainly factual disputes about the defendants' internal research activities.

Moreover, AntiCancer's PICs were not "insufficient" under the district's Patent Local Rules. Patent L.R. 3.1 requires a plaintiff to disclose a great deal of information about its infringement contentions. But the rule does not require a party to disclose information that is ***unknown*** to it. The rule only requires a plaintiff to disclose, "separately, for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") ***of which the party is aware***." The identification must only be "***as specific as possible***." [A108](emphasis added).

AntiCancer's infringement theories were as crystallized as they could be under the circumstances, five (5) days after it had filed its First Amended Complaint with its infringement claims. Its "theory of the case" was clear from its PICs: The defendants had infringed AntiCancer's patents by performing the patented methods internally, as part of the defendants' confidential R&D activities, as generally described *or suggested* by the scientific papers that were identified and quoted in the PICs. [A82-105]. The PICs made clear that AntiCancer would be able to provide further details after it had taken discovery, and AntiCancer reserved the right to supplement its PICs after taking discovery. [A85].

Second, the district court erred by giving effect to the Patent Local Rules, precisely as they are written. As shown below, in cases like this case (in which method claims are asserted against accused methods that are performed internally and secretly), those aspects of the Patent Local Rules are fundamentally inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure.

In patent infringement cases such as this case, in which method claims are being asserted against accused processes that are normally performed secretly, the Patent Local Rules create an insurmountable barrier to the substantive adjudication of a plaintiff's claims. The Patent Local Rules and, in particular, Patent Local Rule 3.1, require a party to serve its "Preliminary" infringement contentions (which are

deemed to be its "Final" infringement contentions) within fourteen (14) days after the Early Neutral Evaluation ("ENE") at the beginning of the case.[5]  [A108].

Thus, under the Southern District's Patent Local Rules, the PICs are due at a time when the plaintiff could not possibly have had any chance to conduct discovery regarding the defendants' internal research activities.  In this case, the district's Patent Local Rules -- rather than the Federal Rules of Civil Procedure -- actually dictated and determined the outcome of the case, on purely procedural grounds that had *nothing* to do with the actual substantive merits of AntiCancer's infringement claims.

Finally, the district court erred by imposing an improper condition, which amounted to an improper sanction against AntiCancer, as a condition for permitting AntiCancer to supplement its PICs.  The "sanction" was that AntiCancer would only be permitted to supplement its PIC's amounted if it would agree to pay the defendants' costs and legal fees incurred in filing their motion for summary judgment. The district court did not make any findings that were sufficient to support such a conditional award of sanctions.  And there is no statue or rule that empowered the district judge to enter such an award of sanctions against AntiCancer.

---

[5]    As discussed above, Magistrate Judge Brooks' September 21, 2011, Case Management Order required AntiCancer to serve its PICs only five (5) days after it filed its First Amended Complaint with its infringement claims.

If the panel agrees with AntiCancer's position on any of these issues, the panel should reverse the district court's award of summary judgment and remand the case for further proceedings. Further, the panel should specify that AntiCancer should have an opportunity to supplement its PICs *after* it has had an opportunity to take at least some discovery from the defendants.

## ARGUMENT AND STANDARDS OF REVIEW

The district court erred in three separate respects when it granted summary judgment of noninfringement against AntiCancer and in favor of the defendants Pfizer and CrownBio.

## A.    STANDARDS OF REVIEW

The standards of review applicable to the three issues presented in this appeal are as follows:

For the first issue, this Court reviews a grant of summary judgment de novo, without deference to the district court. *Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425 (Fed. Cir. 1996) ("We review a district court's grant of summary judgment de novo."); *Glaverbel Societe Anonyme & Fosbel, Inc. v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1559 (Fed. Cir. 1995) ("We give plenary review to whether the issue was appropriately disposed of by summary judgment").

For the second issue, the *validity* of a local rule and whether it violates Fed. R. Civ. P. 83 is an issue of law that this Court should review *de novo*. *See e.g.*,

*Stern v. U.S. Dist. Court for Dist. of Mass.*, 214 F.3d 4 (1st Cir. 2000)("The core issue presented by this appeal is whether the district court had the power to adopt Local Rule 3.8(f). This question of law engenders *de novo* review"); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1364 (Fed. Cir. 2006)("Turning to the merits of O2 Micro's claim, we do not doubt our power in the appropriate circumstance to refuse to enforce a local rule that unduly limits discovery in patent cases. To be valid, local rules must be consistent with both acts of Congress and the Federal Rules of Civil Procedure . . . . A local rule need not be directly contradictory to a federal rule to be invalid; a local rule that is inconsistent with the purposes of a federal rule is also invalid."). Broad deference is owed to the district court's interpretation of its local rules. The district court's compliance with local rules is reviewed for an abuse of discretion. *See Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007); *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ("district court has considerable latitude in . . . enforcing local rules").

For the third issue, a court's decision to impose sanctions is reviewed for an abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003). Sanctions pursuant to local court rules are also reviewed for an abuse of discretion. *Baldwin Hardware Corp. v. Franksu Enterprise Corp.*, 78 F.3d 550, 561 (Fed. Cir. 1996).

**B.    ARGUMENT**

The Patent Local Rules of the Southern District of California work well in most patent cases.  In this case, however, they broke down badly.  They broke down in a way that deprived the patent owner – AntiCancer – of any opportunity to conduct discovery and to have its patent infringement claims be decided on the merits.  They broke down in a way that jeopardizes the ability of method patent owners to enforce their lawful patent rights against certain types of infringers.  They broke down in a way that rewards accused infringers who practice a patented method internally, secretly and behind closed doors.  And they broke down in a way that could happen again in other cases with similar facts, if the district's Patent Local Rules are not fixed.

The district court erred in three separate respects when it granted summary judgment of noninfringement in favor of the defendants Pfizer and CrownBio.

**I.    The District Court Erred When It Granted Summary Judgment of Noninfringement Based Solely on AntiCancer's Preliminary Infringement Contentions.**

First, the district court erred when it granted summary judgment on the basis that AntiCancer's Preliminary Infringement Contentions ("PICs") failed to comply with the district's Patent Local Rule 3.1.

### a.    The Sufficiency of AntiCancer's Preliminary Infringement Contentions Was Not The Proper Subject of a Summary Judgment Motion.

As an initial matter, AntiCancer's position is that the issue of the sufficiency of AntiCancer's PICs was not properly decided on the basis of a summary judgment motion, but should have been raised through a motion to compel or a motion to strike.  The issue was purely procedural, and the district court never actually addressed the full merits of AntiCancer's infringement claims in its summary judgment ruling.

Fed. R. Civ. P. 56 provides the statutory basis for summary judgment.  Rule 56(c) states, in relevant part (emphasis added):

> The judgment sought shall be rendered forthwith if ***the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any***, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

The purpose of summary judgment is to avoid an unnecessary trial by enabling an expeditious procedure whereby, for issues on which there is *no material factual dispute*, the court can decide ***the controversy*** by applying the law to the undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)(emphasis added).

Summary judgment on the issue of infringement is appropriate in many patent cases. *See*, *e.g.*, *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 795 (Fed. Cir. 1990)("As in other cases, the grant of summary judgment under Fed. R. Civ. P. 56 is appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.").

In this case, however, there were no "depositions, answers to interrogatories, and admissions on file," because no discovery had been taken on the infringement issues when AntiCancer served its PICs. There was no claim construction, or a comparison of the properly construed claims to the accused methods. There was simply one side (the defendants) that had all the information about their secret accused methods, and the other side (AntiCancer) that had only limited information. There might have been disputed factual issues regarding the defendants' internal research activities, but AntiCancer never had any opportunity to develop those facts through discovery.

Judge Sammartino's summary judgment ruling also did not "decide the controversy" that was actually at issue in the case (i.e., whether the defendants had actually infringed AntiCancer's patents). *Anderson*, 477 U.S. at 252. The Court merely decided a procedural dispute over ACI's compliance with the district's Patent Local Rules.

Patent local rules are not meant to require a party to prove its case of infringement or provide a forum for litigation of the substantive issues. *See Balsam Coffee Solutions Inc. v. Folgers Coffee Co.*, 2009 WL 4906860, at *3 n.2 (E.D. Tex. Dec. 9, 2009); *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F.Supp.2d 703, 713 (E.D. Tex. 2008). "[T]hey are merely designed to streamline the discovery process." *Linex Techs.*, 628 F.Supp.2d at 713 (citing *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F.Supp.2d 754, 755 (E.D. Tex. 2004).

By granting summary judgment on the substantive issue of infringement, Judge Sammartino improperly applied the Southern District of California's Patent Local Rules in a way that required AntiCancer to ***prove its case of infringement***, only five (5) days after it had asserted its infringement claims, and before it had any chance to conduct discovery.

### b.    AntiCancer's Preliminary Infringement Contentions Were *Not* Insufficient Under the Patent Local Rules.

The district court's summary judgment ruling was based ***solely*** on its determination that AntiCancer's PICs were deficient under the Patent Local Rules. [A1-16]. But AntiCancer's PICs were ***not*** deficient. AntiCancer's PICs were timely, having been served only *five (5) days* after AntiCancer first filed its infringement claims, on the date specified in the September 21, 2011, Case Management Order. [A113-114]. The PICs identified the specific patent claims that AntiCancer was asserting against the defendants. [A84-85]. And they

disclosed as much information as was available to AntiCancer at the time regarding the details of the defendants' internal research practices, in as much detail as was possible at the time. [A85].

Patent L.R. 3.1 requires a plaintiff to disclose a great deal of information about its infringement contentions, but the rule does not require a party to disclose information that it ***does not know***.  Rather, the rule requires a plaintiff to disclose, separately for each asserted claim, "each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of which the party is ***aware***.  This identification must be as ***specific as possible***." [A108] (emphasis added).

In *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006), this Court addressed issues concerning the interpretation and application of nearly identical Patent Local Rules in the Northern District of California.  Although the facts in the *02 Micro* case were very different from the facts in this case,[6] this Court's remarks regarding the application and interpretation

---

[6]    In *O2 Micro*, the patent-in-suit was directed to an apparatus (a "converter circuit for delivering power to a CCFL load."), rather than to a method.  467 F.3d at 1358.  O2 Micro served its PICs and, unlike AntiCancer in this case, was able to conduct substantial discovery.  *Id*. at 1361-62.  The court conducted a claim construction hearing.  *Id*. at 1360.  After the discovery period had already closed, O2 Micro moved for leave to amend its PICs, but the Court denied the motion, finding that it had not been diligent in trying to amend its PICs.  *Id*. at 1361-62.  MPS, the defendant, then moved for summary judgment based on the substantive infringement theory that had been fully set forth in O2 Micro's PICs.  *Id*. at 1362.

of the Northern District of California's nearly identical Patent Local Rules are informative and supportive of AntiCancer's position in this appeal.

First, the Court recognized that patent local rules could have a significant impact on a patent owner's ability to enforce its lawful patent rights. In discussing whether the law of the Ninth Circuit or the Federal Circuit should control a determination regarding the validity of Patent Local Rules, the Court noted as follows:

> [T]he local rules in question are not only unique to patent cases but also are likely to directly affect the substantive patent law theories that may be presented at trial, being designed specifically to "require parties to crystallize their theories of the case early in the litigation" so as to "prevent the 'shifting sands' approach to claim construction. Under such circumstances we conclude that issues concerning the validity and interpretation of such local rules are "intimately involved in the substance of enforcement of the patent right."

*O2 Micro,* 467 F.3d at 1364 (emphasis added)(internal citations omitted).

In *O2 Micro*, the Court cited to earlier decisions from district judges in the Northern District of California regarding the purpose of their patent local rules, including *Integrated Circuit Sys. v. Realtek Semiconductor Co., 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004)* ("The purpose of the Patent Local Rules is to place the parties on an orderly pretrial track which will produce a ruling on claim

---

The district court granted summary judgment in MPS's favor and the appeal followed. The facts in this case are very different.

construction approximately a year after the complaint is filed."); and *Biogenex Labs. v. Ventana Med. Sys., "2006 WL 2228940, at \*4 (N.D. Cal. Aug. 3, 2006)* (considering new theory despite non-compliance with patent local rules because "the Court is extremely reluctant to dispose of substantive infringement claims based upon procedural defects"). *O2 Micro*, 467 F.3d at 1363.

Here, there was no concern about AntiCancer adopting a "shifting sands" approach to its infringement theories or to the claim construction issues. AntiCancer's PICs (and its First Amended Complaint) were actually very specific and detailed in most respects. [A82-105; A128-193]. Judge Sammartino found them to be deficient with respect to only three claim elements [A1-16, A8-12] – all of which AntiCancer could have filled in by taking discovery regarding the defendants' internal research activities.

Nor did AntiCancer's PICs jeopardize the "orderly pretrial track which will produce a ruling on claim construction" within nine (9) months, the time contemplated by the Southern District's Patent Local Rules. The claim construction hearing was set for August 23, 2012, almost exactly nine (9) months after the defendants filed their Answers to the First Amended Complaint.[7] [A229].

---

[7] The Southern District's Patent Local Rule 2.1(a)(2) expressly contemplates a claim construction hearing nine (9) months after the defendants' first appearance. [A106]. Defendants had already "appeared" in the case long before AntiCancer filed its First Amended Complaint, but they filed their Answers to the First

There was plenty of time for AntiCancer to conduct discovery to learn the actual details of the defendants' internal research activities and to amend its PICs to include those details.

When AntiCancer was required to serve its PICs at the start of the patent infringement case, five (5) days after it filed the First Amended Complaint, its infringement theories were as crystallized as they could be *at that time*. AntiCancer disclosed the information about the accused process of which it was actually "aware" and its identification of the steps in the accused process was as "detailed as possible," under the circumstances.

AntiCancer's "theory of the case" was clear from the PICs: AntiCancer's "theory of the case" was that the defendants had infringed AntiCancer's patents by using the patented methods, internally, as generally described in, or suggested by, their published scientific papers. Indeed, for most of the claim elements in its claim charts, AntiCancer quoted directly from the scientific papers. [A82-105].

 AntiCancer also made clear that its contentions were preliminary and subject to change based on discovery, stating, "[T]he attached Asserted Claims and Preliminary Contentions Charts . . . identify *to the extent possible based on information currently in AntiCancer's possession* where each element of each

---

Amended Complaint in late November of 2011 [A53], almost exactly nine months before the date set for the claim construction hearing

asserted claim is found within each accused instrumentality of which AntiCancer is aware." [A84](emphasis added).

In short, AntiCancer disclosed as much information as it could about the details of the defendants' accused processes. It complied with all the other requirements of Patent L.R. 3.1. Judge Sammartino simply erred in her application of the Patent Local Rules to the facts of the case and erred by granting summary judgment of noninfringement.

## II. The Southern District's Patent Local Rules Violate FRCP 83, Because They Are Inconsistent with the Federal Rules of Civil Procedure In Cases Involving Accused Methods That Are Performed Secretly.

The district court also erred by applying certain aspects of the Patent Local Rules that are invalid when applied exactly as they are written. They are invalid because they are fundamentally inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure, at least in cases involving method claims asserted against an accused process that is performed secretly, behind closed doors.

In its *O2 Micro* decision, this Court stated as follows:

> Turning to the merits of O2 Micro's claim, *we do not doubt our power in the appropriate circumstance to refuse to enforce a local rule that unduly limits discovery in patent cases*. To be valid, local rules must be consistent with both acts of Congress and the Federal Rules of Civil Procedure. *See 28 US.C. §2071(a)(2000); Fed. R. Civ. P. 83 (a)(1)*. A local rule need not be directly contradictory to a federal rule to be invalid; a local rule that is inconsistent with the purposes of a federal rule is also invalid. [internal citation omitted]. ***It is foreseeable that a local rule could conflict with the spirit, if not the***

*letter, of the broad discovery regime under the Federal Rules of Civil Procedure, especially given the particular importance of discovery in complex patent cases*.

*O2 Micro*, 467 F.3d at 1365 (emphasis added).

In this case, the Southern District of California's Patent Local Rules directly "conflict with the spirit, if not the letter, of the broad discovery regime under the Federal Rules of Civil Procedure, especially given the particular importance of discovery in complex patent cases."

Fed. R. Civ. P. 83 prohibits district courts from enacting local rules that are inconsistent with federal statutes or rules, including the Federal Rules of Civil Procedure. Rule 83(a)(1) provides as follows:

Rule 83.  Rules by District Courts; Judge's Directives

(a) LOCAL RULES.

(1) *In General.* After giving public notice and an opportunity for comment, a district court, acting by a majority of its district judges, may adopt and amend rules governing its practice. A local rule must be consistent with—but not duplicate—federal statutes and rules adopted under 28 U.S.C. §§2072 and 2075, and must conform to any uniform numbering system prescribed by the Judicial Conference of the United States.

The Southern District's Patent Local Rules are inconsistent with the Federal Rules of Civil Procedures because, in cases such as this case, the Patent Local Rules can actually *dictate and determine* the outcome of this case, on *purely procedural grounds* that are *not available* under the Federal Rules of Civil Procedure.

Indeed, the Patent Local Rules can dictate the outcome in such cases (1) even if the plaintiff met all of the pleading requirements of the Federal Rules of Civil Procedure; (2) even if the defendants answered the complaint; and (3) even if the issues in the case were fully defined and framed through the core pleadings. AntiCancer submits that, once the issues have been defined and framed through the core pleadings, the Federal Rules support the parties' broad right to conduct discovery before their claims and defenses are decided on the merits.

Patent Local Rule 3.1, however, creates an insurmountable barrier to the substantive adjudication of a plaintiff's claims, in cases such as this case (with method claims asserted against secret methods). In particular, Patent L.R. 3.1 requires a plaintiff to serve its Preliminary Infringement Contentions within fourteen (14) days after the initial Case Management Conference, at a time when the plaintiff could not possibly have had any chance to conduct discovery regarding a defendants' secret activities. Nonetheless, that is what the rule requires.

Under Judge Sammartino's interpretation of Patent L.R. 3.1, if a plaintiff in a case such as this case is *unable* to provide sufficiently detailed Preliminary Infringement Contentions ("PICs") in the early stages of the litigation, a defendant can obtain summary judgment of noninfringement, based *solely* on the supposedly "deficient" PICs that are required to be served under the Patent Local Rules. Such

a summary judgment ruling would have nothing to do with the actual merits of the case; it would be made purely on procedural grounds.

The same thing that happened to AntiCancer in this case could easily happen in a different case with different parties and a different method patent.  This is a serious problem for the owners of method patents and for the enforcement of method claims, when the accused infringer is practicing its method secretly, or when the details of its activities are unknown to the patent owner.

### III. The District Judge Erred by Requiring AntiCancer to Pay Defendants' Legal Fees and Costs In Bringing Their Summary Judgment Motions, As A Conditional Sanction For Permitting AntiCancer to Supplement Its Infringement Contentions.

Finally, the district court erred by imposing an improper monetary sanction against AntiCancer, as a condition for permitting AntiCancer to supplement its PICs.  There was no statute or rule that could have empowered the district judge to impose any sanction against AntiCancer, and the district judge never made any factual findings that would support such a sanction against AntiCancer.

The district court's "condition" was that AntiCancer would only be permitted to supplement its PIC's if it would agree to pay the defendants' costs and legal fees incurred in filing their motion for summary judgment.  This was a sanction, pure and simple. Imposing this sanction as a condition for permitting AntiCancer to supplement its PICs was an abuse of the district court's discretion.

There was not any statute or rule that would have authorized such a sanction. And no findings were made that would support such a sanction against AntiCancer.

Three are three primary sources of authority that enable district courts to sanction parties or their lawyers for improper conduct, including: (1) Fed. R. Civ. P. 11, which applies to signed writings filed with the court; (2) 28 U.S.C. §1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings; and (3) the court's inherent power. *Fink v. Gomez*, 239 F.d 989 (9th Cir. 2001). In this case, there was never any request for sanctions under Rule 11 or under 28 U.S.C. §1927.

With respect the district court's "inherent powers," the U.S. Supreme Court has held that it is improper to order sanctions under the court's "inherent power" unless there was "willful disobedience of a court order ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766 (1980). AntiCancer committed no such acts and the district judge made no findings that would support such a sanction.

Fed. R. Civ. P. 37 authorizes a district court to sanction a party for violating an existing discovery order. However, there was never any such discovery order or violation in this case. Neither defendant filed any motion to compel supplementation of AntiCancer's PICs, so AntiCancer was never ordered to comply with any aspect of the Patent Local Rules. Magistrate Judge Brooks'

September 21, 2011, "Case Management Conference ORDER Regulating Discovery and Other Pretrial Proceedings" set a deadline for AntiCancer to comply with Patent L.R. 3.1, and AntiCancer met that deadline.  As discussed above, AntiCancer's PICs complied with Patent L.R. 3.1 when they were served.

In short, the district court imposed an improper sanction against AntiCancer, without proper authority and without making adequate findings of fact to support any such sanction.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

If the panel agrees with AntiCancer's position on any of the three issues AntiCancer has raised on appeal, the panel should reverse the district court's award of summary judgment and remand the case for further proceedings.  Further, the panel should order that AntiCancer should have an opportunity to supplement its PICs *after* it has had an opportunity to take at least some discovery from the defendants.

Respectfully submitted:

/s/ Richard A. Clegg

Law Office of Richard Clegg
501 West Broadway, Suite 800
San Diego, CA 92101
619-400-4020 (tel.)
Attorney for Plaintiff-Appellant AntiCancer, Inc.

## **JUDGMENT, ORDER OR DECISION**

The District Court's June 1, 2012 (Addendum 1) and

July 2, 2012 (Addendum 2) Summary Judgment

Orders are attached beginning on the next page

ADDENDUM 1

(June 1, 2012, Summary Judgment Ruling)

1

2

3

4

5

6

7            **UNITED STATES DISTRICT COURT**

8           **SOUTHERN DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| 10 ANTICANCER, INC. a California corporation, | CASE NO. 11CV107 JLS (RBB) |
| 11 Plaintiff, | **ORDER (1) GRANTING IN PART AND DENYING IN PART** |
| 12 vs. | **MOTION FOR SUMMARY JUDGMENT OF** |
| 13 | **NONINFRINGEMENT BASED ON DEFECTIVE INFRINGEMENT** |
| 14 | **CONTENTIONS; (2) STAYING ALL PENDING DEADLINES IN** |
| 15 PFIZER INC., a Delaware corporation, CROWN BIOSCIENCE, INC., a California corporation, and DOES 1–50, | **THE CASE; AND (3) SETTING STATUS HEARING** |
| 16 | (ECF No. 46) |
| 17 Defendant. | |

18

19       Presently before the Court is Defendant Pfizer Inc.'s ("Pfizer") Motion for Summary

20 Judgment of Noninfringement Based on Defective Infringement Contentions, (MSJ, ECF No. 38),

21 which Defendant Crown Bioscience, Inc. ("CrownBio") joins in part, (Not. Joinder, ECF No. 40).

22 Also before the Court are the associated oppositions and replies, as well as the parties' briefs in

23 response to the Court's Order for supplemental briefing. (Order, May 3, 2012, ECF No. 49) A

24 hearing on the motion was held on May 31, 2012.[1] Having considered the parties' arguments and

25 the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for

26 summary judgment and conditionally grants AntiCancer an opportunity to supplement its PICs.

27 ────────────────

28       [1] The Court also heard oral argument on CrownBio's Motion for Judgment on the Pleading on the Fifth Claim for Relief, (Mot. J. on Pleading, ECF No. 46), which Pfizer joins, (Not. Joinder, ECF No. 56), on this date. That motion will be addressed in a separate Order.

**BACKGROUND**

Plaintiff AntiCancer Inc. ("AntiCancer") first filed this action against Pfizer on January 19, 2011, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (Compl., ECF No. 1) AntiCancer later amended its complaint, adding CrownBio as a defendant and asserting two patent infringement claims—one against Pfizer alone, and the other against both Pfizer and CrownBio. (FAC, ECF No. 19) Soon thereafter, in accordance with the time prescribed by Patent Local Rule 3.1 and Magistrate Judge Brooks's scheduling order, (Scheduling Order, ECF No. 13), AntiCancer served its preliminary infringement contentions ("PICs"), (Decl. of Olga Berson ISO MSJ ("Berson Decl.") Ex. 2, ECF No. 38-4 (PICs)).

AntiCancer contends that Pfizer infringed Claims 1, 5, 7, 8, 9, and 10 of U.S. Patent No. 6,649,159 ("the '159 patent"), and that Pfizer and CrownBio together infringed Claims 1, 11, 13, 15, 17, 19, 21, 23, 25, and 26 of U.S. Patent No. RE39,337 ("the RE'337 patent"), and Claims 1 and 11 of U.S. Patent No. 5,569,812 ("the '812 patent"). (*Id.* at 3)[2] AntiCancer points to a research paper published by Pfizer scientists in support of its allegations of infringement of the '159 patent, and to a poster presentation by Pfizer and CrownBio scientists in support of its allegations of infringement of the RE'337 and '812 patents. (*Id.*)

**1. The '159 Patent**

The '159 patent relates to "the whole-body external optical imaging of gene expression." '159 patent, at [57]. Relevant here, Claim 1 of the '159 patent recites "[a] method to monitor the ability of a promoter to promote expression in an animal of an endogenous gene that is controlled by said promoter," '159 patent col.24 ll.44–46, and contains a further limitation requiring that "the ability of said promoter to promote expression is monitored, '159 patent col.24 ll.56–57. The parties refer to this as the "Promoter Monitoring" element.

Claim 1 also recites a claim element requiring "delivering, to an animal, cells containing a nucleic acid encoding a flurophore operatively linked to the promoter of said endogenous gene whose ability to promote expression is to be analyzed." '159 patent col.24 ll.47–50. The parties

---

[2] Pinpoint citations to exhibits utilize the page numbers assigned by CM/ECF.

1   refer to this as the "Delivering Cells" element.

2       According to AntiCancer, Pfizer has allegedly infringed the '159 patent "through the

3   activities described in" a research paper authored by several Pfizer scientists.  (FAC ¶ 22, 43, ECF

4   No. 19)  Specifically, the paper "describes a study in which [green fluorescent protein] expression

5   in mouse embryos was monitored and non-invasively imaged."  (*Id.* ¶ 22)

6   **2.  The RE'337 Patent**

7       The RE'337 patent covers "[a] nude mouse model for human neoplastic diseases having

8   histologically intact human neoplastic tissue transplanted onto an organ of the mouse which

9   corresponds to the human organ from which the tissue is obtained."  RE'337 patent, at [57].  Claim

10  1 of the RE'337 patent discloses "[a] nude mouse model for progression of human neoplastic

11  disease, the progression of said disease being characterized by grown of a primary tumor site and

12  metastasis to secondary tumor sites," RE'337 patent col.11 ll.14–17,[3] with the further limitation

13  that the mouse "has sufficient immuno-deficiency to allow said transplanted neoplastic tissue to

14  grow at said primary site and metastasize to said secondary tumor sites, so as to mimic the

15  progression of the neoplastic disease including the metastatic behavior of said neoplastic disease in

16  humans," RE'337 patent col.11 ll.23–28.  The parties refer to this as the "Metastasis to a Second

17  Site" element.

18      According to AntiCancer, Pfizer and CrownBio infringed on this patent by collaborating to

19  "surgically orthotopically implant[] tumor fragments from patient liver-tumor tissues into the liver

20  of mice, and then treated them with a drug called sunitinib malate," as presented in a joint poster

21  presentation and announced in a joint press release.  (FAC ¶¶ 23–24, 51, ECF No. 19)

22  **3.  The '812 Patent**

23      The '812 patent also covers "[a] nude mouse model for human neoplastic disease having

24  histologically intact human neoplastic tissue transplanted onto an organ of the mouse which

25  corresponds to the human organ from which the tissue is obtained."  '812 patent, at [57].  The '812

26  patent was first issued on October 29, 1996, '812 patent, at [45], and was later reissued as the

27

28          [3] All italics and bracketed material—which are used in the reissued patent to delineate changes
    from the original patent—have been omitted from quotations to the RE'337 patent in this Order.

1    RE'337 patent on October 10, 2006, RE'337 patent, at [64]. AntiCancer asserts that Pfizer and

2    CrownBio infringe the '812 patent for the same reasons they infringe the RE'337 patent. (*See*

3    FAC ¶¶ 48–55, ECF No. 19; Berson Decl. Ex. 2, at 3, ECF No. 38-4)

4                                    **LEGAL STANDARD**

5            Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where

6    (1) the moving party demonstrates the absence of a genuine issue of material fact and

7    (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

8    "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could

9    affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

10   *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). For a dispute to be "genuine," a reasonable

11   jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. When

12   ruling on a summary judgment motion, the court must view all inferences drawn from the

13   underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*

14   *v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

15           In the context of patent litigation, "[i]nfringement is assessed by comparing the accused

16   device to the claims; the accused device infringes if it incorporates every limitation, either literally

17   or under the doctrine of equivalents. If, however, even one claim limitation is missing or not met,

18   there is no literal infringement." *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352

19   (Fed. Cir. 2005) (internal quotation marks omitted) (citations omitted); *accord Glaxo, Inc. v.*

20   *Novopharm, Ltd.*, 110 F.3d 1562, 1565 (Fed. Cir. 1997).

21                                      **ANALYSIS**

22   **1. The '812 Patent**

23           Because the '812 patent has been reissued, Defendants move for summary judgment on the

24   ground that "[a]s a matter of law, the '812 Patent is now unenforceable because AntiCancer

25   surrendered the patent when the Patent Office issued the RE'337 Patent." (MSJ 17, ECF No. 38

26   (citing 35 U.S.C. § 252 ("The surrender of the original patent shall take effect upon the issue of the

27   reissued patent."))) AntiCancer does not oppose summary judgment on this basis, and conceded at

28   oral argument that summary judgement should be granted as to the '812 patent. The Court

1  accordingly **GRANTS** summary judgment in favor of Defendants on the '812 patent.

2  **2. Sufficiency of Preliminary Infringement Contentions – The '159 & RE'337 Patents**

3        Defendants' motion for summary judgment argues that AntiCancer's infringement

4  contentions are insufficient, and therefore that judgment should be entered in Defendants' favor.

5  (*See generally* MSJ, ECF No. 38)  Specifically, Defendants assert that "AntiCancer served PICs

6  that (1) omit contentions regarding required claim elements, and (2) fail to provide the required

7  detail regarding all claim elements."  (*Id.* at 2–3)

8        This district's Patent Local Rules require a party claiming patent infringement to serve a

9  "Disclosure of Asserted Claims and Preliminary Infringement Contentions" containing the

10  following information:

11      a.  Each claim of each patent in suit that is allegedly infringed by each opposing
12         party;

13      b.  Separately for each asserted claim, each accused apparatus, product, device,
       method, act, or other instrumentality ("Accused Instrumentality") of each
14         opposing party of which the party is aware.  This identification must be as
       specific as possible.  Each product, device and apparatus must be identified by
15         name or model number, if known.  Each method or process must be identified by
       name, if known, or by any product, device, or apparatus which, when used,
16         allegedly results in the practice of the claimed method or process;

17      c.  A chart identifying specifically where each element of each asserted claim is
       found within each Accused Instrumentality, including for each element that such
18         party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s),
       act(s), or material(s) in the Accused Instrumentality that performs the claimed
19         function; [and]

20      d.  Whether each element of each asserted claim is claimed to be literally present
       and/or present under the doctrine of equivalents in the Accused Instrumentality[.]

21  Patent Local Rule 3.1.  The Patent Local Rules thus obligate parties to state with specificity the

22  theories upon which they plan to rely, and to do so early in the litigation.  This "require[s] parties

23  to crystallize their theories" early in the litigation so as to "prevent the 'shifting sands' approach to

24  claim construction."  *O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355 (Fed. Cir. 2006)

25  (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, No. C 95-1987, 1998 U.S. Dist. LEXIS 17564,

26  at *7 (N.D. Cal. Nov. 4, 1998)).[4]

27  _____

28     [4] This Order cites to out-of-district case law interpreting patent local rules promulgated by other districts that are substantively similar to our own as persuasive authority.  *See Nesscap Co. v. Maxwell Techs.*, 2008 U.S. Dist. LEXIS 3357, at *4 (S.D. Cal. Jan. 16, 2008) (Major, Mag. J.).

At issue here is what level of detail a party is required to provide in its PICs in order to satisfy Patent Local Rule 3.1(c)'s mandate to "identify[] *specifically* where each element of each asserted claim is found within each Accused Instrumentality." (emphasis added). On the one hand, the Court cannot argue with AntiCancer's point that it should not be required "to write a virtual scientific treatise on how its evidence relates to each term in its claims." (Resp. in Opp'n 3, ECF No. 41) But on the other hand, vague or conclusory infringement contentions hamper a defendant's ability to prepare an effective defense to the plaintiff's allegations of infringement. *Diagnostic Sys. Corp. v. Symantec Corp.*, 2009 U.S. Dist. LEXIS 53916, at *19 (C.D. Cal. June 5, 2009) (citing *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005)). Indeed, the patent local rules are designed carefully to "balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro Int'l*, 467 F.3d at 1366; *see also Data Retrieval Tech., LLC v. Sybase*, 2009 U.S. Dist. LEXIS 129454, at *8 (N.D. Cal. Sept. 11, 2009) (striking this balance and explaining that "infringement contentions need not prove infringement" but must "outline a plaintiff's theories of infringement").

Weighing these considerations, the Court believes that the appropriate balance requires that the PICs contain "sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patents themselves," but need not be so detailed as to transform the PICs into a "forum for litigation of the substantive issues." *Network Caching Tech., LLC v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881, at *13 (N.D. Cal. Mar. 21, 2003); *see also Shared Memory Graphis LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (Chen, Mag. J.) ("[A]ll courts agree that the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" (quoting *View Engineering, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000))). As the Northern District has explained with regard to its identical local patent rule,

> Patent LR 3-1 [does not] require that [a plaintiff's] preliminary infringement theories be incontrovertible or presented in excruciating detail. While the rule states that these disclosures should be "as specific as possible," there is no requirement that [a plaintiff] thoroughly present and successfully defend its theories of infringement in the confines of a PIC chart. At this stage, mapping specific elements of defendants' allegedly infringing products onto [the

- 6 -

11cv107

1    plaintiff's] claim construction is adequate.

2    *Network Caching*, 2003 U.S. Dist. LEXIS 9881, at *14.

3        Importantly, PICs are generally prepared and served early in the litigation, and so the Court

4    is cognizant of the limited details at AntiCancer's disposal regarding how Defendants infringed on

5    AntiCancer's patents.  But, at a minimum, "a plaintiff is required to include in its infringement

6    contentions all facts known to it, including those discovered in its pre-filing inquiry," *Shared*

7    *Memory Graphics*, 812 F. Supp. 2d at 1024, and any "publicly available information which, if

8    utilized, would . . . provide[] more information to Defendants" regarding the plaintiff's

9    infringement claims, *Linex v. Techs., Inc. v. Belkin Int'l., Inc.*, 628 F. Supp. 2d 703, 709 (E.D. Tex.

10    2008).  This should include an explanation of how AntiCancer believes Defendants' accused

11    infringing products read on the asserted claim language.  *See Connectel, LLC v. Cisco Sys. Inc.*,

12    391 F. Supp. 2d 526, 528 (E.D. Tex. 2005).

13        With these considerations in mind, the Court now turns to the PICs at issue here.  Having

14    independently reviewed the PICs, the Court agrees with Pfizer that AntiCancer has done little to

15    improve upon the defective PICs that proved to be dispositive in its earlier infringement lawsuits.[5]

16    For the reasons explained, the Court finds the PICs insufficient to comply with Patent Local Rule

17    3.1.

18    *A.  The '159 Patent*

19        Pfizer asserts that AntiCancer's PICs fail to establish that Pfizer's allegedly infringing acts

20    included practicing either the Promoter Monitoring element or the Delivering Cells element of

21    Claim 1 of the '159 patent.  And, because Claims 5, 7, 8, 9, and 10 all depend from Claim 1, Pfizer

22    asserts that these defects warrant judgment as a matter of law as to all of the asserted claims.  (MSJ

23    _____

24        [5] Pfizer points to two other cases in which this Court disposed of infringement claims filed by
     AntiCancer on summary judgment because AntiCancer's PICs were insufficient: *AntiCancer, Inc. v.
     Cambridge Research & Instrumentation*, 07-CV-97 JLS (RBB) [hereinafter, "*CRI*"], and *AntiCancer,*

25    *Inc. v. Carestream Health, Inc.*, 07-CV-1004 JLS (AJB) [hereinafter, "*Carestream*"].  Pfizer places
     much emphasis on these earlier cases, implying that because the Court granted the defendants'

26    motions for summary judgment there, the Court ought to do so here as well.  (*See* MSJ 4–9, ECF No.
     38)  Though the cases are factually similar—and, indeed, concern one of the same patents at issue

27    here, the '159 patent—AntiCancer's PICs differ, as do the accused instrumentalities.  Thus, the Court
     declines Pfizer's invitation to simply walk the same path that was taken in those cases, and considers

28    anew the sufficiency of AntiCancer's PICs as well as what recourse is appropriate should the PICs be
     deemed insufficient.

1    13, ECF No. 38); *see also Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir.

2    2007) (citing *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989)

3    ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus

4    containing all the limitations of) that claim.")).

5    *(1) The "Promoter Monitoring" Element*

6         In support of its allegations of infringement regarding the Promoter Monitoring element,

7    AntiCancer's PICs point to Figure 2 and a portion of the text from the "Defects in embryonic

8    development of EGLN1/PHD2 knockdown transgenic mice are associated with induction of Ogfbp

9    in the placenta" paper. (Berson Decl. Ex. 2, at 7–8, ECF No. 38-4) AntiCancer's PICs assert that

10   Figure 2 and the statement "The localization and intensity of GFP fluorescence in conceptuses

11   from both treatment groups was varied" constitute "evidence of the accused instrumentality." (*Id.*

12   at 8) Pfizer contends, however, that "the quote and the general reference to Figure 2 . . . fail to

13   indicate that Pfizer's conduct involved any monitoring of a promoter." (MSJ 11–12, ECF No. 38)

14        Here, the Court find that the PICs insufficiently set forth how Pfizer's allegedly infringing

15   conduct satisfies Claim 1's Promoter Monitoring element. Neither of the two bare references to

16   the Pfizer paper supplies sufficient information for how Pfizer allegedly practiced the Promoter

17   Monitoring element. First, the PICs cite to a single sentence from the Pfizer paper as evidence that

18   Pfizer infringed on the Promoter Monitoring element, without providing any explanation

19   whatsoever for how that sentence maps on to the claim language:

| Claim Language | Pfizer Paper |
|---|---|
| "[T]he ability of said promoter to promote expression is monitored . . . ." | "The localization and intensity of GFP fluorescence in conceptuses from both treatment groups was varied." |

     (Berson Decl. Ex. 2, at 8, ECF No. 38-4) On its face, the text from the paper says nothing about

     "promoters" or "monitoring." And although AntiCancer "incorporates the full text of the paper"

     into its PICs, such a generalized reference is insufficient to satisfy the specificity requirement of

     Rule 3.1(c).

     //

AntiCancer needs to connect the dots for how Pfizer's research, as detailed in the paper, reads on the asserted claim language. *See Connectel*, 391 F. Supp. 2d at 528. Even at this early stage, AntiCancer is capable of this much. Indeed, in its opposition brief Pfizer makes this connection: "[I]t is the signal of GFP fluorescence which indicates the *activity of the promoter*, and the 'localization and intensity' of such fluorescence, and thereby of the promoter, is determined by viewing or imaging the subject over time – in other words, by 'monitoring' it." (Resp. in Opp'n 4, ECF No. 41)[6] But this is too little, too late.[7] *See CRI*, 07-CV-97 JLS (RBB), Docket No. 214, at 7 (refusing to allow AntiCancer to "introduce new theories of infringement [in its opposition brief] based on evidence which AntiCancer did not disclose in its PICs" (citing *O2 Micro Int'l*, 467 F.3d at 1368)).

Second, the PICs offer no explanation for how Figure 2 indicates that Pfizer practiced the Promoter Monitoring element. For this reason, the figure in no way serves to "identify specifically where each element of each asserted claim is found within each Accused Instrumentality," as Patent Local Rule 3.1(c) requires, and lends little to no support in creating a triable question of fact that Pfizer practices this element of Claim 1. AntiCancer asserts in its opposition brief and via a declaration from Robert M. Hoffman, Ph.D., that Figure 2 "clearly indicates that the promoter was monitored" because

> Fluorescence intensity was graded as either "0, +, ++, or +++." Therefore, expression of GFP varied from "0" at the lowest end to "+++" at the highest end, which means the activity (intensity) of the promoter linked to GFP was varied. The scientist conducting this experiment could only have rated the varying intensity of the GFP promoter by monitoring it.

(Resp. in Opp'n 4, ECF No. 41 (citing (Decl. of Robert M. Hoffman ISO Resp. in Opp'n

---

[6] Pfizer argues that even considering this newly asserted theory of infringement, the PICs remain defective because "the Pfizer researchers correlated the location and intensity of GFP fluorescence to embryo malformation and growth. They did not, as the claim language requires, correlate GFP fluorescence to promoter activity." (Reply in Supp. 6, ECF No. 43) The Court finds that this argument goes more to claim construction and the ultimate infringement determination, however, and as such is inappropriately raised at this early stage of the proceedings. *Network Caching*, 2003 U.S. Dist. LEXIS 9881, at *12 ("PICs are not meant to provide a forum for litigation of the substantive issues.").

[7] The Court stresses that by referencing the arguments AntiCancer raises in its opposition brief, the Court is <u>not</u> at this point making a determination whether those contentions—if contained in the PICs—would be sufficient to satisfy Patent Local Rule 3.1.

- 9 -

("Hoffman Decl.") ¶ 6, ECF No. 41-1))) But, again, the Court declines to rely on AntiCancer's theories of infringement introduced for the first time in opposition to summary judgment, and based on evidence which was not previously disclosed in the PICs.

Thus, the Court concludes that the PICs fail to establish with sufficient specificity that Pfizer practiced the Promoter Monitoring element of the '159 patent.

*(2) The "Delivering Cells" Element*

As to the Delivering Cells element, AntiCancer's PICs again generally point to Figure 2 with no supporting explanation, as well as a portion of the text from Pfizer's research paper that states "we generated transgenic mice expressing EGLN1 shRNA." (Berson Decl. Ex. 2, at 8, ECF No. 38-4) In its motion for summary judgment, Pfizer asserts that neither of these vague references "indicate that Pfizer's allegedly infringing conduct involved practicing this claim element." (MSJ 12, ECF No. 38)

As with the Promoter Monitoring element, the Court finds that the PICs insufficiently set forth how Pfizer's allegedly infringing conduct satisfies Claim 1's Delivering Cells element. Neither the reference to Figure 2 nor the single sentence taken from the paper supplies sufficient information for how Pfizer allegedly practiced this element. Again, the PICs cite to a single sentence from the Pfizer paper as evidence that Pfizer infringed on this element, and again the PICs provide no explanation for how that sentence maps on to the claim language:

| Claim Language | Pfizer Paper |
|---|---|
| "[D]elivering, to an animal, cells containing a nucleic acid encoding a fluorophore . . . ." | "[W]e generated transgenic mice expressing EGLN1 shRNA." |

(Berson Decl. Ex. 2, at 8, ECF No. 38-4) As Pfizer correctly notes, the cited sentence "does not mention cells. It does not mention delivering cells, fluorophores, or nucleic acids encoding fluorophores to animals. The quoted sentence only refers to animals (i.e., 'transgenic mice') with a particular genetic trait (i.e., 'expressing' a particular gene—'EGLN1 shRNA')." (MSJ 13, ECF No. 38) Thus, AntiCancer in no way attempts to make a connection between the sentence provided and the claim language, and the PICs additionally draw no connection between Figure 2 and the relevant claim language.

AntiCancer contends, however, that any "competent scientist, and even a layman, would understand [from reading the quoted sentence and viewing the cited figure] the basic scientific concept" that "GFP-labeled cells were delivered." (Resp. in Opp'n 5, ECF No. 41) Apparently, the sentence and figure *imply*[8] that the Delivering Cells element is satisfied: "[S]uch delivery is so implicit that it needs no statement." (*Id.*) Essentially, AntiCancer argues that because its common knowledge that GFP comes from jellyfish—not mice—"the GFP gene had to have been delivered," and therefore "[t]he images of mice embryos expressing GFP in the Pfizer Article . . . are sufficient to indicate the delivery of cells element of this claim. (*Id.* (citing Hoffman Decl. ¶ 7, ECF No. 41-1))

But the point of PICs is not to *imply* how the plaintiff contends the defendant is infringing its patent; rather they are designed for a plaintiff to state *with specificity* its contentions of infringement. To that end, the connections between the claim language and the "evidence of the accused instrumentality" that AntiCancer makes in its opposition brief need to be set forth in the PICs, even if they are "basic scientific concepts" that are generally known or publicly available. *See Linex*, 628 F. Supp. 2d at 709. Because AntiCancer failed to do this much, the Court concludes that the PICs fail to establish with the requisite specificity that Pfizer satisfied the Delivering Cells element of the '159 patent.

**B. The RE'337 Patent**

Defendants contend that AntiCancer's PICs fail to establish that Pfizer and CrownBio practiced the Metastasis to a Second Site element of Claim 1 of the RE'337 patent. (MSJ 13–15, ECF No. 38) And, because the remaining claims asserted by AntiCancer recite the same Metastasis to a Secondary Site element (claims 11, 13, 15, 19, 21, 25, and 26) or depend from

---

[8] At oral argument, AntiCancer used the term "inherent" rather than "implied" in order to better explain this argument. According to AntiCancer, its theory of infringement was adequately presented in the PICs because the basic scientific concept was "inherent" in the citations provided, much as one inherently knows that tomato sauce is made with tomatoes. Applied here, AntiCancer contends that it is a basic scientific concept that in order to have a transgenic mouse, cells must have been delivered. In other words, inherent within the statement "we generated transgenic mice expressing EGLN1 shRNA" is the concept that cells containing a nucleic acid encoding a fluorophore were delivered to an animal. Ultimately, however, the Court finds that this is a distinction without a difference. Without more, the bare reference does not satisfy the specificity requirement of Patent Local Rule 3.1.

1  claims reciting that element (claims 17 and 23), Defendants move for summary judgment as to all

2  of the asserted claims.  (*Id.* at 15)

3  *(1)  The "Metastasis to a Second Site" Element*

4          With regard to its allegations of infringement of the Metastasis to a Second Site element,

5  AntiCancer's PICs cite to several portions of the text of the Pfizer-CrownBio poster, with no

6  further indication how those statements map on to the claim language:

| Claim Language | Pfizer Paper |
|---|---|
| "A nude mouse model for progression of human neoplastic disease, the progression of said disease being characterized by growth of a primary tumor site and metastasis to secondary tumor sites, wherein said mouse has . . . sufficient immuno-deficiency to allow said transplanted neoplastic tissue to grow at said primary site and metastasize to said secondary tumor sites . . . ." | "Tumor fragments derived from patient tumor tissues were surgically implanted into the left lobe of nude mouse liver." "Sutent treatment significantly inhibited orthotopic HCC tumor growth." "Plasma samples were collected at different time points for alpha-feto-protein (AFP) measurement.  At termination, tumors were excised from liver and their weights and sizes were recorded." "In addition, histological analysis confirmed that orthotopically implanted primary human tumors maintained their histopathological characteristics." |

(Berson Decl. Ex. 2, at 14–15, ECF No. 38-4)  Defendants argue that the selected quotes fail to

disclose that Pfizer and CrownBio practiced the claim element of metastasizing from the primary

site to the secondary site.  (MSJ 15, ECF No. 38)  Specifically, Defendants assert that "[t]he cited

text only refers to the ***implanting*** of tumor tissues into a mouse liver [and] say nothing about the

implanted tumor 'metastasizing' to a second organ or other location."  (*Id.*)  Further, "[t]he cited

passages only refer to a researcher excising tumor tissues ***from the same site*** where they were

implanted—the mouse liver.  The quoted text does not indicate that any excised tissue came from a

'secondary tumor site' different from the 'primary site.'"  (*Id.*)

        Bordering on turning this issue into one of claim construction rather than sufficiency of

PICs, AntiCancer counters that

                the claims of the RE'337 patent are not limited by a requirement that metastasis to
                a second site occurs, but rather are limited by the requirement that the mouse
                which is receiving the implanted neoplastic tissue " . . . has sufficient immuno-

- 12 -

deficiency to <u>allow</u> said transplanted neoplastic tissue to grow at said primary site and metastasize to said secondary tumor sites . . . ."

(Resp. in Opp'n 5–6, ECF No. 41 (ellipses in original))  Assuming for the purposes of the instant motion that this is the correct construction of the claim language, according to AntiCancer "the growth of the tumor at the site of implantation . . . is direct evidence that the mice used were sufficiently immuno-deficient to <u>allow</u> for growth at the primary site and for metastasis at secondary sites . . . ."  (*Id.* at 6 (citing Hoffman Decl. ¶ 9, ECF No. 41-1))[9]

Even considering the points AntiCancer raises in its opposition brief, AntiCancer has left out the essential connection between the claim language and the allegedly infringing acts.  *How* does the growth of the tumor at the primary site provide "direct evidence" that the mice were sufficiently immuno-deficient to allow for metastasis to secondary sites?  By skipping this essential connection, AntiCancer leaves Defendants—and the Court—guessing at how the patent was allegedly infringed, hindering Defendants' ability to prepare an effective defense.  For this reason, the Court finds that the PICs are deficient.

### C.  Appropriate Remedy

Having determined that the PICs for the '159 and RE'337 patents are insufficient, the Court now turns to what the effect of this failure ought to be.  Defendants have moved for summary judgment, arguing that by failing to sufficiently set forth a prima facie case of infringement in its PICs AntiCancer has failed to create a triable issue of fact as to whether Defendants' conduct has infringed its patents, and therefore Defendants are entitled to judgment as matter of law.  Wary of such a drastic remedy for the failure to comply with a local rule, the Court ordered the parties to provide supplemental briefing on this issue.  *See, e.g.*, *Acer, Inc. v. Tech. Props.*, 2011 U.S. Dist. LEXIS 55774, at *15 (N.D. Cal. May 13, 2011) (finding any prejudice was outweighed by "the Court's interest in resolving the parties' disputes as comprehensively as

---

[9] AntiCancer further asserts that the PICs sufficiently disclose this claim element because the PICs imply that metastasis to secondary sites was measured by virtue of the fact that such metastasizing can be measured "simply by a visual examination or by palpation of the animals, as is common practice during such experiments," and that such examinations "are required by strict rules that govern the humane use of mice in research."  (Resp. in Opp'n 6, ECF No. 41)  But, as the Court concluded above, it is not enough for the PICs to *imply* a theory of infringement; it must be specifically stated so that a defendant can adequately defend itself from the allegations.

11cv107

possible"); *Halo Elecs. v. Bel Fuse, Inc.*, 2010 U.S. Dist. LEXIS 97640, at *10 (N.D. Cal. Sept. 3, 2010) (Lloyd, Mag. J.) ("[T]he court concludes that amendment will advance fair resolution of the issues on the merits without prejudice to [Plaintiff]."); *Zoltar Satellite Alarm Sys. v. Motorola, Inc.*, 2008 U.S. Dist. LEXIS 108652, at 8 (N.D. Cal. Apr. 2, 2008) (Lloyd, Mag. J.) (same); *Biogenex Labs., Inc. v. Ventana Med. Sys.*, 2006 U.S. Dist. LEXIS 57067, at *4 (N.D. Cal. Aug. 3, 2006) ("[T]he Court is extremely reluctant to dispose of substantive infringement claims based upon procedural defects."). The parties were directed to address "whether the Court could/should construe Defendants' motion for summary judgment instead as a motion to strike AntiCancer['s PICs] and to compel AntiCancer to supplement its PICs with more detailed information in compliance with Patent Local Rule 3.1." (Order, May 3, 2012, ECF No. 49). Having reviewed the parties' supplemental briefing, (ECF Nos. 51, 52, 54), and thoroughly considered the issue, the Court **DENIES** Defendants' motion for summary judgment and conditionally **GRANTS** AntiCancer an opportunity to amend its PICs.

Pfizer's arguments regarding the purposes of the patent local rules are well taken, and the Court will not lightly set aside the rules' mandate that litigants set forth their litigation strategy early on and stick to it. But the Court notes that the rules are not viewed as "a straitjacket into which litigants are locked from the moment their contentions are served. There is a modest degree of flexibility, at least near the outset." *Comcast Cable Commc'ns Corp., LLC*, 2007 U.S. Dist. LEXIS 98476, at *5 (N.D. Cal. Mar. 2, 2007). This is true especially in light of the delicate balance necessary in preparing such contentions: *Too* specific and the litigant risks being locked into a meritless position, *see Biogenex Labs., Inc. v. Ventana Med. Sys.*, 2006 U.S. 57067, at *9 (N.D. Cal. Aug. 3, 2006) ("While BioGenex may not have been required to include that level of specificity in its PICs, it chose to do so . . . ."). Not specific enough and the litigant risks losing its case for a procedural deficiency, rather than obtaining a decision on the merits.

Here, the Court has concluded that AntiCancer's PICs are deficient, and further finds that AntiCancer acted unreasonably in submitting these woefully insufficient PICs. It seems to the Court that AntiCancer was disingenuous in setting forth its theory of infringement with such vague PICs given that it was made aware of the possible repercussions of insufficient PICs on at least

1  two prior occasions in cases before this Court.

2      Even in light of this, the Court doubts that Defendants will be irreparably prejudiced if

3  AntiCancer is given an opportunity to supplement its PICs.  Though this lawsuit has been pending

4  for over a year, the patent infringement claims were not added until AntiCancer filed its

5  FAC—just over six months ago.  The Court has not conducted a claim construction hearing, and

6  this matter is not scheduled to be set for trial until over a year from now.  Thus, the Court finds

7  that it is too early in the lawsuit to dispose of the case for AntiCancer's failure to comply with a

8  local rule, but too late in the lawsuit to allow AntiCancer to cure its deficiency without "mitigating

9  conditions." *Comcast Cable*, 2007 U.S. Dist. LEXIS 98476, at *1.

10      Accordingly, the Court will permit AntiCancer to amend its PICs to supplement its

11 contentions regarding the more detailed theory of infringement articulated in its papers and at oral

12 argument.  But AntiCancer may only do so on the condition that it reimburse Pfizer and CrownBio

13 for the reasonable costs and attorneys' fees they incurred in litigating the instant motion,[10] "which

14 would not have been brought or litigated in this fashion but for [AntiCancer's] unreasonable

15 conduct." *Biogenex Labs.*, 2006 U.S. Dist. LEXIS 57067, at *12; *accord Avago Techs. Gen. IP

16 PTE Ltd. v. Elan Microelectronics Corp.*, 2007 U.S. Dist. LEXIS 39543, at *7 (N.D. Cal. May 15,

17 2007) (Lloyd, Mag. J.); *Comcast Cable*, 2007 U.S. Dist. LEXIS 98476, at *5 ("[T]he prejudice

18 here is tolerable enough to be mitigated by an award of expenses and, once mitigated, pales beside

19 the unfairness that might result from preventing a full litigation on the merits.").

20      At oral argument, AntiCancer indicated that it would be in a better position to make an

21 election whether to amend its PICs or have summary judgment be entered in Defendants' favor

22 after notice of the amount Defendants seek in reimbursement.  If AntiCancer chooses the former,

23 AntiCancer will be required to pay Defendants an amount to mitigate the expense associated with

24 their bringing the instant motion, excluding any costs associated with the Court's request for

25 supplemental briefing.  Thus, within <u>fourteen days</u> of the date this Order is electronically docketed,

26 _____

27 [10] Pfizer additionally requests fees and costs associated with its preparation of its preliminary invalidity contentions and claim construction charts.  The Court finds that reimbursement for the costs and fees of the motion for summary judgment alone are sufficient and fair under the circumstances.

28 The Court likewise concludes that Pfizer's request for reimbursement for all the costs and fees associated with the '812 patent is inappropriate.

1 Pfizer and CrownBio[11] **SHALL FILE** separately declarations of counsel setting forth the costs and

2 attorneys' fees incurred in filing and litigating the instant motion.

3       Within <u>fourteen days</u> after service of counsels' declarations, AntiCancer **MAY FILE** any

4 objection to Defendants' statements of costs and fees, or, absent any objection, **SHALL SERVE**

5 its amended PICs or a notice of objection to the Court's conditions for amendment, in which event

6 summary judgment will be granted in Defendants' favor. If AntiCancer elects to amend its PICs, it

7 shall reimburse Defendants on the same date that it serves its amended PICs, and **SHALL FILE** a

8 notice of said reimbursement with the Court.

9 **CONCLUSION**

10       For the reasons stated above, the Court finds that AntiCancer's PICs are insufficient, but

11 that summary judgment is nevertheless be **DENIED** at this early stage. Instead, the Court

12 conditionally **GRANTS** AntiCancer an opportunity to supplement its PICs, subject to the

13 mitigating conditions outlined above.

14       It is further **ORDERED** that all pending deadlines in this case are **STAYED**. Within

15 <u>fourteen days</u> of the date AntiCancer makes its election, the parties **SHALL MEET AND**

16 **CONFER** and **SHALL SUBMIT** a joint proposal for a revised schedule. This matter is

17 **HEREBY SET** for a status hearing on <u>Friday, July 20, at 3:00p.m.</u>

18       **IT IS SO ORDERED**.

19

20 DATED: June 1, 2012

21     *Janis L. Sammartino*
    Honorable Janis L. Sammartino

22     United States District Judge

23

24

25

26

27 [11] The Court notes that CrownBio only joined in the motion via a notice and did not prepare any of its own briefs, and that counsel appeared telephonically at the hearing. CrownBio thus indicated at oral argument that any reimbursement request with regard to the preparation of the motion

28 would be "minimal," and that the request would otherwise be limited to the costs and fees associated with attending the May 31, 2012, hearing telephonically.

ADDENDUM 2


(July 2, 2012, Summary Judgment Ruling)

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC. a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PFIZER INC., a Delaware corporation, CROWN BIOSCIENCE, INC., a California corporation, and DOES 1–50,<br><br>Defendants. | CASE NO. 11CV107 JLS (RBB)<br><br>**ORDER ENTERING SUMMARY JUDGEMENT ON PATENT INFRINGEMENT CLAIMS**<br><br>(ECF No. 73) |

Presently before the Court is AntiCancer, Inc.'s ("AntiCancer") Notice of Objection to Court's Conditions for Amendment. (ECF No. 73) On June 1, 2012, the Court denied in part Defendants Pfizer Inc. ("Pfizer") and CrownBioscience, Inc.'s ("CrownBio," and collectively "Defendants") Motion for Summary Judgment of Noninfringement Based on Defective Infringement Contentions, (MSJ, ECF No. 38). (Order, June 1, 2012, ECF No. 63) Instead, the Court gave AntiCancer a choice: amend its defective Preliminary Infringement Contentions and reimburse Defendants for the costs associated with their motion for summary judgment, or object to the Court's conditions for amendment and have summary judgment be granted in Defendants' favor. (*Id.* at 16)

On June 29, 2012, AntiCancer objected to the Court's conditions for amendment. (ECF No. 73) Accordingly, summary judgment is **HEREBY GRANTED** in Defendants' favor on the fourth and fifth claims for relief in AntiCancer's Second Amended Complaint, (ECF No. 72).

The parties are reminded to meet and confer and to submit a joint proposal for a revised case management schedule <u>on or before July 13, 2012</u>.  Upon receipt of the parties' joint proposal, the Court will lift the stay in this matter and will vacate the status hearing, currently scheduled for July 20, 2012.

**IT IS SO ORDERED**.

DATED:  July 2, 2012

Honorable Janis L. Sammartino
United States District Judge

- 2 -

11cv107

No. 2013-1056

## ANTICANCER, INC. v PFIZER, INC., et al.

## CERTIFICATE OF SERVICE

I hereby certify that I employed in San Diego County, California.  I am over the age of 18 and am not a party to the cause.  I am lead counsel for AntiCancer, Inc, am from the Office of Richard A. Clegg, 501 West Broadway, Suite 800, San Diego, CA 92101, and am filing and serving the following:

**PLAINTIFF-APPELLANT ANTICANCER, INC.'S OPENING BRIEF**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF System, on January 2, 2013.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF System.  I hereby further certify that copies of the foregoing document are being served via e-mail on the following counsel for defendants:

Jing James Li, Esq.
LiLaw, Inc.
5050 El Camino Real
Suite 200
Los Altos, CA 94022
lij@lilaw.us

Richard de Bodo
DLA Piper LLP (US)
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067
Richard.deBodo@dlapiper.com


Dated:  January 2, 2013

/s/ Richard A. Clegg
Richard A. Clegg
Law Office of Richard Clegg
Attorney for Plaintiff-Appellant AntiCancer

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).   The brief contains 7,850 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), but including footnotes and endnotes.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).   The brief has been prepared in a proportionally spaced typeface font using Microsoft Word 2011, in 14 point Times New Roman font.

Dated:  January 2, 2013          /s/ Richard A. Clegg
                                 Richard A. Clegg
                                 Attorney for Plaintiff-Appellant AntiCancer