# United States Court Of Appeals
# For The Federal Circuit

## 2013-1056

ANTICANCER, INC.,

*Plaintiff-Appellant,*

v.

PFIZER, INC.,

*Defendant-Appellee,*

and

CROWN BIOSCIENCE, INC.,

*Defendant-Appellee,*

and DOES 1-10,

*Defendants.*

———————————————————

Appeal from the United States District Court for the Southern District of California in Case no. 11-CV-0107, Judge Janis L. Sammartino

———————————————————

## *Defendants-Appellees' Brief*

———————————————————

DLA PIPER LLP (US)
Richard de Bodo
Stanley J. Panikowski
Olga Berson
2000 Avenue of the Stars
4th Floor, North Tower
Los Angeles, CA  90067
Phone: (310) 595-3000
Email:  richard.debodo@dlapiper.com

*Attorneys for Defendant-Appellee*
*Pfizer Inc.*

LiLAW INC.
Jing James Li
5050 El Camino Real, Suite 200
Los Altos, CA  94022
Phone:  (650) 521-5956
Email:   lij@lilaw.us

*Attorneys for Defendant-Appellee*
*Crown BioScience, Inc.*

February 28, 2013

# Certificate of Interest for Pfizer Inc.

Counsel for Appellee Pfizer Inc. certifies the following:

1.    The full name of every party represented by counsel of record is:   Pfizer Inc.

2.    The name of the real party in interest represented by counsel of record is:    Not applicable.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by counsel of record:      None.

4.    The names of all law firms and the partners or associates that appeared for the parties now represented by counsel of record or are expected to appear in this Court are:

> DLA Piper LLP (US)
> Richard de Bodo
> Stanley J. Panikowski
> Olga Berson
> Christopher M. Young
> Katherine J. Larson

Dated:  February 28, 2013          Respectfully submitted,

By:  /s Richard de Bodo
        Richard de Bodo

DLA Piper LLP (US)

*Attorneys for Defendant-Appellee Pfizer Inc.*

# Certificate of Interest for Crown BioScience, Inc.

Counsel for Appellee Crown BioScience, Inc. certifies the following:

1.    The full name of every party represented by counsel of record is:   Crown BioScience, Inc.

2.    The name of the real party in interest represented by counsel of record is:    Not applicable.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by counsel of record:        None.

4.    The names of all law firms and the partners or associates that appeared for the parties now represented by counsel of record or are expected to appear in this Court are:

> LiLaw, Inc.
> Jing James Li


Dated:  February 28, 2013              Respectfully submitted,


By:  /s Jing James Li
        Jing James Li

LiLaw, Inc.

*Attorneys for Defendant-Appellee*
*Crown BioScience, Inc.*

# Table of Contents

Preliminary Statement ................................................................... 1

I.   Statement Of Related Cases ............................................... 5

II.  Statement Of Issues ........................................................... 5

III. Statement Of Facts ............................................................ 6

    A.   The Southern District Of California's Patent
       Local Rules Require Claimants To Disclose A
       *Prima Facie* Case Of Infringement Early In
       The Litigation ................................................................ 6

    B.   AntiCancer Asserted Claims Against
       Defendants For Infringement Of Its '159 And
       RE'337 Patents .............................................................. 7

    C.   Defendants Moved For Summary Judgment
       Based On AntiCancer's Inability To Present A
       *Prima Facie* Case Of Infringement ......................... 11

    D.   The District Court Found That AntiCancer's
       PICs Failed To State A Case For Infringement
       But Gave AntiCancer A Path To Possibly
       Avoid Immediate Summary Judgment ...................... 14

    E.   AntiCancer Declined The District Court's Offer
       To Allow It To Try To Cure Its Defective PICs......... 15

    F.   In Two Previous Cases, The District Court
       Entered Summary Judgment Against
       AntiCancer Based On AntiCancer's Failure To
       Present A *Prima Facie* Case Of Infringement
       In Its PICs.................................................................... 17

IV.  Summary Of Argument ..................................................... 19

V.   Argument ............................................................................ 24

    A.   Standards Of Review ................................................. 24

    B.   AntiCancer's Appeal Relies On Arguments
       AntiCancer Waived By Not Making Them
       Before The District Court .......................................... 25

C.  The District Court Properly Concluded
    Defendants Were Entitled To Summary
    Judgment In View Of AntiCancer's Inability
    To Produce Evidence Indicating That
    Defendants Infringed All Claim Elements ............................... 27

    1.  AntiCancer offered no evidence of
        infringement of the Promoter Monitoring
        Element ...................................................................... 29

    2.  AntiCancer offered no evidence of
        infringement of the Delivering Cells
        Element ...................................................................... 33

    3.  AntiCancer offered no evidence of
        infringement of the Metastasis to a Second
        Site Element ............................................................... 35

    4.  AntiCancer has no argument that it had
        stated a *prima facie* case of infringement ........................ 38

D.  AntiCancer Has Failed To Show That The
    District Court Abused Its Discretion In
    Finding That AntiCancer's Final Infringement
    Contentions Were Deficient And In Treating
    Them As Final And Binding ....................................................... 38

    1.  The District Court did not abuse its
        discretion in treating AntiCancer's PICs as
        its final contentions and not allowing
        AntiCancer to amend its PICs at will ............................... 39

    2.  AntiCancer's assertion that the District
        Court abused its discretion by binding
        AntiCancer to its PICs before AntiCancer
        could take discovery ignores the fact that
        AntiCancer never sought discovery ................................... 42

    3.  The District Court did not abuse its
        discretion in not applying a lesser
        standard for PICs ......................................................... 43

    4.  The District Court did not abuse its
        discretion by interpreting the Patent Local
        Rules as requiring a certain degree of
        specificity in AntiCancer's PICs ...................................... 45

5.    The District Court did not abuse its
discretion in granting summary judgment
before claim construction........................................47

E.    The District Court Did Not Abuse Its
Discretion In Requiring AntiCancer To
Reimburse Defendants For The Costs Incurred
In Bringing Their MSJ In Order To Secure
Permission To Amend Its PICs ...............................47

1.    The District Court had the discretionary
authority to impose a mitigating condition
on AntiCancer ....................................................48

2.    The District Court acted within the scope
of its discretionary authority in deciding to
impose a mitigating condition on
AntiCancer ........................................................50

3.    The District Court's mitigating condition
was reasonable under the circumstances...........51

F.    The District Court's Interpretation And
Application Of The Southern District's Patent
Local Rules Is Consistent With The Federal
Rules Of Civil Procedure ..........................................52

1.    This Court has upheld the validity of local
rules requiring the early disclosure of
infringement contentions....................................53

2.    The Southern District's Patent Local Rules
do not dictate the outcome of cases and
cause courts to decide matters on "purely
procedural grounds"...........................................54

G.   Given All The Circumstances, The District
Court Correctly Granted Summary Judgment.......57

VI.  Conclusion and Relief Sought .........................................58

Certificate Of Compliance ........................................................60

# Table of Authorities

## Supreme Court Cases

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................. 27, 28

## Federal Circuit Cases

*Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*,
853 F.2d 1557 (Fed. Cir. 1988) ......................................................... 26

*O2 Micro Int'l Ltd. v. Monolithic Power Systems,
Inc.*,
467 F.3d 1355 (Fed. Cir. 2006) .......................... 24, 41, 46, 49, 53, 57

*Genentech, Inc. v. Amgen, Inc.*,
289 F.3d 761 (Fed. Cir. 2002) ........................................ 24, 50, 52, 58

*NTP, Inc. v. Research In Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005) ......................................................... 28

*SanDisk Corp. v. Memorex Prods., Inc.*,
415 F.3d 1278 (Fed. Cir. 2005) ......................................................... 49

*Sage Prods., Inc. v. Devon Indus., Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) ......................................................... 25

## Other Federal Cases

*AntiCancer, Inc. v. Cambridge Research &
Instrumentation*,
No. 3:07-cv-00097-JLS-RBB .................................... 18, 19, 39, 50, 58

*AntiCancer, Inc. v. Carestream Health, Inc.*,
Case No. 3:07-cv-01004-JLS-AJB.................................. 18, 39, 50, 58

*Bender v. Freescale Semiconductor, Inc.*,
Case No. 09-1156 PHJ, 2010 WL 1689465 (N.D.
Cal. April 26, 2010) .......................................................................... 44

*Berger v. Rossignol Ski Co., Inc.*,
Case No. C 05-02523, 2006 WL 1095914 (N.D.
Cal. April 25, 2006) .................................................................. 39, 41

*Ecological Rights Found. v. Pac. Lumber Co.*,
230 F.3d 1141 (9th Cir. 2000) .......................................................... 25

*Grant v. City of Long Beach*,
315 F.3d 1081 (9th Cir. 2002) .......................................................... 25

*Wong v. Regents of Univ. of Cal.*,
410 F.3d 1052, 1060 (9th Cir. 2005) ........................................... 25, 48

## Statutes & Rules

Patent L.R. 3.1 ................................................................ *passim*

Patent L.R. 3.6 .................................................... 7, 15, 28, 39

Patent L.R. 3.7 .................................................. 7, 13, 23, 41, 55

Fed. R. Civ. Proc. 16(f)(1)(C) ........................................ 48, 49

Fed. R. Civ. Proc. 56 ................................... 3, 12, 20, 26, 42

## Preliminary Statement.

This appeal arises from the District Court granting Defendants' motion for summary judgment of noninfringement ("MSJ"). The District Court found that Plaintiff-Appellant AntiCancer Inc.'s Preliminary Infringement Contentions ("PICs") were plagued by obvious, gaping defects that exposed the fact that AntiCancer was incapable of stating triable claims for infringement.

The District Court correctly ruled that AntiCancer's PICs did not cover two important claim limitations of U.S. Patent No. 6,649,159 (the "Promoter Monitoring Element" and "Delivering Cells Element"), and a significant limitation of U.S. Patent No. RE 39,337 (the "Metastasis to a Second Site Element"). Because the local rules and the case law provide that claimants must prepare their PICs as if they are their final, binding infringement contentions, the District Court was right to conclude that the holes in AntiCancer's PICs indicated AntiCancer could not state a *prima facie* case of infringement. Despite having ample opportunity to try to cure its defective PICs, AntiCancer refused to do so. The District Court therefore correctly granted summary judgment in Defendants' favor.

AntiCancer's opening brief barely confronts the District Court's detailed breakdown of AntiCancer's "woefully insufficient" PICs. Nor does AntiCancer try to explain how its PICs actually showed a *prima facie* case of infringement of the three claim limitations that Defendants

raised in their MSJ (collectively, the "Noninfringed Elements"). Rather, the dominant theme of AntiCancer's brief is the generalized assertion that AntiCancer could have bolstered its PICs if it had more time to take discovery. But the record reflects that AntiCancer *never* sought discovery regarding the accused methods—even though eight months passed from the start of the discovery period to the District Court's grant of summary judgment. At numerous points during the litigation, AntiCancer could have taken steps to try to remedy the deficiencies in its infringement case, but either neglected or chose not to do anything. For example:

- After realizing that the District Court's Case Management Conference Order required AntiCancer to serve its PICs before it could receive discovery responses from Defendants (assuming AntiCancer ever intended to serve discovery), AntiCancer could have sought an adjustment to the case schedule. AntiCancer did nothing.

- Once the discovery period opened on or about November 1, 2011, AntiCancer could have immediately served discovery seeking information about Defendants' accused methods. If such discovery produced useful information, AntiCancer then could have sought leave to amend its PICs. AntiCancer served no discovery at that time (or any other time).

- Four months after AntiCancer served its PICs, Pfizer moved for summary judgment. Pfizer's MSJ should have been a wakeup call for AntiCancer. In response, AntiCancer could have served discovery, filed a Rule 56(d) declaration, and asked the District Court to shelve Defendants' MSJ. AntiCancer did none of this. Instead, AntiCancer insisted that its PICs disclosed *prima facie* claims for infringement.

- After the parties finished briefing Defendants' MSJ, the Court asked the parties to also brief whether it should treat Defendants' MSJ as a motion to strike AntiCancer's PICs. In its supplemental brief, AntiCancer could have indicated that it intended to take discovery regarding Defendants' accused methods and thereafter requested permission to amend its PICs. Instead, AntiCancer doubled down on its assertion that its PICs fully satisfied the patent rules.

- At a May 31, 2012 hearing on Defendants' motion, the District Court informed AntiCancer it had tentatively concluded that AntiCancer's PICs failed to show infringement of the Noninfringed Elements. The court also told AntiCancer it was considering giving AntiCancer an opportunity to try to beef up its PICs, but only if AntiCancer agreed to reimburse Defendants for the costs associated with their MSJ. Instead of

indicating any willingness to agree to the court's condition, AntiCancer continued to insist that its PICs were adequate.

▪ After the District Court ruled that AntiCancer's PICs were "woefully insufficient," and Pfizer filed a declaration documenting its MSJ-related expenses, AntiCancer could have challenged Pfizer's claimed amount and signaled to the court it wanted to avoid summary judgment. Instead, AntiCancer again insisted its PICs were satisfactory and chose to object to the court's mitigating condition.

So this is what the District Court was left to ponder after AntiCancer objected to its mitigating condition:

▪ It had a plaintiff that did not originally allege infringement claims, and only added them ten months into the lawsuit in an apparent attempt to improve its settlement posture.

▪ It had a plaintiff whose prefiling investigation failed to produce any evidence indicating Defendants' accused methods infringed all the limitations of any asserted claims, thereby rendering it incapable of writing PICs that disclosed a *prima facie* case of infringement.

▪ It had a plaintiff that never served a single discovery request in an attempt to acquire the information it knew was required to state a *prima facie* case of infringement, but instead

steadfastly insisted at every turn that its PICs were sufficient and its case solid.

▪ It had a plaintiff that apparently preferred to lose summary judgment rather than pay the consequences of acting "unreasonably" in serving "woefully insufficient" PICs.

▪ It had a plaintiff that apparently had failed to learn from its experience in *two* previous patent suits before the same court and involving the same '159 Patent, in which it served PICs that did not cover all the required claim limitations and consequently lost summary judgment.

Given all of the above, the District Court correctly granted summary judgment of noninfringement against AntiCancer. Defendants respectfully ask this Court to affirm the judgment.

## I.    Statement Of Related Cases.

Defendants agree with AntiCancer's statement of related cases.[1]

## II.    Statement Of Issues.

1.    Whether the District Court abused its discretion in interpreting Patent Local Rule 3.1 of the Southern District of California as requiring claimants to provide infringement contentions covering each element of

---

[1] AntiCancer's Brief at 1.

each asserted claim, and in determining that AntiCancer's PICs failed to satisfy Patent L.R. 3.1.

2.    Upon finding that AntiCancer's PICs did not set forth sufficient facts to establish a *prima facie* case that Defendants' accused methods infringed two elements of the asserted '159 Patent and one element of the asserted RE'337 Patent, and after AntiCancer had passed on or rejected numerous opportunities to try to cure these fatal defects, whether the District Court erred in entering summary judgment on AntiCancer's infringement claims.

## III. Statement Of Facts.

### A.    The Southern District Of California's Patent Local Rules Require Claimants To Disclose A *Prima Facie* Case Of Infringement Early In The Litigation.

The Southern District of California's Patent L.R. 3.1 requires claimants to serve a "Disclosure of Asserted Claims and Preliminary Infringement Contentions" (hereafter, "PICs").[2] To satisfy this rule, claimants must identify each allegedly infringed claim and the allegedly infringing products. Claimants also must include in their PICs a "chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality."[3]

---

[2] The Southern District of California adopted amended local rules on February 8, 2013. All citations in this brief refer to the Patent Local Rules in effect at the time the parties litigated their MSJ.

[3] Patent L.R. 3.1.c.

Patent L.R. 3.6 provides that the court must deem a claimant's PICs to be its "final contentions."[4] Patent L.R. 3.7 allows litigants to amend their PICs only with the court's permission, which the court may give only "upon a showing of good cause."[5]

## B.  AntiCancer Asserted Claims Against Defendants For Infringement Of Its '159 And RE'337 Patents.

AntiCancer sued Pfizer on January 19, 2011, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. AntiCancer based these claims on Pfizer's alleged failure to make a $150,000 maintenance payment purportedly due AntiCancer under a 2006 licensing agreement.

The parties attended settlement conferences on June 24, July 27, and September 21, 2011. At these conferences, AntiCancer indicated it intended to expand its case to include file patent infringement claims against Pfizer.[6]

Immediately after the September 21, 2011 settlement conference, the court instructed the parties to complete the Rule 26(f) conference on or before November 1, 2011, meaning the parties would be free to start serving discovery requests as of that date.[7] Given AntiCancer's

---

[4] Patent L.R. 3.6.

[5] Patent L.R. 3.7.

[6] *See* A634-35.

[7] A632.

announcement at the settlement conferences that it would be asserting infringement claims, the court's Case Management Conference Order Regulating Discovery And Other Pretrial Proceedings ("CMC Order") set due dates for the disclosures required by the Patent Local Rules.[8] The CMC Order instructed AntiCancer to serve its PICs "on or before November 14, 2011."[9]

AntiCancer filed its First Amended Complaint on November 9, 2011.[10] In its new fourth cause of action, AntiCancer alleged that Pfizer was infringing U.S. Patent No. 6,649,159—a patent AntiCancer previously had asserted in two prior cases before the District Court.[11] The '159 patent is directed to methods of monitoring the ability of a "promoter" to activate a gene of interest. Claim 1 is the only independent claim. One key element of claim 1 involves monitoring the ability of a promoter to promote the expression of a gene (hereafter, the "Promoter Monitoring Element"). Another claim element involves delivering certain types of cells to an animal (hereafter, the "Delivering Cells Element"). Set forth below is the text of claim 1 with the Promoter Monitoring and Delivering Cells Elements highlighted.

---

[8] A113-127.

[9] A113-14.

[10] *See* A135-37.

[11] *See, infra,* Section III.F, for a discussion of these two earlier cases.

"1. A method *to monitor the ability of a promoter to promote expression* in an animal of an endogenous gene that is controlled by said promoter, which method comprises:

"a) *delivering, to an animal, cells containing a nucleic acid encoding a fluorophore operatively linked to the promoter* of said endogenous gene whose ability to promote expression is to be analyzed; and

"b) observing the presence, absence or intensity of the fluorescence generated by said fluorophore at various locations in said animal by whole-body external fluorescent optical imaging,

"*whereby the ability of said promoter to promote expression is monitored*, and

"wherein said fluorophore is a protein that is autofluorescent such that no substrates or cofactors are needed for it to fluoresce."[12]

In its new fifth cause of action, AntiCancer alleged that Pfizer and CrownBio were infringing U.S. Patent No. 5,569,812, which the Patent Office reissued as U.S. Patent No. RE39,337. The RE'337 Patent is directed to animal cancer models and methods of making such models. The claimed models and methods all require the metastasis of tumor tissue from a primary site to a secondary site (hereafter, the "Metastasis to a Second Site Element"). For example, claim 1 requires the use of a mouse model in which tumor tissue implanted at one site metastasizes (*i.e.*, transfers) to a second site. The claim refers to the Metastasis to a Second Site Element in two places:

---

[12] A80 at 24:44-60.

"1.  A nude mouse model for progression of human neoplastic disease, the progression of said disease being characterized by **growth of a primary tumor site and metastasis to secondary tumor sites**, wherein said mouse

has histologically intact human neoplastic tissue of at least 1 mm$^3$ in size transplanted onto an organ of said mouse which corresponds to the human organ from which said tissue is originally obtained; and

has sufficient immuno-deficiency **to allow said transplanted neoplastic tissue to grow at said primary site and metastasize to said secondary tumor sites**, so as to mimic the progression of the neoplastic disease including the metastatic behavior of said neoplastic disease in humans."[13]

In their answers, Pfizer and CrownBio denied AntiCancer's infringement allegations.[14]

AntiCancer served its PICs on November 14, 2011. In identifying evidence purporting to support its claim for infringement of the '159 Patent, AntiCancer cited to a 2009 research paper published by Pfizer scientists (hereafter, the "Pfizer Article").[15] According to AntiCancer, the Pfizer Article revealed Pfizer's alleged infringement by "detail[ing] experiments performed using GFP imaging of mouse embryos."[16]

In identifying purportedly supporting evidence for its claim for infringement of the RE'337 Patent, AntiCancer cited a 1-page 2009

---

[13] A64 at 11:13-28 (emphasis added).

[14] A199-200 (Pfizer) & A217-19 (CrownBio).

[15] A265-69.

[16] A84.

poster abstract published by Pfizer and CrownBio scientists (hereafter, "Poster").[17] According to AntiCancer, the Poster showed Defendants' alleged infringement through its "detail[ing of] the development of animal models that were used to test Pfizer's drug Sutent."[18]

As required by Patent L.R. 3.1(c), AntiCancer included in its PICs claim charts purporting to separately link each element of the asserted claims to a step in Defendants' accused methods, as supposedly evidenced by the Pfizer Article and the Poster. AntiCancer represented in its charts that "each element of [each] claim [is] followed by the evidence of the accused instrumentality found within the paper in brackets and boldface."[19]

## C. Defendants Moved For Summary Judgment Based On AntiCancer's Inability To Present A *Prima Facie* Case Of Infringement.

On March 12, 2012, Pfizer filed a motion for summary judgment of noninfringement.[20] Pfizer argued that AntiCancer's PICs utterly failed to disclose, as they must, a *prima facie* case of patent infringement. Pfizer contended that the PICs neglected to indicate ***at all*** (let alone

---

[17] A295.

[18] A84.

[19] *E.g.,* A88-89. *See, infra,* Sections V.C.1-4 for in-depth analysis of AntiCancer's claim charts and the purported evidence of infringement cited in the charts.

[20] A235-36.

with the required specificity) that Pfizer's accused methods infringed the Noninfringed Elements.[21] CrownBio joined in Pfizer's Motion.[22]

In its Opposition, AntiCancer insisted that its PICs asserted triable claims for infringement.[23] AntiCancer did not even conditionally argue that the District Court should give it leave to amend its PICs. AntiCancer also made no argument that it needed additional discovery to develop more fully its infringement contentions. It made no mention of Federal Rule 56(d). The only evidence AntiCancer relied on were the statements from the Pfizer Article and Poster that AntiCancer quoted in its PICs, as interpreted by AntiCancer.[24]

On May 3, 2012, the District Court ordered the parties to file supplemental briefs "addressing whether the Court could/should construe Defendants' motion for summary judgment instead as a motion to strike" AntiCancer's PICs and to "compel AntiCancer to supplement its PICs with more detailed information in compliance with Patent Local Rule 3.1."[25]

---

[21] *See* A250-57.

[22] A342.

[23] A346-49.

[24] AntiCancer filed with its MSJ Opposition a declaration by its founder and CEO, Robert Hoffman. The Hoffman declaration was not evidence of how the accused methods practiced the Noninfringed Elements. The District Court found it to be of no relevance. (A11.) And, in any event, AntiCancer does not rely on the Declaration in its opening brief; therefore, it is irrelevant to this appeal.

[25] A464.

AntiCancer argued in its brief that the District Court should construe Defendants' MSJ as a motion to strike, but should deny the motion.[26] In the alternative, AntiCancer argued the court should disregard Patent L.R. 3.7's amendment process and just "order AntiCancer to amend its PICs to cure any such deficiency."[27] In its supplemental brief, AntiCancer said nothing about needing discovery concerning Defendants' accused methods.[28]

The District Court heard oral argument on Defendants' MSJ on May 31, 2012.[29] At the outset of the Hearing, the court announced it had tentatively decided that AntiCancer's PICs were "insufficient to comply with Patent Local Rule 3.1."[30] The District Court detailed how the PICs failed to include contentions for the Noninfringed Elements.[31] Nonetheless, the District Court indicated it was "inclined" to let AntiCancer try to amend its PICs *if* AntiCancer agreed to "reimburse Pfizer and CrownBio for the reasonable costs and attorneys' fees incurred in litigating this motion."[32] AntiCancer indicated it was

---

[26] A466-67.

[27] A467.

[28] *See* AA466-67.

[29] A485-524.

[30] A488:25-489:2.

[31] A489-12-490:9 & A490:15-491:2.

[32] A491:14-18.

unlikely to agree to the District Court's possible condition that it must pay Defendants' litigation expenses.

During the Hearing, AntiCancer once again said nothing about a need for discovery or more information regarding Defendants' accused methods.[33]

## D.    The District Court Found That AntiCancer's PICs Failed To State A Case For Infringement.

On June 1, 2012, the District Court issued its ruling on Defendants' MSJ. The court confirmed its tentative conclusion that AntiCancer's PICs were insufficient.

The District Court found that neither of the "two bare references to the Pfizer paper" cited in AntiCancer's PICs "supplies sufficient information for how Pfizer allegedly practiced the Promoter Monitoring element."[34] The court similarly ruled that AntiCancer's "PICs insufficiently set forth how Pfizer's allegedly infringing conduct satisfies" the Delivering Cells Element.[35] And the court determined that AntiCancer's citation in its PICs to "several portions of the text of the Pfizer-CrownBio poster, with no further indication how those

---

[33] *See* A485-524.

[34] A8.

[35] A10.

statements map on to the claim language," failed to show infringement of the Metastasis to a Second Site Element.[36]

Given the absence of sufficient contentions and supporting evidence regarding the Noninfringed Elements, the District Court concluded that AntiCancer's "deficient" and "woefully insufficient" PICs had utterly failed to satisfy Patent L.R. 3.1(c)'s "mandate" that the claimant identify "specifically where each element of each asserted claim is found within each Accused Instrumentality."[37]

The District Court further determined that, if it considered AntiCancer's PICs to be final contentions (as it must, under Patent L.R. 3.6), AntiCancer had failed to state a *prima facie* case of infringement. Therefore, the court concluded it would be appropriate to enter summary judgment if the PICs remained in their original state.[38]

## E.    AntiCancer Declined The District Court's Offer To Allow It To Try To Cure Its Defective PICs.

Although the District Court concluded it would be appropriate to grant summary judgment based on the gross deficiencies in AntiCancer's PICs, the court did not immediately grant Defendants MSJ. Instead, the court "conditionally grant[ed] AntiCancer an

---

[36] A12-13.

[37] A108 at Patent L.R. 3.1(c). *See also* A5-7 & A14 (discussing and quoting Patent L.R. 3.1(c)).

[38] A16.

opportunity to supplement its PICs."[39] The District Court explained it was "[w]ary" of granting summary judgment so early in the case based on a party's "failure to comply with a local rule."[40] But having found that AntiCancer had "acted **unreasonably** in submitting these **woefully insufficient** PICs,"[41] and that "AntiCancer was **disingenuous** in setting forth its theory of infringement with such vague PICs given that it was made aware of the possible repercussions of insufficient PICs on at least two prior occasions in cases before this Court,"[42] the District Court decided it was "too late in the lawsuit to allow AntiCancer to cure its deficiency without 'mitigating conditions.'"[43]

Thus, the District Court decided to "permit AntiCancer to amend its PICs to supplement its contentions" only if AntiCancer agreed to "reimburse Pfizer and CrownBio for the reasonable costs and attorneys' fees they incurred in litigating the instant motion," which "would not

---

[39] A1.

[40] A13, A14.

[41] A14 (emphasis added).

[42] A14-15 (emphasis added). For a discussion of these two cases, see, *infra*, Section III.F.

[43] A15. These stated findings belie AntiCancer's assertion in its Opening Brief that the "district court did not make any findings that were sufficient to support such a conditional award of sanctions." (AntiCancer's Brief at 14.)

have been brought or litigated in this fashion ***but for AntiCancer's unreasonable conduct***."[44]

To implement its proposed remedy, the District Court ordered Defendants to file declarations "setting forth the costs and attorneys' fees incurred in filing and litigating the instant motion."[45] The District Court stated that AntiCancer thereafter could choose between reimbursing Defendants and trying to fix the defects in its PICs, or objecting "to the Court's conditions for amendment, in which event summary judgment will be granted in Defendants' favor."[46]

On June 29, 2012, AntiCancer objected to the District Court's stated conditions for AntiCancer amending its PICs.[47] Consequently, the District Court entered an order granting Defendants' MSJ.[48]

## F.    In Two Previous Cases, The District Court Entered Summary Judgment Against AntiCancer Based On AntiCancer's Failure To Present A *Prima Facie* Case Of Infringement In Its PICs.

Before this action, AntiCancer litigated other patent infringement suits involving the '159 patent before the District Court. In two cases,

---

[44] A15 (emphasis added).

[45] A15-16. Pfizer filed its fees application and supporting declaration on June 15, 2012.

[46] A16.

[47] A525-26.

[48] A17-18.

AntiCancer lost summary judgment because its PICs failed to state a triable claim.

In *AntiCancer, Inc. v. Carestream Health, Inc.*,[49] Carestream moved for summary judgment, arguing that AntiCancer's PICs were "fatally defective" because they did not "allege the infringement of specific claim limitations."[50] Carestream argued that "[n]othing in the contentions … indicates that there is monitoring of the promoter," as required by claim 1 of the '159 Patent.[51]

The District Court ruled in favor of Carestream, finding that AntiCancer's PICs failed to "allege infringement of all steps of its patented processes."[52] The District Court held that AntiCancer had failed "to make any particularized showing that the omitted claim limitations actually appear in its PICs."[53]

Not long after the court dismissed AntiCancer's infringement claim against Carestream, defendant CRI, in *AntiCancer, Inc. v. Cambridge Research & Instrumentation*, similarly moved for summary judgment based on deficiencies in AntiCancer's PICs. [54] In that case, AntiCancer alleged infringement of three patents, including the '159 Patent.

---

[49] Case No. 3:07-cv-01004-JLS-AJB.

[50] A591.

[51] A545.

[52] A592.

[53] A592.

[54] *See* A331-40.

The District Court found that AntiCancer's PICs offered only "thin allegations of infringement" and "failed to create a triable question of fact that the [accused product] contains all the limitations of all the claims at issue."[55] The court stated: "Anticancer's **cursory, single-sentence allegations** based on those photographs **do not establish 'where each element of each asserted claim is found** within each Accused Instrumentality,' as Patent Local Rule 3.1(c) requires."[56]

## IV. Summary Of Argument.

This Court should affirm the District Court's grant of summary judgment in all respects.

### 1. AntiCancer largely bases its appeal on arguments it waived.

The dominant theme of AntiCancer's appeal is that the District Court entered summary judgment before AntiCancer could take discovery regarding Defendants' accused methods. These assertions about discovery are all new. AntiCancer never raised any discovery-related arguments before the District Court. Indeed:

- AntiCancer did not serve any discovery requests.

- AntiCancer never complained to the District Court about a lack of information regarding Defendants' accused methods.

---

[55] A337.

[56] A337 (emphasis added).

- AntiCancer never sought protection under Rule 56(d), or in any other way asked the District Court to refrain from ruling on Defendants' MSJ until AntiCancer had taken discovery.

- AntiCancer never told the District Court it intended to take discovery and later seek leave to amend its PICs to incorporate any information it may acquire.

- AntiCancer never complained to the District Court that the Patent Local Rules were invalid because they conflicted with a party's rights under the Federal Rules of Civil Procedure.

This Court should refuse to consider all of AntiCancer's new arguments. AntiCancer waived them by not raising them in the proceedings below. And even if the waiver is disregarded, none of these new arguments has merit.

## 2. The District Court correctly concluded that AntiCancer's PICs did not state a triable case of infringement.

To support its claim for patent infringement, AntiCancer needed to produce evidence showing that the accused methods read on all the elements of at least one patent claim. The evidence AntiCancer relied on from the cited Pfizer Article and Poster did not indicate that Defendants' accused methods practiced the Promoter Monitoring or Delivering Cells Elements, or the Metastasis to a Second Site Element. The Promoter Monitoring and Delivering Cells Elements are found in

all the asserted claims of the '159 patent. The Metastasis to a Second Site Element is found in all the asserted claims of the RE '337 patent. Consequently, the absence of these elements in the evidence AntiCancer relied on in its PICs meant that AntiCancer had failed to establish even a *prima facie* case for infringement of either asserted patent. Thus, the District Court correctly concluded that AntiCancer could not state a triable case of infringement and entered summary judgment.

### 3.   The District Court did not abuse its discretion in treating AntiCancer's defective PICs as final and attaching a condition to any amendment of those PICs.

The District Court properly exercised its discretion in applying and enforcing its local rules governing the finality of PICs. District courts have broad discretion to interpret, apply and enforce special local rules for patent cases. Under the Southern District's Patent Local Rules, PICs are treated as final unless good cause supports an amendment. AntiCancer never indicated there was good cause to amend its PICs or that an amendment might be "fruitful."[57]

Moreover, the facts devastate AntiCancer's brazen argument that the District Court improperly granted summary judgment before AntiCancer could take needed discovery concerning Defendants' purportedly "secret" methods. AntiCancer never served a single

---

[57] A496.

discovery request during the litigation, and never indicated to the District Court that it needed or wanted discovery to improve its PICs.

When the District Court gave AntiCancer one last chance to try to amend its PICs, but only if AntiCancer agreed to pay Defendants' costs associated with litigating their MSJ, AntiCancer refused to accept the condition. The District Court was not required to give AntiCancer an opportunity to amend its PICs, and the court acted well within its discretion in attaching a mitigating condition to any grant of permission for AntiCancer to amend its PICs.

When AntiCancer declined to try to amend its PICs, the District Court acted justly in granting summary judgment. The court had correctly found that AntiCancer's PICs did not state a triable claim for infringement of either asserted patent. And the court had to take the PICs as AntiCancer's final and binding infringement contentions.

## 4. The District Court interpreted, applied and enforced the Patent Local Rules in a manner consistent with the Federal Rules of Civil Procedure.

Many district courts have enacted patent rules requiring early disclosure of infringement contentions. This Court has ruled that such rules are valid and consistent with the Federal Rules of Civil Procedure. The District Court did not apply the Southern District's Patent Local Rules in a way that conflicted with any federal rule. If AntiCancer had discovered information it felt could improve its PICs, AntiCancer could

have sought leave to amend under Patent L.R. 3.7. However, AntiCancer never sought any discovery regarding Defendants' accused methods and declined the District Court's invitation to amend its PICs by agreeing to the court's mitigating condition.

## 5.  The District Court correctly granted summary judgment.

After AntiCancer rejected the District Court's condition for amending its PICs, The District Court confronted a situation where:

❶ AntiCancer's PICs did not state a *prima facie* case of infringement;

❷ AntiCancer had not even tried to show good cause to amend its PICs;

❸ AntiCancer had never served any discovery or argued discovery was necessary to articulate legally sufficient PICs; and

❹ AntiCancer refused the court's last-chance offer to try to amend its PICs subject to a mitigating condition.

In these circumstances, the District Court was correct to grant summary judgment. To have ruled otherwise would mean that the Southern District's Patent Local Rules were merely advisory, and not mandatory. And this ruling was in line with multiple decisions from this Court affirming grants of summary judgment based on defective PICs. Thus, this Court should affirm the District Court's judgment.

# V.   Argument.

## A.   Standards Of Review.

Defendants agree with AntiCancer that this Court reviews *de novo* the District Court's ultimate decision to grant summary judgment. However, the abuse of discretion standard governs review of the District Court's conclusions that (1) AntiCancer violated the Southern District's Patent Local Rules, (2) AntiCancer's PICs were final and binding, and (3) that AntiCancer had to satisfy a "mitigating condition" to secure permission to try to modify its PICs.

This Court has applied its own law in considering the validity of local rules unique to patent cases.[58] This Court stated in *O2 Micro Int'l Ltd. v. Monolith Power Systems, Inc.* that it will affirm decisions "enforcing local rules in patent cases" unless they are "clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence."[59]

On procedural issues not unique to this Court's exclusive jurisdiction, this Court applies the procedural law of the regional circuit.[60] The Ninth Circuit has given district courts wide latitude in penalizing litigants for failing to comply with court rules or court

---

[58] *See O2 Micro Int'l Ltd. v. Monolith Power Systems, Inc.*, 467 F.3d 1355, 1364-65 (Fed. Cir. 2006).

[59] *O2 Micro*, 467 F.3d at 1366-67 (citing *Genentech*, 289 F.3d at 774).

[60] *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 768 (Fed. Cir. 2002).

orders.[61] Under the Ninth Circuit's abuse of discretion standard, this Court must affirm the District Court if its findings were "within a broad range of permissible conclusions."[62]

## B.  AntiCancer's Appeal Relies On Arguments AntiCancer Waived By Not Making Them Before The District Court.

It is a settled principle of appellate practice that an appellant cannot raise issues or theories that it did not advance before the trial court. Indeed, this Court has stated that it "does not 'review' that which was not presented to the district court."[63] This is especially true in cases where the appellant asks for a reversal of a grant of summary judgment on the ground that it needed discovery when the appellant never sought protection under Rule 56(d). Thus, in *Avia Group Int'l, Inc. v. LA. Gear California, Inc.,* this Court held:

> "A litigant's right to discovery is fully protected by Fed.R.Civ.P. 56(f) [now Rule 56(d)], which allows a court to refuse summary judgment if a litigant shows, 'by affidavit,' that additional discovery is necessary to uncover 'facts

---

[61] *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005) (applying "deferential" abuse of discretion standard in affirming trial court's decision to exclude late-identified witnesses from testifying at trial).

[62] *Grant v. City of Long Beach*, 315 F.3d 1081, 1091 (9th Cir. 2002).

[63] *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997). *See also, e.g., Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1154 (9th Cir. 2000) ("It is to assure two-level consideration that issues usually cannot be raised in appellate courts in the first instance, but instead are waived (or reviewed only for plain error) if not raised before the district court.").

essential to justify his position.' On the other hand, a litigant's complaint that it needed discovery will not be heard on appeal **when discovery was precluded by its own failure to seek Rule 56(f) protection**. In this case, [defendant] did not invoke Rule 56(f) and attempt to convince the trial court that it could not properly respond to [plaintiff's] summary judgment motion without additional discovery. Had it done so, there would be an appealable discovery issue. Having failed to do so, there is none."[64]

Here, of course, AntiCancer not only failed to seek Rule 56(d) protection, it failed to seek any discovery at all even though discovery had been open for months before Defendants filed their MSJ.

AntiCancer's appeal is dominated by numerous arguments that it never made to the District Court. The new arguments relate primarily to discovery:

- ▪ AntiCancer now argues, for the first time in the case, that it needed discovery about accused methods Defendants purportedly performed "secretly and behind closed doors."[65]

- ▪ AntiCancer now argues, for the first time, that the Patent Local Rules and the District Court's CMC Order operated to "deny" AntiCancer any "opportunity" to conduct discovery.

---

[64] *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1561 (Fed. Cir. 1988), *abrogated on other grounds, Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665 (Fed. Cir. 2008) (emphasis added).

[65] AntiCancer's Brief at 11. *See also id.* at 19 (referring to Defendants' purported "secret accused methods").

-26-

- AntiCancer now argues, for the first time, that it "made clear" to Defendants and the District Court that its PICs were "preliminary and subject to change based on discovery."
- AntiCancer now argues, for the first time, that the Southern District's patent rules conflicted with the discovery provisions of the Federal Rules of Civil Procedure.

These discovery-related arguments pervade AntiCancer's brief, even though AntiCancer never sought discovery from Defendants.[66]

Nothing prevented AntiCancer from making these arguments before the District Court. They do not depend on any new facts or any court rulings. Therefore, this Court should refuse to consider AntiCancer's new arguments on appeal.

## C. The District Court Properly Concluded Defendants Were Entitled To Summary Judgment In View Of AntiCancer's Inability To Produce Evidence Indicating That Defendants Infringed All Claim Elements.

The U.S. Supreme Court explained in *Celotex Corp. v. Catrett* that the entry of summary judgment is proper

> "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof

---

[66] *See, e.g.,* AntiCancer's Brief at 7, 9, 10, 11, 13, 14, 15, 17, 19, 20, 23.

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[67]

Once a moving party "point[s] out to the district court" that "there is an absence of evidence to support the nonmoving party's case," the non-moving party then has the burden of "designat[ing] 'specific facts showing that there is a genuine issue for trial.'"[68] Summary judgment is appropriate if the non-moving party lacks a sufficient evidentiary showing as to even one essential element of its case.[69]

In the context of patent litigation, "a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized."[70] Thus, to survive summary judgment on its infringement claims, AntiCancer had to produce evidence sufficient to create a genuine issue of material fact concerning each claim limitation of the asserted claims of the '159 and RE'337 patents.

AntiCancer's PICs defined the contentions the trial court would permit AntiCancer to advance at trial. Under the Patent Local Rules, AntiCancer's PICs were deemed final.[71] And after AntiCancer objected to the District Court's mitigating condition, there was no question that

---

[67] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[68] *Id.* at 324-25.

[69] *Id.* at 322-23.

[70] *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005).

[71] A110 at Patent L.R. 3.6 ("Each party's 'Preliminary Infringement Contentions' and 'Preliminary Invalidity Contentions' will be deemed to be that party's final contentions …").

AntiCancer was bound by the theories presented in its PICs. The District Court interpreted Patent L.R. 3.1 as requiring AntiCancer to explain in its PICs how Defendants' accused methods infringed each and every element in the asserted claims.[72]

Defendants detailed in their moving papers that AntiCancer's PICs failed to show infringement of the '159 or RE'337 patents because they did not (and could not) include infringement contentions for any of the Noninfringed Elements (which are present in all the asserted claims). This exposed fatal defects in AntiCancer's case.

In opposing Defendants' MSJ, AntiCancer failed to meet its burden of indicating that its PICs cited sufficient evidence to show at least a *prima facie* case of infringement. Thus, this Court should find no error in the District Court's grant of summary judgment.

## 1.   AntiCancer offered no evidence of infringement of the Promoter Monitoring Element.

Defendants have reproduced below portions of AntiCancer's claim chart for claim 1 of the '159 Patent.[73] The first reference to the Promoter Monitoring Element is highlighted in the red box. The second reference to the element and the "brackets and boldface" text immediately following the element that AntiCancer asserted was the "evidence of the

---

[72] A5-7.

[73] A89.

accused instrumentality found within" the Pfizer Article, is highlighted in the green box.



As the red box reveals, AntiCancer cited no supporting evidence after the first reference of the Promoter Monitoring Element. As for the second reference, AntiCancer referenced Figure 2 and a 15-word sentence from the Pfizer Article. Neither citation indicates that Pfizer's accused methods involved any monitoring of a promoter.

**Figure 2 does not cover the Promoter Monitoring Element**

Here is Figure 2 from the Pfizer Article:[74]



Fig. 2. The embryoplacental effects of the localization of intense (+++) GFP fluorescence in EGNL1 RNAi hairpin treated embryos on E14.5. The fluorescent intensities were graded as 0, +, ++, and +++, and the conceptuses divided into four groups; no fluorescence, intense (+++) fluorescence only in the embryo, the placenta, or both embryo and placenta. Representative embryos are depicted in dark field (A-D) or under fluorescent light (E-H). No malformations are apparent with in the absence of a GFP signal (A,E) or if the GFP signal is only noted in the embryo proper (B,F). Poor limb development (C,G; arrow) and edema in (D,H; arrows) were noted in embryos with intense placental GFP fluorescence. The faint embryonic glow in G is reflected light only. Head length and crown rump length trended lower and placental weights increased with GFP detected in the placenta. Fluorescence only in the embryo had no effect on embryoplacental parameters.

Neither the Figure, nor its legend, nor any other text in the Pfizer Article describing or explaining Figure 2 say ***anything*** about promoters or the monitoring of their activity.[75] Moreover, AntiCancer cited Figure 2 in ***all*** of its bracketed and boldfaced evidentiary citations for claim 1.[76] The serial repetition of this citation undermines any claim that Figure 2 uniquely discloses the Promoter Monitoring Element.

In view of the above, the District Court correctly concluded:

---

[74] A266.

[75] *See* A265-69.

[76] *See* A89 (Figure 2 cited in all five "brackets and boldfaced" text).

"the PICs offer no explanation for how Figure 2 indicates that Pfizer practiced the Promoter Monitoring element. For this reason, the figure in no way serves to 'identify specifically where each element of each asserted claim is found within each Accused Instrumentality,' as Patent Local Rule 3.1(c) requires, and lends little to no support in creating a triable question of fact that Pfizer practices this element of Claim 1."[77]

## The quoted sentence does not cover the Promoter Monitoring Element

AntiCancer relied on this single sentence from the Pfizer Article: "The localization and intensity of GFP fluorescence in conceptuses from both treatment groups was varied."[78] This language does not refer either to a "promoter" or to any "monitoring" activity.

The term "GFP fluorescence" cannot be referring to the Promoter Monitoring Element. As AntiCancer admitted in its MSJ Opposition, "GFP fluorescence is certainly not a promoter."[79] In addition, AntiCancer cited the "GFP fluorescence" term after two other elements of claim 1 and an element of claim 5. These three other elements are all specifically directed to fluorophores and fluorescence.[80] AntiCancer's repeated use of this phrase in connection with other unrelated claim elements further demonstrates that the cited "GFP fluorescence" sentence has no relevance to the Promoter Monitoring Element.

---

[77] A9.

[78] A89, quoting A267 (the first sentence of the second full paragraph).

[79] A347. Nor is "EGLN1," which the Pfizer Article mentions in the sentence immediately following the cited sentence.

[80] *See* A89 & A90.

Thus, the District Court correctly concluded that AntiCancer's PICs provided no "explanation whatsoever for how" the "single sentence from the Pfizer paper" "maps on to the claim language" and therefore constitutes "evidence that Pfizer infringed on the Promoter Monitoring Element."[81]

## 2.    AntiCancer offered no evidence of infringement of the Delivering Cells Element.

Defendants have reproduced below a portion of AntiCancer's claim chart for claim 1 of the '159 Patent, with the Delivering Cells Element and the cited "brackets and boldface" evidence set off by the green box.



1. A method to monitor the ability of a promoter to promote expression in an animal of an endogenous gene that is controlled by said promoter, which method comprises:
   a) delivering, to an animal, cells containing a nucleic acid encoding a fluorophore
**[Fig. 2; "we generated transgenic mice expressing EGLN1 shRNA"]** operatively linked to the promoter of said endogenous gene whose ability to promote expression is

AntiCancer (again) cited Figure 2 and a 7-word portion of a sentence from the Pfizer Article. Neither citation indicates Pfizer's accused methods infringed the Delivering Cells Element.

## Figure 2 does not cover the Delivering Cells Element

The citation to Figure 2 does not suggest infringement of the Delivering Cells Element. Figure 2 does not illustrate the delivery of cells to an animal. Furthermore, neither the legend for Figure 2, nor

---

[81] A8.

any other text in the Article explaining or describing Figure 2 addresses the delivery of cells to an animal.[82]

Thus, the District Court properly concluded that "the reference to Figure 2" fails to provide "sufficient information for how Pfizer allegedly practiced this element," and that the PICs "draw no connection between Figure 2 and the relevant claim language."[83]

## The quoted sentence fragment does not cover the Delivering Cells Element

AntiCancer cited this fragment of a sentence from the Pfizer Article: "we generated transgenic mice expressing EGLN1 shRNA."[84] This language does not mention cells. It does not mention delivering cells, fluorophores, or nucleic acids encoding fluorophores to animals. The cited evidence only refers to animals (*i.e.*, "transgenic mice") with a particular genetic trait (*i.e.*, "expressing" a particular gene called "EGLN1 shRNA").

AntiCancer conceded in the proceedings below that the Pfizer Article did not indicate infringement of the Delivering Cells Element. In its MSJ Opposition, AntiCancer admitted that "the Pfizer Article does not explicitly state that GFP-labeled cells were delivered."[85] And during

---

[82] *See* A265-69.

[83] A10.

[84] A89, quoting A266 (the first sentence after the "Results and discussion" heading).

[85] A348.

the Hearing, AntiCancer's counsel stated: "So did we in the PICs specifically state that the cells were delivered by Pfizer? No …"[86]

Thus, the District Court correctly concluded that "the PICs provide no explanation for how that sentence maps on to the claim language," and that "AntiCancer in no way attempts to make a connection between the sentence provided and the claim language."[87]

### 3.    AntiCancer offered no evidence of infringement of the Metastasis to a Second Site Element.

Defendants have reproduced below AntiCancer's claim chart for claim 1 of the RE'337 Patent. Defendants have highlighted in red boxes the two references to the Metastasis to a Second Site Element and the immediately following "brackets and boldface" citations.

---

[86] A494:13-14.

[87] A10.

| CLAIM LANGUAGE<br>AntiCancer US Patent<br>No. RE39,337 | IDENTIFICATION OF ELEMENTS OF CLAIM<br>FOUND WITHIN ACCUSED INSTRUMENTALITIES |
|---|---|
| 1. A nude mouse model for progression of human neoplastic disease, the progression of said disease being characterized by growth of a primary tumor site and metastasis to secondary tumor sites, wherein said mouse [is characterized by having] has histologically intact human neoplastic tissue of at least 1 mm$^3$ in size transplanted onto an organ of said mouse which corresponds to the human organ from which said tissue is originally obtained; and[having] has sufficient immuno-deficiency to allow said transplanted neoplastic tissue to grow [and] at said primary site and metastasize to said secondary tumor sites, so as to mimic the progression of the neoplastic disease including the metastatic behavior of the neoplastic disease in [the human donor] humans. | "ESTABLISHMENT OF THE ORTHOTOPIC PRIMARY HUMAN HEPATOCELLULAR CARCINOMA MODEL FOR ONCOLOGY DRUG DISCOVERY," a poster presentation made by Pfizer scientists Gang Gary Li, James Christensen, and David Pocalyko, and Crown scientists Wenwei Li, Dawei Chen, and Yiyou Chen details the development of animal models that were used to test Pfizer's drug Sutent.  AntiCancer hereby incorporates the full text of that poster.<br><br>Below is the full text of this claim with each element of the claim followed by the evidence of the accused instrumentality found within the poster in brackets and boldface.<br><br>1. A nude mouse ["**nude mouse**"] model for progression of human neoplastic disease, the progression of said disease being characterized by growth of a primary tumor site and metastasis to secondary tumor sites, wherein said mouse [is characterized by having] has histologically intact human neoplastic tissue of at least 1 mm$^3$ in size transplanted onto an organ of said mouse which corresponds to the human organ from which said tissue is originally obtained ["**Tumor fragments derived from patient tumor tissues were surgically implanted into the left lobe of nude mouse liver.**"; "**Sutent treatment significantly inhibited orthotopic HCC tumor growth**"]; and[having] has sufficient immuno-deficiency ["**nude mouse**"] to allow said transplanted neoplastic tissue to grow [and] at said primary site and metastasize to said secondary tumor sites, so as to mimic the progression of the neoplastic disease including the metastatic behavior of said neoplastic disease in [the human donor] humans. ["**Plasma samples were collected at different time points for alpha-feto-protein (AFP) measurement. At termination, tumors were excised from liver and their weights and sizes were recorded.**"; "**In addition, histological analysis confirmed that orthotopically implanted primary human tumors maintained their histopathological characteristics.**"] |

The cited evidence from the Poster does not indicate that Defendants' accused methods practiced the Metastasis to a Second Site limitation.

- The first evidentiary citation is deficient because it only refers to the implanting of tumor tissues into a mouse liver:  "Tumor fragments derived from patient tumor tissues were surgically *implanted into* the left lobe of nude mouse *liver*."[88] The cited evidence says nothing about the implanted tumor "metastasizing" to a second organ or other location.

- The second evidentiary citation only refers to a researcher excising tumor tissues from the same site where they were

_____

[88] A95, quoting A295 ("Methods" paragraph) (emphasis added).

implanted—the mouse liver.[89] The cited evidence does not indicate that any excised tissue came from a "secondary tumor site" different from the "primary site."

The Poster quotes AntiCancer relied on all stated that the researchers implanted and collected tumors from the exact same place: the mouse's liver. There was no "metastasis" to a secondary site. Indeed, AntiCancer conceded in its MSJ Opposition that the PICs' citation to the Poster "does not state whether metastasis to secondary sites was specifically measured."[90]

Thus, the District Court correctly concluded that AntiCancer failed to indicate how the cited "statements map on to the claim language."[91] The court further explained:

> "… AntiCancer has left out the essential connection between the claim language and the allegedly infringing acts. *How* does the growth of the tumor at the primary site provide 'direct evidence' that the mice were sufficiently immuno-deficient to allow for metastasis to secondary sites? By skipping this essential connection, AntiCancer leaves Defendants—and the Court—guessing at how the patent was allegedly infringed … ."[92]

---

[89] A96, quoting A295 ("Methods" paragraph) ("At termination, tumors were **excised from liver** and their weights and sizes were recorded.") (emphasis added).

[90] A456 (quoting A349).

[91] A12.

[92] A13 (italics in original).

### 4.     AntiCancer has no argument that it had stated a *prima facie* case of infringement.

AntiCancer's brief is bereft of any substantive discussion of the quality of its infringement case. AntiCancer offered no argument or analysis challenging the District Court's specific conclusions regarding AntiCancer's lack of contentions and supporting evidence concerning the Noninfringed Elements. This is tantamount to an admission that the District Court did not err in concluding that AntiCancer did not have a *prima facie* case of infringement.

### D.     AntiCancer Has Failed To Show That The District Court Abused Its Discretion In Finding That AntiCancer's PICs Were Deficient And In Treating Them As Final And Binding.

The foundation of the District Court's summary judgment ruling is its finding that AntiCancer's PICs (which represented the case AntiCancer could present at trial) failed to state a *prima facie* case of infringement. AntiCancer's lead argument in its appeal is that it disclosed enough information in its PICs to satisfy the Patent Local Rules.[93] Yet AntiCancer has offered no persuasive argument that the District Court abused its discretion in finding the PICs "vague," "deficient," and "woefully insufficient," and in treating them as final and binding.

---

[93] *See* AntiCancer's Brief at 17-25.

## 1.   The District Court did not abuse its discretion in treating AntiCancer's PICs as its final contentions and not allowing AntiCancer to amend its PICs at will.

To impress upon litigants the significance they should attach to their PICs, courts generally do not allow parties to amend them. As one court explained:

> "Although federal courts are generally lenient in allowing parties to amend pleadings, such is not the case with amending preliminary infringement contentions. … The patent rules are designed to avoid 'vexatious shuffling of positions' that could occur if the parties are permitted to freely modify their infringement contentions at any point in the action."[94]

The Southern District rules are explicit on this point:  Patent L.R. 3.6 generally provides that the court must deem a claimant's PICs to be its "final contentions."[95]

AntiCancer was acutely aware it could lose summary judgment if it served deficient PICs. In the *Carestream* and *Cambridge* cases, the District Court granted summary judgment "because of fatal defects in Anticancer's PICs."[96] In those cases, as in this case, AntiCancer's PICs either "omitted" contentions regarding "specific claim limitations,"[97] or

---

[94] *Berger v. Rossignol Ski Co., Inc.*, Case No. C 05-02523, 2006 WL 1095914 at *3 (N.D. Cal. April 25, 2006) (granting summary judgment of noninfringement based on failure of PICs to show viable claim for infringement).

[95] Patent L.R. 3.6.

[96] A595. *See also, supra,* Section III.F.

[97] A595.

provided only "cursory, single-sentence allegations [that] do not establish 'where each element of each asserted claim is found within each Accused Instrumentality,' as Patent Local Rule 3.1(c) requires."[98]

Despite knowing it might not be able to amend its PICs, AntiCancer served "woefully insufficient" PICs. Yet in its appeal, AntiCancer complains that the District Court granted summary judgment even though AntiCancer "made clear" to the District Court and Defendants "that its contentions were preliminary and subject to change based on discovery." AntiCancer bases this argument (which AntiCancer has raised for the first time on appeal) on this boilerplate in its PICs: "the attached Asserted Claims and Preliminary Contentions Charts … identify *to the extent possible based on information currently in AntiCancer's possession* where each element of each asserted claim is found within each accused instrumentality of which AntiCancer is aware."[99]

AntiCancer's argument does not tell the whole story. In its brief, AntiCancer quoted only part of its boilerplate. The quoted paragraph goes on to state: "These identifications are based on a preliminary understanding of information **currently available** to AntiCancer, and AntiCancer reserves the right to supplement or amend these

---

[98] A337.

[99] AntiCancer's Brief at 24-25 (quoting A85; italics supplied by AntiCancer in its brief).

identifications **as discovery proceeds**."[100] As discussed above, AntiCancer never even attempted to learn more information about Defendants' accused methods. Discovery was open, but because of AntiCancer's choice to sit idle, discovery never "proceeded."

AntiCancer's argument is also legally wrong. Regardless of the "rights" AntiCancer purported to reserve in its PICs, AntiCancer could not unilaterally amend them. Under Patent L.R. 3.7, AntiCancer could amend its PICs only after obtaining the District Court's permission based on a showing of "good cause."[101] AntiCancer could not have made a "good cause" showing. As this Court has held, "'good cause'" requires a showing of diligence."[102] And the record indicates that AntiCancer, by failing to ever serve discovery requests or to ever seek leave to amend its PICs, was not diligent in developing its infringement case.

---

[100] A85 (emphasis added).

[101] A110 at Patent L.R. 3.7 ("Amendment or modification of the Preliminary or Final Infringement Contentions … may be made only by order of the court, which will be entered only upon a showing of good cause.").

[102] *O2 Micro*, 467 F.3d at 1366, 1367-68 (discussing the "good cause" requirement and affirming district court's conclusion that the plaintiff had not been diligent in trying to improve its infringement contentions). *See also Berger v. Rossignol Ski Co., Inc.*, Case No. C 05-02523, 2006 WL 1095914 at *4 (N.D. Cal. April 25, 2006), in which the court, in granting a MSJ based on the claimants' failure to disclose a viable infringement claim in its PICs, rejected the very argument AntiCancer makes: "plaintiffs' assertion that they 'qualified' their contentions by stating that they were subject to revision is immaterial; a party cannot unilaterally amend the Patent Local Rules."

## 2. AntiCancer's assertion that the District Court abused its discretion by binding AntiCancer to its PICs before AntiCancer could take discovery ignores the fact that AntiCancer never sought discovery.

AntiCancer repeatedly asserts in its brief that it was blocked from taking discovery that would have enabled it to generate more compliant PICs. For example, AntiCancer argues "the Southern District's Patent Local Rules and the district court's scheduling orders in the case … ***denied AntiCancer any opportunity to conduct discovery*** or to have its claims be decided on the merits."[103] AntiCancer's assertions boil down to an argument that, because Rule 56(c) refers to "depositions, answers to interrogatories, and admissions on file," the District Court could not grant summary judgment before the parties had engaged in written and deposition discovery "on the infringement issues."[104]

As noted above, AntiCancer waived this argument by not raising it before the District Court. Waiver aside, AntiCancer ignores the fact that it never even tried to obtain additional information regarding Defendants' accused methods. Even though the discovery period opened on November 1, 2011,[105] AntiCancer never served a single discovery request. This means no document requests, no requests for inspection,

---

[103] AntiCancer's Brief at 7 (emphasis added). For similar statements, also see *id.* at 9, 10, 11, 13, 14, 15, 17, 19, 20, 23.

[104] AntiCancer's Brief at 19.

[105] The court ordered the parties to complete their Rule 26(f) conference by November 1, 2011. (A632.)

no interrogatories, no requests for admissions, no deposition notices, and no third-party subpoenas. Nothing during the entire case.

AntiCancer had more than four months to try to learn something more about Defendants' accused methods (if it were so inclined) before Pfizer filed its MSJ, and almost four more months to seek discovery while Defendants' MSJ was pending. But AntiCancer sat idle.

Moreover, the District Court had no reason to think that AntiCancer even wanted more information about Defendants' accused methods. In the proceedings below, AntiCancer did not complain at all about a lack of discovery, or about Defendants' performing the allegedly infringing methods "secretly and behind closed doors."[106] AntiCancer also did not argue that the Patent Local Rules and the District Court's CMC Order somehow operated to "deny" AntiCancer an "opportunity" to conduct discovery. AntiCancer did not attempt to persuade the District Court to shelve Defendants' MSJ pending discovery by filing a Rule 56(d) declaration. The first time AntiCancer *ever* suggested it wanted or needed more discovery was in its Appellant's Brief.

### 3. The District Court did not abuse its discretion in not applying a lesser standard for PICs.

In defending the adequacy of its PICs, AntiCancer argues (for the first time on appeal) the Patent Local Rules required AntiCancer to

---

[106] AntiCancer's Brief at 11. *See also id.* at 19 (referring to Defendants' purported "secret accused methods").

disclose only as much as it knew "*at that time*," and that AntiCancer did that.[107] Under the Patent Local Rules, Southern District courts do not merely expect claimants to do as best they can "at that time." They expect them to serve contentions that are specific enough to disclose and preserve any infringement theory claimants hope to present at trial, and any viable theory must include infringement contentions covering every claim element of each asserted claim. AntiCancer knew that from the text of Patent L.R. 3.1(c) and from the District Court's rulings in the earlier *Carestream* and *Cambridge* cases.

In addition, AntiCancer has offered no support for its watered-down interpretation, which would allow claimants to string defendants along with ever-evolving PICs. This interpretation is directly contrary to the intent of the rules, which is to force litigants to "crystallize" their "theories of the case **early in the litigation** and to **adhere to those theories once disclosed**."[108]

AntiCancer argues its PICs were sufficient to disclose its "theory of the case" to Defendants.[109] If that is true, then AntiCancer's theory did not cover the Noninfringed Elements. Therefore, AntiCancer's "woefully

---

[107] AntiCancer's Brief at 21, 24 (italics supplied by AntiCancer).

[108] *Bender v. Freescale Semiconductor, Inc.*, Case No. 09-1156 PHJ, 2010 WL 1689465, at *2 (N.D. Cal. April 26, 2010) (discussing rules identical to those adopted by the Southern District of California) (emphasis added). *See also O2 Micro*, 467 F.3d at 1364.

[109] AntiCancer's Brief at 24.

insufficient" expression of its "theory of the case" was not adequate to state a triable claim for infringement and ward off summary judgment.

### 4. The District Court did not abuse its discretion by interpreting the Patent Local Rules as requiring a certain degree of specificity in AntiCancer's PICs.

AntiCancer argues (for the first time on appeal) the District Court abused its discretion by enforcing the Patent Local Rules in "a way that required AntiCancer to **prove its case of infringement**, only five (5) days after it had asserted its infringement claims, and before it had any chance to conduct discovery."[110] But this is not what the District Court did. Rather, the District Court granted summary judgment because AntiCancer had demonstrated through its legally insufficient PICs that there was no possibility AntiCancer could prove its infringement claims. This is consistent with the very purpose of summary judgment: to prevent claims that necessarily will fail as a matter of law from proceeding to trial.

In its MSJ ruling, the District Court made it clear it did not expect a claimant to "prove" its case in its PICs. Rather, the District Court stated it expects PICs to "contain 'sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patents themselves.'"[111] Under the District

---

[110] AntiCancer's Brief at 20 (emphasis in original).

[111] A6 (quoting *Network Caching Tech., LLC v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881, at *13 (N.D. Cal. Mar. 21, 2003)).

Court's standard, AntiCancer did not need to "prove its case of infringement" in its PICs; AntiCancer simply had to "include [in its PICs] an explanation of how AntiCancer believes Defendants' accused infringing products read on the asserted claim language."[112]

The District Court's view of what a party must include in its PICs is in complete harmony with this Court's analysis of an identical set of local rules from the Northern District of California. In *O2 Micro*, this Court declared that the Northern District's rules

> "require[] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery. The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories."[113]

This Court further stated that there is "nothing in the Federal Rules that is inconsistent with local rules requiring the early disclosure of infringement and invalidity contentions and requiring amendments to contentions to be filed with diligence."[114]

Thus, the District Court did not subject AntiCancer to an unlawful standard of what a claimant must disclose in its PICs.

---

[112] A7 (citations omitted).

[113] *O2 Micro*, 467 F.3d at 1365-66.

[114] *O2 Micro*, 467 F.3d at 1366.

## 5. The District Court did not abuse its discretion in granting summary judgment before claim construction.

AntiCancer argues the District Court abused its discretion by finding the PICs fatally defective before claim construction.[115] But as Pfizer pointed out in the proceedings below, AntiCancer's PICs were fatally defective because they did not offer adequate contentions for three claim elements, regardless of how the District Court might construe them. Furthermore, AntiCancer failed to identify any claim construction issue that would influence the District Court's analysis of the PICs.[116]

## E. The District Court Did Not Abuse Its Discretion In Requiring AntiCancer To Reimburse Defendants For The Costs Incurred In Bringing Their MSJ In Order To Secure Permission To Amend Its PICs.

AntiCancer contends that the District Court could not condition AntiCancer's permission to amend its PICs on AntiCancer paying Defendants' MSJ-related expenses.[117] The law is clear, however, that the District Court possessed the power to impose such a "mitigating condition" on AntiCancer. And the District Court did not abuse its discretion in exercising that power.

---

[115] AntiCancer's Brief at 19.

[116] A461.

[117] AntiCancer's Brief at 28-30.

## 1. The District Court had the discretionary authority to impose a mitigating condition on AntiCancer.

It is well settled that a federal court can issue orders and fashion remedies that it deems necessary and appropriate to maintain the fair administration of justice. For example, Federal Rule 16(f)(1) authorizes courts to issue as a sanction "any just orders" if a party "fails to obey a scheduling or other pretrial order."[118] And, as AntiCancer acknowledges, courts have "inherent powers" to issue sanctions when a party disobeys a court order.[119]

Trial courts in the Ninth Circuit have broad leeway to fashion orders that appropriately correspond to the severity of a party's misconduct. In *Wong v. Regents of Univ. of Cal.*, the Ninth Circuit explained the reason for this broad grant of discretion:

> "[T]he district court needs the authority to manage the cases before it efficiently and effectively. … Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines. Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence."[120]

---

[118] Fed. R. Civ. Proc. 16(f)(1)(C). The court wrote the full text of Patent L.R. 3.1 into its September 21, 2011 CMC Order. (A113-15 at § 2.) Thus, in finding that AntiCancer had not complied with Patent L.R. 3.1, the court could sanction AntiCancer for violating Patent L.R. 3.1 and/or for disobeying the CMC Order.

[119] AntiCancer's Brief at 29.

[120] *Wong v. Regents of Univ. of Cal.*, 410 F.3d at 1060 (affirming decision excluding late-identified witnesses from testifying at trial).

This Court, in *SanDisk Corp. v. Memorex Prods., Inc.,* likewise stated it "gives broad deference to the trial court's application of local procedural rules in view of the trial court's need to control the parties and flow of litigation before it."[121] Thus, as this Court noted in *O2 Micro,* a "court may impose **any 'just' sanction** for the failure to obey a scheduling order, including 'refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence.'"[122]

The discretionary authority to issue sanctions clearly extends to enforcing patent local rules. For example, in *SanDisk,* this Court found that the trial court did not abuse its discretion in excluding evidence pertaining to theories of claim construction and infringement that the party failed to disclose in violation of local patent rules and the trial court's scheduling order.[123] And in *O2 Micro,* this Court stated that "both the Ninth Circuit and this court have concluded that the exclusion of evidence is often an appropriate sanction for the failure to comply" with "disclosure deadlines required by the local patent rules and the case management order."[124] Indeed, "This Court defers to the district

---

[121] *SanDisk Corp. v. Memorex Prods., Inc.,* 415 F.3d 1278, 1292 (Fed. Cir. 2005).

[122] *O2 Micro*, 467 F.3d at 1363 (citing Federal Rules 16(f) & 37(b)(2)(B)).

[123] *SanDisk,* 415 F.3d at 1292.

[124] *O2 Micro*, 467 F.3d at 1369.

court when interpreting and enforcing local rules so as not to frustrate local attempts to manage patent cases according to prescribed guidelines."[125]

## 2.   The District Court acted within the scope of its discretionary authority in deciding to impose a mitigating condition on AntiCancer.

AntiCancer contends the District Court "never made any factual findings that would support such a sanction against AntiCancer."[126] The court's opinion exposes the falsity of AntiCancer's assertion. The District Court declared that AntiCancer had "acted *unreasonably* in submitting these woefully insufficient PICs."[127] It found AntiCancer was "*disingenuous* in setting forth its theory of infringement with such vague PICs given that it was *made aware of the possible repercussions of insufficient PICs on at least two prior occasions in cases before this Court*."[128] Indeed, from the earlier *Carestream* and *Cambridge* decisions, AntiCancer knew that PICs merely containing "cursory, single-sentence allegations [that] do not establish 'where each element of each asserted claim is found within each Accused Instrumentality'" do not satisfy Patent Local Rule 3.1.[129] The

---

[125] *Genentech*, 289 F.3d at 774.

[126] AntiCancer's Brief at 28.

[127] A14 (emphasis added).

[128] A14-15 (emphasis added).

[129] A337.

court observed that AntiCancer had "done little to improve upon the defective PICs that proved to be dispositive in its earlier infringement lawsuits."[130]

## 3. The District Court's mitigating condition was reasonable under the circumstances.

Given AntiCancer's "unreasonable" and "disingenuous" actions, the District Court felt it would not be just to let AntiCancer amend its PICs without paying a penalty. In devising an appropriate penalty for AntiCancer, the District Court had to consider how the case might have been different if AntiCancer had not served "woefully insufficient" PICs. By serving deficient PICs, AntiCancer set in motion a series of litigation events that forced Defendants to incur substantial legal expenses they should not have had to incur. The District Court concluded (rightly so) that Defendants' MSJ "would not have been brought or litigated in this fashion but for AntiCancer's unreasonable conduct."[131]

The District Court determined that the fair thing to do would be to give AntiCancer a choice:  secure the right to amend by reimbursing Defendants for the unnecessary costs they incurred in moving for

---

[130] A7.

[131] A15. These stated findings belie AntiCancer's assertion in its Opening Brief that the "district court did not make any findings that were sufficient to support such a conditional award of sanctions." (AntiCancer's Brief at 14.)

summary judgment, or accept summary judgment based on AntiCancer's inability to state a triable case for infringement.

AntiCancer argues the District Court's mitigating condition was unduly harsh. But given AntiCancer's conduct and the consequences of that conduct, it actually was charitable of the District Court to offer AntiCancer a way to possibly avoid summary judgment at that time. After all, the court could have granted summary judgment **and** ordered AntiCancer to pay Defendants' costs.

In its appeal, AntiCancer has not identified any abuse of discretion by the District Court. And it cannot. The District Court's determination that it was "too late in the lawsuit to allow AntiCancer to cure its [PICs] deficiency"[132] without reimbursing Defendants was not "clearly unreasonable, arbitrary, or fanciful."[133]

## F.    The District Court's Interpretation And Application Of The Southern District's Patent Local Rules Is Consistent With The Federal Rules Of Civil Procedure.

AntiCancer complains (for the first time on appeal) that the manner in which the District Court applied the Patent Local Rules conflicts with the Federal Rules of Civil Procedure.[134] But the Southern District patent rules are completely consistent with the Federal Rules

---

[132] A15.

[133] *See Genentech*, 289 F.3d at 774 (listing abuse of discretion factors).

[134] AntiCancer's Brief at 26-28.

and this Court's decisions. And the District Court acted within its discretionary authority in interpreting and applying those rules.

## 1. This Court has upheld the validity of local rules requiring the early disclosure of infringement contentions.

In challenging the validity of the Southern District's Patent Local Rules, AntiCancer quotes a passage from this Court's opinion in *O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.*,[135] in which this Court cautioned that it was possible that a "local rule ***could*** conflict with the spirit, if not the letter, of the broad discovery regime under the Federal Rules of Civil Procedure, especially given the particular importance of discovery in complex patent cases."[136] But AntiCancer ignored the holding in *O2 Micro,* which concerned the particular type of local rules at issue in this case. Said this Court: "we see nothing in the Federal Rules that is inconsistent with local rules requiring the early disclosure of infringement and invalidity contentions and requiring amendments to contentions to be filed with diligence."[137]

Given this Court's explicit affirmance of rules like Patent L.R. 3.1, it is not surprising that AntiCancer has cited no case in which any court even hinted that rules providing for the early disclosure of substantive

---

[135] 467 F.3d 1355 (Fed. Cir. 2006) (emphasis added). *See also* A5.

[136] *O2 Micro*, 467 F.3d at 1365 (quoted in AntiCancer's Brief, with emphasis, at 25-26).

[137] *Id.* at 1366.

infringement contentions are in any way inconsistent with any Federal Rule of Civil Procedure.

## 2. The Southern District's Patent Local Rules do not dictate the outcome of cases and cause courts to decide matters on "purely procedural grounds."

AntiCancer contends (for the first time on appeal) that Patent Local Rule 3.1 requires a claimant to serve PICs "at a time when the plaintiff could not possibly have had any chance to conduct discovery regarding a defendants' secret activities."[138] Thus, AntiCancer asserts, "the Patent Local Rules can actually *dictate and determine* the outcome of this case, on *purely procedural grounds* that are *not available* under the Federal Rules of Civil Procedure."[139]

The primary flaw in AntiCancer's argument is that it only applies, in cases like this one, where a party has violated Patent L.R. 3.1(c). As long as a claimant complies with that rule, no purported conflict with the Federal Rules will ever materialize.

Another significant flaw in AntiCancer's position is that it improperly focuses on Patent L.R. 3.1 in isolation from all the other rules governing a patent case. In rare situations, Patent L.R. 3.1 could require claimants to serve their PICs before they are able to serve discovery. But this is not a problem. Claimants should be able to serve

---

[138] AntiCancer's Brief at 27.

[139] AntiCancer's Brief at 26 (italics in original).

adequate PICs based on their prefiling investigation. Indeed, to satisfy their Rule 11 obligations, a claimant should have a good faith basis for contending that the accused instrumentalities infringe each claim limitation.[140] Moreover, in those cases where the claimant would like to bolster its PICs with more information about a defendant's purportedly "secret" methods, the claimant can seek discovery and then ask the court for leave to amend its PICs, as provided for in the Southern District's patent rules.[141]

AntiCancer certainly had time to take discovery: Eight months passed between the time discovery opened and when the District Court ruled on Defendants' MSJ. However, AntiCancer chose not to avail itself of either the Federal Rules' discovery tools or the Patent Local Rules' amendment provisions. Instead, AntiCancer stubbornly insisted its original PICs were just fine (despite their facially obvious shortcomings).[142] As the District Court stated to AntiCancer's counsel during the May 31, 2012 Hearing: "You never asked or sought leave to

---

[140] Contrary to AntiCancer's suggestion, AntiCancer did not have just a few days to draft and serve its PICs. AntiCancer indicated it planned to assert infringement claims against Pfizer during settlement conferences in the summer of 2011. Thus, before the court's November 14, 2011 deadline, AntiCancer had many months to prepare PICs based on whatever Rule 11 prefiling investigation AntiCancer performed.

[141] A110 at Patent L.R. 3.7.

[142] A346 ("ANTICANCER'S PRELIMINARY INFRINGEMENT CONTENTIONS ARE SUFFICIENT AND FULLY COMPLY WITH THE PATENT LOCAL RULES") (all-caps emphasis in original).

amend your preliminary infringement contentions, nor have you indicated in your opposition that any amendment might be fruitful."[143]

AntiCancer argues that "once the issues have been defined and framed through the core pleadings, the Federal Rules support the parties' broad right to conduct discovery before their claims and defenses are decided on the merits." (AntiCancer's Brief at 27.) AntiCancer could have exercised its "broad right to conduct discovery" in this case but elected not to. This left the District Court with no choice but to judge AntiCancer's infringement case according to AntiCancer's original PICs. Any injury AntiCancer has sustained from the District Court's grant of summary judgment is entirely self-inflicted.

AntiCancer also argues that what "happened to AntiCancer in this case could easily happen in a different case with different parties and a different method patent."[144] But that only would be true if other parties behaved like AntiCancer (*i.e.,* "unreasonably") and filed infringement claims without first developing facts indicating the accused instrumentalities infringed all required claim limitations, and thereafter neglected to take discovery. Thus, it is not surprising that AntiCancer could not refer this Court to any case in which a court's enforcement of patent local rules resulted in the premature dismissal of meritorious claims on "purely procedural grounds."

---

[143] A496 at 1:4.

[144] AntiCancer's Brief at 28.

## G.    Given All The Circumstances, The District Court Correctly Granted Summary Judgment.

AntiCancer's rejection of the District Court's proposed mitigating condition effectively left the court with no choice but to grant Defendants' MSJ. The court had decided, correctly, that the significant defects in AntiCancer's PICs confirmed that AntiCancer had not stated a triable case of infringement. Under the Patent Local Rules, the court had to treat the PICs as final and binding, unless AntiCancer obtained the Court's permission to amend them. But AntiCancer never tried to amend its PICs. If AntiCancer had sought leave to amend, it would not have been able to make the required "good cause" showing because AntiCancer had failed to diligently seek discovery regarding Defendants' accused methods. And when the District Court charitably offered to let AntiCancer amend its PICs if it met the court's mitigating condition, AntiCancer refused. This left the court with a set of final contentions that offered no evidence or explanation of how Defendants' accused methods infringed two elements of all the asserted claims of the '159 patent, and one element of all the asserted claims of the RE'337 patent. In light of all of this, the District Court correctly granted summary judgment.

This Court's precedent supports the District Court's decision. For example, in *O2 Micro*, this Court affirmed the district court's grant of summary judgment, based on the district court's refusal to consider

expert declarations that presented infringement theories the plaintiff did not disclose in its infringement contentions.[145]

Similarly, in *Genentech,* this Court ruled that the district court did not abuse its discretion in precluding Genentech from asserting infringement under the doctrine of equivalents because Genentech neglected to assert that theory in its infringement contentions.[146]

AntiCancer was well aware of these precedents. The District Court relied on them (as well as other decisions) in granting summary judgment against AntiCancer in the previous *Carestream* and *Cambridge* cases due to deficiencies it found in AntiCancer's PICs.[147] And the District Court correctly relied on these decisions again here.

## VI. Conclusion and Relief Sought.

AntiCancer's PICs confirmed that AntiCancer was incapable of stating patent infringement claims against Defendants. On that basis, the District Court properly granted summary judgment. Therefore, Defendants respectfully request that this Court affirm the District Court's judgment in its entirety.

---

[145] *O2 Micro*, 467 F.3d 1355.

[146] *Genentech,* 289 F.3d at 773-74.

[147] *See* A541, A542, A588.

Dated:  February 28, 2013          Respectfully submitted,


By: /s Richard de Bodo
    Richard de Bodo

DLA Piper LLP (US)

*Attorneys for Defendant-Appellee
Pfizer Inc.*


By: /s Jing James Li
    Jing James Li

LiLaw, Inc.

*Attorneys for Defendant-Appellee
Crown BioScience, Inc.*

# Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e) in that:

> The brief contains 11,738 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) in that:

> The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 (for PCs) and 2011 (for the Macintosh) in a 14-point Century Schoolbook font for body text and footnotes, and a 14-point (or larger) Verdana font for titles and headings.

Dated:  February 28, 2013          Respectfully submitted,


                                   By:  /s Richard de Bodo
                                        Richard de Bodo

                                   DLA PIPER LLP (US)

*Attorneys for Defendant-Appellee Pfizer Inc.*

# Certificate of Service

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within cause. I am an attorney with DLA Piper LLP (US), whose business address is 2000 Avenue of the Stars, Suite 400 North Tower, Los Angeles, CA 90067, and am filing and serving the following:

### Defendants-Appellees' Brief

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on February 28, 2013.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that copies of the foregoing document are being served via email on the following counsel:

| | |
|---|---|
| Richard A. Clegg<br>Law Office of Richard Clegg<br>501 West Broadway, Suite 800<br>San Diego, CA 92101<br>Tel.: 619-400-4920<br>*rick@rclegglaw.com*<br><br>*Attorneys for AntiCancer, Inc.* | Matthew D. Valenti, Esq.<br>AntiCancer, Inc.<br>7917 Ostrow Street<br>San Diego, CA 92111<br>Direct: 858-654-2555<br>Fax: 858-268-4175<br>Email: mattvalenti@anticancer.com<br><br>*Attorney for AntiCancer, Inc.* |

Dated:  February 28, 2013          Respectfully submitted,

By: /s Richard de Bodo
    Richard de Bodo

DLA PIPER LLP (US)

*Attorneys for Defendant-Appellee*
*Pfizer Inc.*