Appeal No. 2013-1056

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

ANTICANCER, INC.

Plaintiff-Appellant,

v.

PFIZER, INC.,

Defendant-Appellee,

and

CROWN BIOSCIENCE, INC.,

Defendant-Appellee,

and

DOES 1-10

Defendants.

Appeal from the United States District Court for the Southern District
of California in Case No. 11-CV-0107, Judge Janis L. Sammartino

**PLAINTIFF-APPELLANT ANTICANCER, INC.'S REPLY BRIEF**

Richard A. Clegg
Law Office of Richard Clegg
501 West Broadway, Suite 800
San Diego, CA 92101
619-400-4920 (Tel.)
Attorney for Plaintiff-Appellant AntiCancer, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

I.  INTRODUCTION ............................................................................1

II. ARGUMENT ....................................................................................5

  A.  AntiCancer Did Not "Waive" Any of the Arguments it Has Made in This Appeal. ...........................................................................................6

  B.  Even If AntiCancer Did Not Properly Preserve Certain of the Issues It Has Raised in this Appeal, This Court Should Still Consider Those Issues. .............11

  C.  The District Court Erred When It Granted Summary Judgment of Noninfringement Based Solely on AntiCancer's Preliminary Infringement Contentions. ..................................................................................14

  D.  The Southern District's Patent Local Rules Violate FRCP 83, Because They Are Inconsistent With the Federal Rules of Civil Procedure In Cases Involving Accused Methods That Are Performed Secretly. ................................................21

  E.  The District Court Erred by Requiring AntiCancer to Pay Defendants' Legal Fees and Costs in Bringing Their Summary Judgment Motions, As a Conditional Sanction For Permitting AntiCancer to Supplement Its Infringement Contentions. ...................................................................................25

III. CONCLUSION ................................................................................28

# TABLE OF AUTHORITIES

## CASES

*Allen Eng'g Corp. v. Bartell Indus., Inc.,*
299 F.3d 1336 (Fed. Cir. 2002) ..............................................................16

*American Medical Systems, Inc. v. Biolitec, Inc.,*
618 F.3d 1354 (Fed. Cir. 2010) ..............................................................16

*Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,*
853 F.2d 1557 (Fed. Cir. 1988) ................................................................6

*Balsam Coffee Solutions Inc. v. Folgers Coffee Co.,*
2009 WL 4906860 (E.D. Tex. Dec. 9, 2009) .........................................15

*Interactive Gift Express, Inc. v. Compuserve, Inc. et al.,*
256 F.3d 1323 (Fed. Cir. 2001) .......................................................11, 14

*Linex Techs., Inc. v. Belkin Int'l, Inc.,*
628 F.Supp.2d 703 (E.D. Tex. 2008) ......................................................15

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,*
467 F.3d 1355 (Fed. Cir. 2006) .......................................................23, 24

*Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766 (1980) ....................................26

*Stern v. U.S. Dist. Court for Dist. of Mass.*, 214 F.3d 4 (1st Cir. 2000) ..................13

*Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005)..................25

## STATUTES

Fed.R.Civ.P. 56(d)...................................................................................7

## RULES

Patent Local Rule 3.1 ............................................................5, 15, 21, 22

This appeal raises issues that could seriously impact the enforceability of method patents, in cases where the accused infringers are practicing their accused methods privately, behind closed doors.

The Patent Local Rules of the Southern District of California are similar to the Patent Local Rules in many other judicial districts across the country. They work well in most patent cases. In this case, however, they broke down badly. They broke down in a way that jeopardizes the ability of method patent owners to enforce their lawful patent rights against certain types of infringers. They broke down in a way that rewards accused infringers who practice a patented method internally, secretly and behind closed doors. And, they broke down in a way that has happened to AntiCancer before, and that could happen to other patent owners in future cases.

## I.    INTRODUCTION

In the opening pages of their brief, Pfizer and CrownBio gave their views about what the District Court had been "left to ponder" in deciding how to rule on their motion for summary judgment of noninfringement.

They said, "It had a plaintiff that did not originally allege infringement claims, and only added them ten months into the lawsuit in an apparent effort to improve its settlement position." [Defendants' Brief at 4.]

They said, "It had a plaintiff whose prefiling investigation failed to produce *any evidence* indicating Defendants' accused methods infringed all the limitations of any asserted claims, thereby rendering it incapable of writing PICs that disclosed a prima facie case of infringement." [Defendants' Brief at 4 (emphasis added).]

Reading these words, this Court might be tempted to think that AntiCancer brought objectively baseless patent infringement claims against Pfizer and CrownBio, only to "improve its settlement position." Nothing could be further from the truth.

It is true that AntiCancer's original Complaint did not include patent infringement claims; it alleged the breach of a technology license agreement through which AntiCancer had licensed certain patented technologies to Pfizer. [A610-623.] As discussed in its First Amended Complaint, AntiCancer became aware of journal articles that Pfizer had published, and poster presentations and press releases that Pfizer and CrownBio had jointly published, which lead AntiCancer to conclude that Pfizer had infringed AntiCancer's '159 Patent and that both Pfizer and CrownBio had infringed AntiCancer's RE '337 Patent. [A132-133.]

AntiCancer filed its First Amended Complaint, with its patent infringement claims against Pfizer and CrownBio, on November 9, 2011. [A52.] The patent

infringement claims complied with all the pleading requirements of the Federal Rules of Civil Procedure:  Pfizer and CrownBio each filed an Answer in response to the First Amended Complaint, and did not attempt to challenge the legal sufficiency of the patent infringement claims. [A53.]    Some of AntiCancer's allegations were made on "information and belief," but the infringement allegations were sufficient to state cognizable claims under the Federal Rules.

AntiCancer actually had plenty of direct evidence for all but three claim elements.  For those three elements, AntiCancer had evidence that enabled it to draw strong inferences about what Pfizer and CrownBio had done, in general terms, but AntiCancer still had no way of knowing exactly what they had done in their private research laboratories, or exactly how they had done it.  Consequently, when AntiCancer was *ordered* to serve its Preliminary Infringement Contentions ("PICs") by November 14, 2011, only five (5) days after it had filed its infringement claims against Pfizer and CrownBio, there was no way for AntiCancer to include all the details of what Pfizer and CrownBio had *actually done* in their private research laboratories.

The District Court granted summary judgment against AntiCancer *solely* on the basis of that same PIC document, which had been served only five (5) days into AntiCancer's infringement case against Pfizer and CrownBio.  [A1-16, A16-17.]

3

The point of all this is that, when Pfizer and CrownBio tell the Court that AntiCancer's "prefiling investigation failed to produce ***any evidence*** indicating Defendants' accused methods infringed all the limitations of any asserted claims," it does not mean that AntiCancer's infringement claims lacked merit.  It also does not mean that Pfizer and CrownBio were not infringing AntiCancer's patent.  It just means that, when AntiCancer filed its well-pleaded infringement claims against Pfizer and CrownBio, and when it served its PICs five (5) days later, Pfizer and CrownBio had ***sole possession*** of at least some of the detailed evidence that AntiCancer would ultimately need to prove its claims.

To this day, nobody (except Pfizer and CrownBio) knows specifically what Pfizer and CrownBio ***actually did*** in their research laboratories.  To this day, nobody (except Pfizer and CrownBio) really knows whether Pfizer and CrownBio ***actually infringed*** any of AntiCancer's asserted method claims.  Because of the way Pfizer and CrownBio framed the issues in their summary judgment motion, the District Court never considered any evidence of what Pfizer and CrownBio had ***actually done*** in their private research laboratories. The District Court granted summary judgment based solely on AntiCancer's PICs, on procedural grounds that had nothing to do with the actual substantive merits of AntiCancer's infringement claims against Pfizer and CrownBio.

In short, the Southern District of California's Patent Local Rules, and not the Federal Rules of Civil Procedure, drove and dictated the outcome of this case in the trial court below. The Patent Local Rules required AntiCancer to serve its PICs before it could possibly have taken any discovery. The Patent Local Rules provided a ***situational loophole*** that allowed Pfizer and CrownBio to obtain summary judgment of "noninfringement," without ever having to say or show what they had actually done in their private research laboratories. This Court should close that loophole.

## II.     ARGUMENT

AntiCancer has raised three separate issues in this appeal:

1.     Whether the District Court erred in granting summary judgment of non-infringement in the Defendants' favor, based solely on AntiCancer's Preliminary Infringement Contentions;

2.     Whether the Patent Local Rules of the Southern District of California, including Patent Local Rule 3.1, conflict with the Federal Rules of Civil Procedure in a case in which the asserted claims are directed to methods and the full details of the accused methods are known to a defendant but not to the plaintiff; and

3.     Whether the District Court abused its discretion by conditioning AntiCancer's ability to supplement its Preliminary Infringement Contentions on AntiCancer agreeing to pay certain legal fees and costs of the Defendants.

## A.    AntiCancer Did Not "Waive" Any of the Arguments it Has Made in This Appeal.

Defendants argue that AntiCancer "waived" certain arguments that it relies on in this appeal.

First, Defendants argue that AntiCancer waived any arguments based on its inability to conduct discovery because its "failed" to file a "Rule 56(d)" response to the Defendants' summary judgment motion.  The Defendants quote from the Federal Circuit's decision in *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988), which states, "a litigant's complaint that it needed discovery will not be heard on appeal ***when discovery was precluded by its own failure to seek Rule 56(d) protection***."

However, AntiCancer did not "fail" to seek Rule 56(d) protection.  On the contrary, Rule 56(d) protection was never an option for AntiCancer, given the way the Defendants chose to frame the issues in their summary judgment motion.

If the Defendants had filed a summary judgment motion based on ***actual evidence***, for example, a motion that was based on testimony or documents showing what they had actually done, or not done, in their private research laboratories, AntiCancer could have filed a Rule 56(d) response, so it could take discovery to develop conflicting evidence.

But, the Defendants did not file such a motion. Instead, they filed a motion that was based *solely* on attacking the sufficiency of AntiCancer's Preliminary Infringement Contentions (PICs), which were served on November 9, 2011, only five (5) days after AntiCancer filed its infringement claims. The content of AntiCancer's November 9, 2011, PICs was undisputed. The only issue the Defendants raised in their summary judgment motions was whether AntiCancer's PICs met the requirements of the Southern District of California's Patent Local Rules. [A235-237.] The District Court determined that single issue in a vacuum, without going beyond the four corners of the PIC document itself. [A1-16.]

Rule 56(d) allows a party to show, "by affidavit or declaration that, for specified reasons, it cannot present facts *essential to justify its opposition*." Fed.R.Civ.P. 56(d). What discovery could AntiCancer have requested under Rule 56(d) that would have been relevant to that single issue? The answer is: None. Given the way the Defendants framed the sole issue in their summary judgment motion, there was no basis for AntiCancer to file a Rule 56(d) response. The only way for AntiCancer to "justify its opposition" was to show that its PICs met the requirements of the Patent Local Rules.

It is not surprising that the Defendants took the approach they took with their summary judgment motion. It enabled them to seek summary judgment without having to say *anything* about what they had *actually* done in their laboratories. It

allowed both Pfizer and CrownBio to avoid making any affirmative statements about the details of their internal research activities.  In fact, they never presented *any* evidence to show that their accused activities omitted any step of AntiCancer's claimed methods.  Instead, knowing that AntiCancer had not had any time to take discovery before it was required to serve its PICs, Pfizer and CrownBio focused their summary judgment motion exclusively on the purported gaps in AntiCancer's PICs.

If the Defendants had filed a summary judgment motion that was based on actual evidence regarding their internal research activities, AntiCancer could have filed a Rule 56(d) response, or taken one of the alternate future paths that the Defendants now speculate that AntiCancer might have taken.  Instead, Defendants filed a motion that was based solely on attacking AntiCancer's previously served PICs.  Defendants fault AntiCancer for "doubling down" and "insisting" that its PICs complied with the requirements of the Local Rules in its opposition to their motion for summary judgment.  However, given the way Pfizer and CrownBio framed the issue in their motion, AntiCancer's only option was to defend its PICs.  Moreover, AntiCancer was right, as shown in Section II-C, below.

Defendants argue that the discovery period opened up "on or about November 1, 2011," and seem to suggest that AntiCancer could have tried to take discovery between November 1 and November 14, when it served its PICs.   That

is incorrect.  Until November 9, 2011, when AntiCancer filed its First Amended Complaint with its patent infringement claims against both Defendants, the only claims in the case were *contract claims*.  [A610-623.]   When it filed its patent infringement claims on November 9, 2011, AntiCancer had only five (5) days, until November 14, 2011, to serve its PICs on the Defendants.  It is absurd to suggest that AntiCancer could have conducted any meaningful discovery during that five-day period.

Defendants also fault AntiCancer for not taking discovery during the four-month period after it served its PICs and before they filed their summary judgment motion.   However, Pfizer and CrownBio waited four (4) full months after AntiCancer served its PICs to file their summary judgment motion.   As AntiCancer's General Counsel explained at oral arguments on their motion, AntiCancer "believed all along that when they read the PICs, when they saw the evidence, they knew that we had stated with specificity that there was infringement." [A496, ll. 18-24.]  Further, when Pfizer and CrownBio finally filed their summary judgment motion on March 28, 2012, there were still ***six months*** remaining in the fact discovery period, which left plenty of time for AntiCancer to take fact discovery.[1]

---

1      In the operative scheduling order, fact discovery was not set to close until September 4, 2012 .  [A123 at ¶16.]

Defendants speculate regarding various courses of action that AntiCancer "might" have taken or things that it "could" have tried to do, but did not do, before they filed their summary judgment motion. For example, at page 2 of their brief, they speculate that AntiCancer "could have sought an adjustment to the case schedule," or "could have immediately served discovery" and then sought leave to amend its PICs for "good cause shown", or "could have filed discovery, filed a Rule 56(d) request and asked the District Court to shelve Defendants' MSJ." They even suggest that AntiCancer could have "challenged Pfizer's claimed amount [for the sanction the District Court would impose if AntiCancer chose to supplement its PICs] and signaled to the court it wanted to avoid summary judgment."

However, Pfizer's and CrownBio's summary judgment motion was based *solely* on the PICs that AntiCancer served on November 14, 2011. The district court granted judgment *solely* on the basis of AntiCancer's November 14, 2011, PICs. And this appeal is being taken *solely* from the Court's Order that granted the Defendants' summary judgment motion, based *solely* on the PICs. It is sheer speculation for Defendants to try to guess at things that AntiCancer "might" or "could" have done after it served its PICs on November 14, 2011. The Defendants should not be allowed to rely on such speculation to avoid comprehensive appellate review of the Order that *they* requested the District Court to enter.

10

**B.      Even If AntiCancer Did Not Properly Preserve Certain of the Issues It Has Raised in this Appeal, This Court Should Still Consider Those Issues.**

Even if the Court concludes that AntiCancer did not properly preserve certain issues for appeal, it should still consider those issues.  As this Court explained in *Interactive Gift Express, Inc. v. Compuserve, Inc. et al.*, 256 F.3d 1323 (Fed. Cir. 2001):

> The doctrine of waiver that we are concerned with in this case relates to preserving an issue for appeal. The Supreme Court has stated that "it is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff, 428 U.S. 106, 120, 49 L. Ed. 2d 826, 96 S. Ct. 2868 (1976)*[.]
>
> *              *              *
>
> Appellate courts are, however, given the discretion to decide when to deviate from this general rule of waiver.  *Singleton, 428 U.S. at 121* ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. We announce no general rule.  Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, or where

injustice might otherwise result." (citations and internal quotations omitted).

*    *    *

This court has enumerated a variety of reasons that might justify such a deviation. *L.E.A. Dynatech, Inc. v. Allina, 49 F.3d 1527, 1531, 33 U.S.P.Q.2D (BNA) 1839, 1843 (Fed. Cir. 1995)* (stating the following five reasons that could justify an appellate court's consideration of an issue not presented below, but finding none of them applicable: *"(i) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (ii) the proper resolution is beyond any doubt; (iii) the appellant had no opportunity to raise the objection at the district court level; (iv) the issue presents significant questions of general impact or of great public concern; or (v) the interest of substantial justice is at stake."* (internal quotations and brackets omitted).

256 F.3d at 1344-35 (emphasis added).

AntiCancer's discovery-related arguments have been made primarily in the context of Issue No. 2, which challenges the validity of the Southern District's PIC-related Patent Local Rules in cases such as this. The validity of a local rule is

12

an issue of law that this Court should review *de novo*. *See e.g.*, *Stern v. U.S. Dist. Court for Dist. of Mass.*, 214 F.3d 4 (1st Cir. 2000).

Defendants fundamentally mischaracterize AntiCancer's position on Issue No. 2, stating (at page 2 of their brief), "[T]he dominant theme of AntiCancer's brief is the generalized assertion that AntiCancer could have bolstered its PICs if it had more time to take discovery." But, that is not what AntiCancer is arguing. Specifically, AntiCancer is not arguing that the district court erred by denying a request from AntiCancer for more time to take discovery, before it was required to serve its PICs.

Rather, AntiCancer is taking issue with the ***validity*** of the Southern District's Patent Local Rules – a legal issue – on the basis that the rules expressly ***require*** a plaintiff to serve its PICs ***before it could possibly have taken any discovery,*** which conflicts with the Federal Rules of Civil Procedure and their broad discovery regime, at least in cases such as this case.

AntiCancer acknowledges that it did not directly challenge the validity of the Patent Local Rules before the District Court when it opposed Pfizer's and CrownBio's motion for summary judgment. However, Pfizer's and CrownBio's motion, and AntiCancer's opposition to the motion, were focused on the substance of AntiCancer's PICs, not the validity of the Local Rules. Because the validity of

the Patent Local Rules is an important question of law, this Court has the discretion to decide that issue even if it was not raised below.

Further, the validity of the Southern District's Patent Local Rules presents "significant questions of general impact or of great public concern." *Interactive Gift Express, Inc.,* 256 F.3d at 1344-35.    The same thing that happened to AntiCancer in this case could easily happen in a different case with different parties and a different method patent.    This is a serious problem that seriously diminishes the enforceability of method claims against infringers who practice their accused methods secretly.

Finally, the parties have fully briefed AntiCancer's discovery-related issues in this appeal, and the issues regarding the validity of the PIC-related Patent Local Rules, so there would be no prejudice to Pfizer and CrownBio if the Court were to consider those issues.    Under the circumstances, if the Court concludes that AntiCancer did not properly preserve those issues for appeal, the Court should still consider those issues.

## C.    The District Court Erred When It Granted Summary Judgment of Noninfringement Based Solely on AntiCancer's Preliminary Infringement Contentions.

AntiCancer's first issue in this appeal is:  "whether the District Court erred in granting summary judgment of non-infringement in the Defendants' favor,

based solely on AntiCancer's Preliminary Infringement Contentions." AntiCancer's position is that the District Court erred when it ruled that AntiCancer's PICs did not meet the requirements of the Patent Local Rules.

Patent local rules are not meant to require a party to prove its case of infringement or to provide a forum for litigation of the substantive issues. *See Balsam Coffee Solutions Inc. v. Folgers Coffee Co.*, 2009 WL 4906860, at *3 n.2 (E.D. Tex. Dec. 9, 2009); *Linex Techs., Inc. v. Belkin Int'l, Inc*., 628 F.Supp.2d 703, 713 (E.D. Tex. 2008).

Yet, that is exactly what happened in this case. Throughout their Opening Brief, Pfizer and CrownBio acknowledge that Judge Sammartino interpreted the Patent Local Rules in a way that required AntiCancer to establish a "prima facie case of infringement" in its PICs. In the opening paragraph of their brief, they assert that AntiCancer's PICs "exposed the fact that AntiCancer was incapable of stating *triable claims of infringement*." [Defendants' Brief at 1.] At page 20 of their brief, Defendants state, "To support its claim for patent infringement, AntiCancer needed to produce *evidence* showing that the accused methods read on all the elements of at least one patent claim." [Defendants' Brief at 20.]

In essence, the District Court applied a full summary judgment standard to AntiCancer's PICs. However, the Patent Local Rules do not require so much. Patent L.R. 3.1 *does not* require a party to disclose information it *does not yet*

*know*.  The rule only requires a plaintiff to disclose, "separately, for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") *of which the party is aware*."  The identification must only be "*as specific as possible*."  [A108 (emphasis added).] AntiCancer disclosed the acts of which it was aware when it was ordered to serve its PICs, five (5) days after it filed its infringement claims.  AntiCancer's PICs were "as specific as possible" at the time, and met the requirements of the Patent Local Rules.

Defendants identified only three claim elements that were supposedly "missing" from AntiCancer's PICs.   [Defendants' Brief at Section V-C.] Defendants exaggerate the supposedly "missing" elements of AntiCancer's PICs.

For example, at page 29 of their brief, Defendants claim, "AntiCancer offered *no evidence* of infringement of the Promoter Monitoring Element" of claim 1 of the '159 Patent, because, "as the box reveals, AntiCancer cited no evidence after the first reference of the Promoter Monitoring Element."   However, Defendants fail to note that the first reference of the "Promoter Monitoring Element" appears in the *preamble* of the claim.  "Generally, the preamble does not limit the claims."  *Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1346 (Fed. Cir. 2002); *American Medical Systems, Inc. v. Biolitec, Inc.,* 618 F.3d 1354, 1358-59 (Fed. Cir. 2010).

16

In this case, Judge Sammartino entered summary judgment *before* any claim construction ruling had been entered for the '159 Patent.  [A50-57.]  There was never any determination that the language in the preamble actually constituted a claim "element" as Defendants now argue.   If the disputed claim language did not actually limit the claim, AntiCancer's failure to provide evidence in its PICs was meaningless.

The phrase "whereby the ability of said promoter to promote expression is monitored" does not appear until clause (b) of claim 1, which reads as follows:

(b)     observing the presence, absence or intensity of the fluorescence generated by said fluorophore at various locations in said animal by whole-body external imaging, ***whereby*** the ability of the ability of said promoter to promote expression is monitored . . ."

[A66-81.]

In view of the "whereby" language in clause (b) of claim 1, if the presence of fluorescence is observed using whole body external imaging, that means the ability of the promoter to promote expression is being monitored, and the "promoter monitoring" element of the claim is fully met.  As AntiCancer's in-house counsel explained at the oral arguments on the motion, "If you're looking at a transgenic mouse expressing GFP, you are seeing --- you are monitoring the promoter."  [A494-495.]

AntiCancer's evidence included Figure 2 from the Pfizer paper, which showed that whole body imaging had been used to observe the presence of green fluorescence coming from the mouse.    [A82-105.]    AntiCancer's proffered evidence in its PICs should have been more than sufficient to create a triable issue of fact and to survive summary judgment.

With respect to the supposedly missing "Delivering Cells" element of claim 1 of the '159 Patent, a portion of the evidence cited in AntiCancer's PICs was a Figure (Figure 2) from a Pfizer paper that showed an intact, green-glowing mouse. [A82-105.] Pfizer's and CrownBio's argument in this appeal is that "Figure 2 does not illustrate the delivery of cells to an animal."   Perhaps Figure 2 is not a photograph of a laboratory technician actually inserting cells into a mouse, but Figure 2 is evidence tending to show that Pfizer did, in fact, deliver cells to an animal.   Why?   Because, as everyone knows, mice don't normally glow green, unless green glowing cells (such as GFP cells) were "delivered" to the mouse or its parent from an outside source, exactly as described in the '159 Patent.   Again, AntiCancer's proffered evidence in its PICs should have been sufficient to create a triable issue of fact and to survive summary judgment.

With respect to the supposedly missing "Metastasis to a Second Site Element" of the RE'337 Patent, Pfizer and CrownBio are wrong when they say that, "AntiCancer offered no evidence of infringement of the Metastatis to a

18

Second Site" element.  Indeed, claim 1 of the RE'337 Patent does not actually require "Metastasis to a Second Site" as Pfizer and CrownBio assert.

Claim 1 reads as follows [A58-65], with the language relating to the "metastatis to a second site" shown in bold:

> 1.    **A nude mouse model** for progression of human neoplastic disease, the progression of said disease being characterized by growth of a primary tumor site and metastasis to secondary tumor sites, **wherein said mouse** has histologically intact human neoplastic tissue of at least 1 mm$^3$ in size transplanted onto an organ of said mouse which corresponds to the human organ from which said tissue is originally obtained; and **has sufficient immuno-deficiency to allow said transplanted neoplastic tissue to grow at said primary site and metastasize to said secondary tumor sites**, so as to mimic the progression of the neoplastic disease including the metastatic behavior of said neoplastic disease in humans.

"Metastasis to a second site" is not a required element of the claim.  The claim is directed to a nude mouse model, wherein the mouse . . . *has* sufficient immune deficiency *to allow* transplanted neoplastic tissue to grow at the primary site and metastasize to a secondary site.

Whether metastasis to a second site actually occurs is irrelevant; all that matters is that the mouse has sufficient immunodeficiency to *allow* such metastasis to occur.   AntiCancer's evidence showed that the mice were sufficiently immune-compromised to enable tumors to grow inside the living mice, which necessarily means they were sufficiently immune-deficient to *allow* metastasis to occur.  [A82-105.]  That was all that mattered.  Again, AntiCancer's proffered evidence in its PICs should have been sufficient to create a triable issue of fact and to survive summary judgment.

Pfizer and CrownBio were successful in obtaining summary judgment because they based their arguments on incorrect claim constructions (at a time when the District Court had not entered any claim construction ruling), and because they mischaracterized or mocked or gave short shrift to AntiCancer's evidence.  The District Court accepted their incorrect claim constructions and their arguments about the supposedly "missing" elements in AntiCancer's PICs.  In the end, the District Court required too much proof from AntiCancer, both as a practical matter and as a matter of law under the Patent Local Rules.

In short, the District Court erred when it determined that AntiCancer's PIC did not meet the requirements of the Southern District's PIC-related Patent Local Rules.

**D.     The Southern District's Patent Local Rules Violate FRCP 83, Because They Are Inconsistent With the Federal Rules of Civil Procedure In Cases Involving Accused Methods That Are Performed Secretly.**

AntiCancer's second issue in this appeal is: "whether the Patent Local Rules of the Southern District of California, including Patent Local Rule 3.1, conflict with the Federal Rules of Civil Procedure in a case in which the asserted claims are directed to methods and the full details of the accused methods are known to a defendant but not to the plaintiff."

Pfizer and CrownBio do not attempt to deny that their accused activities were carried out in their private research laboratories, such that the full details of their activities were not readily available to AntiCancer. Nor do they deny that AntiCancer was *ordered* by the District Court to serve its PICs on November 14, 2011, only *five (5) days* after AntiCancer had filed its patent infringement claims, which made it impossible for AntiCancer to take any discovery before it was required to serve its PICs.

Instead, Pfizer and CrownBio argue that AntiCancer "waived" this argument by failing to file a Rule 56(d) response to their summary judgment motion, asking for an opportunity to take discovery. However, as discussed above in Section II-A, Rule 56(d) protection was never an option for AntiCancer, given the way the Defendants chose to frame the issues in their summary judgment motion.

Defendants also fundamentally mischaracterize AntiCancer's position on Issue No. 2, stating (at page 2 of their brief), "[T]he dominant theme of AntiCancer's brief is the generalized assertion that AntiCancer could have bolstered its PICs if it had more time to take discovery." Again, that is not what AntiCancer is arguing. AntiCancer is not arguing that the district court erred by denying a request from AntiCancer for more time to take discovery, or by otherwise not giving AntiCancer more time to conduct discovery before it was required to serve its PICs.

Rather, AntiCancer is challenging the *validity* of the Southern District's PIC-related Patent Local Rules, at least in cases such as this case. It is a *fact* that, in cases such as this case, the Patent Local Rules expressly require a plaintiff to serve its PICs *before* it could possibly have taken any discovery to learn the details of the accused infringer's internal research activities. The due date is *set in stone* in the Patent Local Rules; Patent Local Rule 3.1 expressly requires a plaintiff's PICs to be served within fourteen (14) days after the initial Case Management Conference. [A106-112.]

The Southern District's Patent Local Rules, and not the Federal Rules of Civil Procedure, dictated the outcome in the trial court below. [A1-16.] As discussed above, AntiCancer's patent infringement claims in its First Amended Complaint met all the pleading requirements of the Federal Rules of Civil

Procedure. Yet, five (5) days later, before it could possibly have taken any discovery to develop support for its well-plead infringement claims, AntiCancer was *ordered* to serve a PIC document that was held to a much higher pleading standard under the Southern District's Patent Local Rules. [A113-127.] The District Court ultimately granted judgment against AntiCancer based on that same November 14, 2011, PIC document, without ever reaching the actual merits of AntiCancer's infringement claims. [A1-16.]

AntiCancer's position is that the Southern District's PIC-related Patent Local Rules are inconsistent with the Federal Rules of Civil Procedure, at least in cases in which a method patent is being asserted under circumstances in which the full details of the accused infringer's activities are not initially known to the plaintiff.

As the Federal Circuit noted in *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364-65 (Fed. Cir. 2006)(emphasis added):

> [W]e do not doubt our power in the appropriate circumstance to refuse to enforce a local rule that *unduly limits discovery in patent cases*. To be valid, local rules must be consistent with both acts of Congress and the Federal Rules of Civil Procedure. *A local rule need not be directly contradictory to a federal rule to be invalid; a local rule that is inconsistent with the purposes of a federal rule is also invalid. It*

*is foreseeable that a local rule could conflict with the spirit, if not the letter, of the broad discovery regime under the Federal Rules of Civil Procedure, especially given the particular importance of discovery in complex patent cases*.

*Id*. at 1364-65 (emphasis added).[2]

In cases such as this case, the Southern District's Patent Local Rules governing PICs "*conflict with the spirit, if not the letter, of the broad discovery regime under the Federal Rules of Civil Procedure*."   For that reason, they are invalid.

---

2    At page 46 of their brief, Pfizer and CrownBio cite language from the *O2 Micro* opinion, to suggest that the District Court decision was in "complete harmony" with this Court's analysis in *O2 Micro*.  The *O2 Micro* case, however, did not involve method claims or an accused process that was carried out in a private research laboratory, such that the details were not knowable to the plaintiff so early in the case.   Even if the Court upheld the validity of the Northern District of California's Patent Local Rules in *O2 Micro*, the circumstances are very different in this case.

**E.     The District Court Erred by Requiring AntiCancer to Pay Defendants'**
**Legal Fees and Costs in Bringing Their Summary Judgment Motions, As a**
**Conditional Sanction For Permitting AntiCancer to Supplement Its**
**Infringement Contentions.**

AntiCancer's third issue in this appeal is:  "whether the District Court abused its discretion by conditioning AntiCancer's ability to supplement its Preliminary Infringement Contentions on AntiCancer agreeing to pay certain legal fees and costs of the Defendants."

The District Court never entered, and AntiCancer never violated, any order that was specifically directed at AntiCancer's PICs.  AntiCancer, for example, was never ***ordered*** to supplement its PICs to include more information, and then failed to do so.   Accordingly, there was no basis for the District Court to sanction AntiCancer under FRCP 37.

Citing *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005), Defendants argue that trial courts in the Ninth Circuit have "broad leeway to fashion orders that appropriately correspond to the severity of a party's misconduct. In *Wong*, the University challenged Mr. Wong's identification of additional expert witnesses after the expert identification deadline and after the discovery cut-off date. The district court agreed with the University and excluded the opinions of

two experts, submitted by Mr. Wong in opposition to the defendant's summary judgment motion.

The situation in this case is very different than in *Wong*.  First, AntiCancer complied with all the deadlines set forth in the District Court's scheduling order, including the deadline that required it to serve its PICs only five days into its infringement case.   And the sanction at issue in this case did not merely involve exclusion of evidence; it was a ***monetary sanction***.  The outcome in *Wong* might have been very different if the District Court had required Mr. Wong to pay a ***monetary sanction*** to the University as a condition for being permitted to designate his experts after the deadline had passed.

The District Court in this case also never made any findings to establish that AntiCancer had exhibited "willful disobedience of a court order" or that AntiCancer had "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," which the U.S. Supreme Court has required for sanctions to be imposed based on a District Court's "inherent powers."  *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766 (1980).   AntiCancer committed no such acts and the district judge made no findings that would support such a sanction.  [A1-16.]

At most, the District Court found that AntiCancer had acted "unreasonably" and that its positions were "disingenuous", which is a far cry from acting "in bad faith, vexatiously, wantonly, or for oppressive reasons."  [A1-16.]   Indeed, the

District Court did not identify any specific source of authority for the monetary sanction that it would have levied against AntiCancer, if AntiCancer had chosen to accept the Court's conditions for supplementing its PICs.[3]

Pfizer and CrownBio try to make much of the fact that AntiCancer lost two other cases (the *Cambridge Research & Instrumentation* case and the *Carestream* case, discussed starting at page 17 of their brief), in an effort to portray AntiCancer as some sort of "serial filer" of frivolous infringement claims. If anything, the opposite is true. AntiCancer has been a serial victim of a loophole in the Southern District's Patent Local Rules, which the Defendants in this case and in the other two cases used to avoid any examination of what they ***actually did*** in their research laboratories, behind closed doors, and to avoid any substantive determination of whether they had ***actually infringed*** AntiCancer's patent rights.

In all three cases, the District Court granted summary judgment of noninfringement based solely on AntiCancer's PICs, without making any

---

[3]    As a practical matter, the Court's conditional offer would not have improved AntiCancer's situation, but would have cost AntiCancer a great deal of money. AntiCancer would have been required to serve it supplemental PICs only 14 days after it found out how much it would pay for the ability to supplement its PICs. [A16.]

substantive determination of whether they had ***actually infringed*** AntiCancer's patent rights.

## III.   CONCLUSION

For the reasons set forth above and in AntiCancer's Opening Brief, this Court should reverse the Court's summary judgment of noninfringement and remand the case back to the District Court.

Respectfully submitted:

/s/ Richard A. Clegg

Law Office of Richard Clegg
501 West Broadway, Suite 800
San Diego, CA 92101
619-400-4020 (tel.)
Attorney for Plaintiff-Appellant AntiCancer, Inc.

**No. 2013-1056**
**ANTICANCER, INC. v PFIZER, INC., et al.**

**CERTIFICATE OF SERVICE**

I hereby certify that I employed in San Diego County, California.  I am over

the age of 18 and am not a party to the cause.  I am lead counsel for AntiCancer,

Inc, am from the Office of Richard A. Clegg, 501 West Broadway, Suite 800, San

Diego, CA 92101, and am filing and serving the following:

**PLAINTIFF-APPELLANT ANTICANCER, INC.'S REPLY BRIEF**

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court by using the appellate CM/ECF System, on April 9, 2013.  Participants in

the case who are registered CM/ECF users will be served by the appellate CM/ECF

System.  I hereby further certify that copies of the foregoing document are being

served via e-mail on the following counsel for Defendants:

Jing James Li, Esq.            Richard de Bodo
LiLaw, Inc.                    DLA Piper LLP (US)
5050 El Camino Real            2000 Avenue of the Stars
Suite 200                      Suite 400, North Tower
Los Altos, CA 94022            Los Angeles, CA 90067
lij@lilaw.us                   Richard.deBodo@dlapiper.com


Dated:  April 9, 2013          /s/ Richard A. Clegg
                               Richard A. Clegg
                               Law Office of Richard Clegg
                               Attorney for Plaintiff-Appellant AntiCancer

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii).   The brief contains 6,670 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), but including footnotes and endnotes.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).   The brief has been prepared in a proportionally spaced typeface font using Microsoft Word 2011, in 14 point Times New Roman font.

Dated:  April 9, 2013          /s/ Richard A. Clegg
                               Richard A. Clegg
                               Attorney for Plaintiff-Appellant AntiCancer