## LAW OFFICE OF RICHARD CLEGG
501 WEST BROADWAY, SUITE 800
SAN DIEGO, CA 92101

619-501-5616 (Office Direct)                                        619-922-3446 (Mobile)
rick@rclegglaw.com                                                www.richardclegglaw.com

August 22, 2014

Daniel E. O'Toole
Clerk of Court
United States Court of Appeals for the
Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439
otoole@cafc.uscourts.gov

  Re: <u>Anticancer, Inc. v. Pfizer, Inc.</u>, 13-1056

Dear Mr. O'Toole:

  I write on behalf of AntiCancer, Inc., the Plaintiff and Appellant in the above-referenced case, in response to your letter to all Counsel dated August 19, 2014.

  It would not be appropriate to withdraw this appeal, as there still remains an Article III "controversy." The procedural history of this case is somewhat unusual, but the record is clear that only certain of AntiCancer's claims were settled. The patent infringement claims, which serve as the basis for this appeal, are still very much in controversy.

  The parties appeared before Magistrate Ruben B. Brooks on July 30, 2012 for a settlement conference. The parties agreed to a partial settlement of the case, in which only AntiCancer's contract claims were settled. (A 23, attached.) The parties subsequently filed a Joint Motion and Stipulation of Voluntary Dismissal, With Prejudice. (A 21 – A 24.) The Court granted the motion, dismissing AntiCancer's Second Amended Complaint. (A 25.)

  By then, however, the only remaining claims in the Second Amended Complaint were AntiCancer's contract-based claims; the infringement claims had already been dismissed by the district court in its Order Entering Summary Judgment on Patent Infringement Claims, filed July 2, 2012 (A 17 - A 18.) (That order was based on the district court's previous Order (1) Granting in Part and Denying in Part Motion for Summary Judgment of Noninfringement Based on Defective Infringement Contentions, filed June 1, 2012 (A 1 – A16.).)

Daniel E. O'Toole
Clerk of Court
United States Court of Appeals for the Federal Circuit
August 22, 2014
Page 2

Although AntiCancer has stated it is appealing from the July 2 Order, it may be more technically correct, as Pfizer stated, that the appeal is from the subsequent Judgment in a Civil Case filed on July 16, 2012 (A 19). As that Judgment states:

> IT IS ORDERED AND ADJUDGED that summary judgment is hereby granted in favor of Defendant Crown Bioscience, Inc. **on the fourth and fifth claims for relief** in AntiCancer's Second Amended Complaint.

(A 19, emphasis added: the fourth and fifth claims for relief comprised AntiCancer's patent claims.) (As a side note, the Judgment appears to have inadvertently omitted defendant Pfizer, Inc., but all indications are that it intended AntiCancer's fourth and fifth claims against Pfizer to also be disposed of at that time via summary judgment.)

The district court's September 28, 2012 Order Granting Joint Motion and Stipulation of Voluntary Dismissal, With Prejudice (A 25) therefore dismissed the remaining first through third claims of AntiCancer, which were contract-based, due to the fact that the parties had settled that part of the case. While the district court was correct in stating "the parties have reached a settlement of this action," it would have been more accurate to state that the parties had "reached a **partial** settlement of this action," i.e., only the contract claims were settled, and not the patent infringement claims.

Should the Court wish, and the other parties' do not object, AntiCancer would agree to file under seal the confidential settlement agreement the parties executed, in order to further demonstrate that the infringement claims in this case have not been settled.

In any event, the record itself amply demonstrates that AntiCancer's infringement claims are still at issue between the parties, and continue to provide the basis for this Court's Article III jurisdiction.

Please do not hesitate to contact me if you have any questions or to request supporting documents.

Sincerely,

Richard A. Clegg
Counsel for AntiCancer, Inc.

1

2

3

4

5

6

7    **UNITED STATES DISTRICT COURT**

8    **SOUTHERN DISTRICT OF CALIFORNIA**

9

10   ANTICANCER, INC. a California          CASE NO. 11CV107 JLS (RBB)
     corporation,
11                                          **ORDER (1) GRANTING IN PART**
                                            **AND DENYING IN PART**
                              Plaintiff,    **MOTION FOR SUMMARY**
12                                          **JUDGMENT OF**
             vs.                            **NONINFRINGEMENT BASED ON**
13                                          **DEFECTIVE INFRINGEMENT**
                                            **CONTENTIONS; (2) STAYING**
14                                          **ALL PENDING DEADLINES IN**
                                            **THE CASE; AND (3) SETTING**
15   PFIZER INC., a Delaware corporation,   **STATUS HEARING**
     CROWN BIOSCIENCE, INC., a California
16   corporation, and DOES 1–50,           (ECF No. 46)

17                            Defendant.

18

19          Presently before the Court is Defendant Pfizer Inc.'s ("Pfizer") Motion for Summary

20   Judgment of Noninfringement Based on Defective Infringement Contentions, (MSJ, ECF No. 38),

21   which Defendant Crown Bioscience, Inc. ("CrownBio") joins in part, (Not. Joinder, ECF No. 40).

     Also before the Court are the associated oppositions and replies, as well as the parties' briefs in
22
     response to the Court's Order for supplemental briefing.  (Order, May 3, 2012, ECF No. 49)  A
23
     hearing on the motion was held on May 31, 2012.[1]  Having considered the parties' arguments and
24
     the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for
25
     summary judgment and conditionally grants AntiCancer an opportunity to supplement its PICs.
26

27   _____

28        [1] The Court also heard oral argument on CrownBio's Motion for Judgment on the Pleading on
     the Fifth Claim for Relief, (Mot. J. on Pleading, ECF No. 46), which Pfizer joins, (Not. Joinder, ECF
     No. 56), on this date.  That motion will be addressed in a separate Order.

**1**

- 1 -                                                                    11cv107

**BACKGROUND**

Plaintiff AntiCancer Inc. ("AntiCancer") first filed this action against Pfizer on January 19, 2011, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (Compl., ECF No. 1) AntiCancer later amended its complaint, adding CrownBio as a defendant and asserting two patent infringement claims—one against Pfizer alone, and the other against both Pfizer and CrownBio. (FAC, ECF No. 19) Soon thereafter, in accordance with the time prescribed by Patent Local Rule 3.1 and Magistrate Judge Brooks's scheduling order, (Scheduling Order, ECF No. 13), AntiCancer served its preliminary infringement contentions ("PICs"), (Decl. of Olga Berson ISO MSJ ("Berson Decl.") Ex. 2, ECF No. 38-4 (PICs)).

AntiCancer contends that Pfizer infringed Claims 1, 5, 7, 8, 9, and 10 of U.S. Patent No. 6,649,159 ("the '159 patent"), and that Pfizer and CrownBio together infringed Claims 1, 11, 13, 15, 17, 19, 21, 23, 25, and 26 of U.S. Patent No. RE39,337 ("the RE'337 patent"), and Claims 1 and 11 of U.S. Patent No. 5,569,812 ("the '812 patent"). (*Id.* at 3)[2] AntiCancer points to a research paper published by Pfizer scientists in support of its allegations of infringement of the '159 patent, and to a poster presentation by Pfizer and CrownBio scientists in support of its allegations of infringement of the RE'337 and '812 patents. (*Id.*)

**1. The '159 Patent**

The '159 patent relates to "the whole-body external optical imaging of gene expression." '159 patent, at [57]. Relevant here, Claim 1 of the '159 patent recites "[a] method to monitor the ability of a promoter to promote expression in an animal of an endogenous gene that is controlled by said promoter," '159 patent col.24 ll.44–46, and contains a further limitation requiring that "the ability of said promoter to promote expression is monitored, '159 patent col.24 ll.56–57. The parties refer to this as the "Promoter Monitoring" element.

Claim 1 also recites a claim element requiring "delivering, to an animal, cells containing a nucleic acid encoding a flurophore operatively linked to the promoter of said endogenous gene whose ability to promote expression is to be analyzed." '159 patent col.24 ll.47–50. The parties

---

[2] Pinpoint citations to exhibits utilize the page numbers assigned by CM/ECF.

1   refer to this as the "Delivering Cells" element.

2       According to AntiCancer, Pfizer has allegedly infringed the '159 patent "through the

3   activities described in" a research paper authored by several Pfizer scientists.  (FAC ¶ 22, 43, ECF

4   No. 19)  Specifically, the paper "describes a study in which [green fluorescent protein] expression

5   in mouse embryos was monitored and non-invasively imaged."  (*Id.* ¶ 22)

6   **2. The RE'337 Patent**

7       The RE'337 patent covers "[a] nude mouse model for human neoplastic diseases having

8   histologically intact human neoplastic tissue transplanted onto an organ of the mouse which

9   corresponds to the human organ from which the tissue is obtained."  RE'337 patent, at [57].  Claim

10   1 of the RE'337 patent discloses "[a] nude mouse model for progression of human neoplastic

11   disease, the progression of said disease being characterized by grown of a primary tumor site and

12   metastasis to secondary tumor sites," RE'337 patent col.11 ll.14–17,[3] with the further limitation

13   that the mouse "has sufficient immuno-deficiency to allow said transplanted neoplastic tissue to

14   grow at said primary site and metastasize to said secondary tumor sites, so as to mimic the

15   progression of the neoplastic disease including the metastatic behavior of said neoplastic disease in

16   humans," RE'337 patent col.11 ll.23–28.  The parties refer to this as the "Metastasis to a Second

17   Site" element.

18       According to AntiCancer, Pfizer and CrownBio infringed on this patent by collaborating to

19   "surgically orthotopically implant[] tumor fragments from patient liver-tumor tissues into the liver

20   of mice, and then treated them with a drug called sunitinib malate," as presented in a joint poster

21   presentation and announced in a joint press release.  (FAC ¶¶ 23–24, 51, ECF No. 19)

22   **3. The '812 Patent**

23       The '812 patent also covers "[a] nude mouse model for human neoplastic disease having

24   histologically intact human neoplastic tissue transplanted onto an organ of the mouse which

25   corresponds to the human organ from which the tissue is obtained."  '812 patent, at [57].  The '812

26   patent was first issued on October 29, 1996, '812 patent, at [45], and was later reissued as the

27

28       [3] All italics and bracketed material—which are used in the reissued patent to delineate changes from the original patent—have been omitted from quotations to the RE'337 patent in this Order.

**3**

1   RE'337 patent on October 10, 2006, RE'337 patent, at [64].  AntiCancer asserts that Pfizer and

2   CrownBio infringe the '812 patent for the same reasons they infringe the RE'337 patent.  (*See*

3   FAC ¶¶ 48–55, ECF No. 19; Berson Decl. Ex. 2, at 3, ECF No. 38-4)

4   **LEGAL STANDARD**

5   Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where

6   (1) the moving party demonstrates the absence of a genuine issue of material fact and

7   (2) entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

8   "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could

9   affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

10   *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  For a dispute to be "genuine," a reasonable

11   jury must be able to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248.  When

12   ruling on a summary judgment motion, the court must view all inferences drawn from the

13   underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co.*

14   *v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

15   In the context of patent litigation, "[i]nfringement is assessed by comparing the accused

16   device to the claims; the accused device infringes if it incorporates every limitation, either literally

17   or under the doctrine of equivalents.  If, however, even one claim limitation is missing or not met,

18   there is no literal infringement."  *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352

19   (Fed. Cir. 2005) (internal quotation marks omitted) (citations omitted); *accord Glaxo, Inc. v.*

20   *Novopharm, Ltd.*, 110 F.3d 1562, 1565 (Fed. Cir. 1997).

21   **ANALYSIS**

22   **1. The '812 Patent**

23   Because the '812 patent has been reissued, Defendants move for summary judgment on the

24   ground that "[a]s a matter of law, the '812 Patent is now unenforceable because AntiCancer

25   surrendered the patent when the Patent Office issued the RE'337 Patent."  (MSJ 17, ECF No. 38

26   (citing 35 U.S.C. § 252 ("The surrender of the original patent shall take effect upon the issue of the

27   reissued patent.")))  AntiCancer does not oppose summary judgment on this basis, and conceded at

28   oral argument that summary judgement should be granted as to the '812 patent.  The Court

**4**

1    accordingly **GRANTS** summary judgment in favor of Defendants on the '812 patent.

2    **2. Sufficiency of Preliminary Infringement Contentions – The '159 & RE'337 Patents**

3         Defendants' motion for summary judgment argues that AntiCancer's infringement

4    contentions are insufficient, and therefore that judgment should be entered in Defendants' favor.

5    (*See generally* MSJ, ECF No. 38)  Specifically, Defendants assert that "AntiCancer served PICs

6    that (1) omit contentions regarding required claim elements, and (2) fail to provide the required

7    detail regarding all claim elements."  (*Id.* at 2–3)

8         This district's Patent Local Rules require a party claiming patent infringement to serve a

9    "Disclosure of Asserted Claims and Preliminary Infringement Contentions" containing the

10   following information:

11            a.  Each claim of each patent in suit that is allegedly infringed by each opposing
              party;

12            b.  Separately for each asserted claim, each accused apparatus, product, device,
13            method, act, or other instrumentality ("Accused Instrumentality") of each
              opposing party of which the party is aware.  This identification must be as
14            specific as possible.  Each product, device and apparatus must be identified by
              name or model number, if known.  Each method or process must be identified by
15            name, if known, or by any product, device, or apparatus which, when used,
              allegedly results in the practice of the claimed method or process;

16            c.  A chart identifying specifically where each element of each asserted claim is
17            found within each Accused Instrumentality, including for each element that such
              party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s),
18            act(s), or material(s) in the Accused Instrumentality that performs the claimed
              function; [and]

19            d.  Whether each element of each asserted claim is claimed to be literally present
20            and/or present under the doctrine of equivalents in the Accused Instrumentality[.]

21   Patent Local Rule 3.1.  The Patent Local Rules thus obligate parties to state with specificity the

22   theories upon which they plan to rely, and to do so early in the litigation.  This "require[s] parties

23   to crystallize their theories" early in the litigation so as to "prevent the 'shifting sands' approach to

24   claim construction."  *O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355 (Fed. Cir. 2006)

25   (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, No. C 95-1987, 1998 U.S. Dist. LEXIS 17564,

26   at *7 (N.D. Cal. Nov. 4, 1998)).[4]

27   _____

28       [4] This Order cites to out-of-district case law interpreting patent local rules promulgated by
     other districts that are substantively similar to our own as persuasive authority.  *See Nesscap Co. v.
     Maxwell Techs.*, 2008 U.S. Dist. LEXIS 3357, at *4 (S.D. Cal. Jan. 16, 2008) (Major, Mag. J.).

**5**

At issue here is what level of detail a party is required to provide in its PICs in order to satisfy Patent Local Rule 3.1(c)'s mandate to "identify[] *specifically* where each element of each asserted claim is found within each Accused Instrumentality." (emphasis added). On the one hand, the Court cannot argue with AntiCancer's point that it should not be required "to write a virtual scientific treatise on how its evidence relates to each term in its claims." (Resp. in Opp'n 3, ECF No. 41) But on the other hand, vague or conclusory infringement contentions hamper a defendant's ability to prepare an effective defense to the plaintiff's allegations of infringement. *Diagnostic Sys. Corp. v. Symantec Corp.*, 2009 U.S. Dist. LEXIS 53916, at *19 (C.D. Cal. June 5, 2009) (citing *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005)). Indeed, the patent local rules are designed carefully to "balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro Int'l*, 467 F.3d at 1366; *see also Data Retrieval Tech., LLC v. Sybase*, 2009 U.S. Dist. LEXIS 129454, at *8 (N.D. Cal. Sept. 11, 2009) (striking this balance and explaining that "infringement contentions need not prove infringement" but must "outline a plaintiff's theories of infringement").

Weighing these considerations, the Court believes that the appropriate balance requires that the PICs contain "sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patents themselves," but need not be so detailed as to transform the PICs into a "forum for litigation of the substantive issues." *Network Caching Tech., LLC v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881, at *13 (N.D. Cal. Mar. 21, 2003); *see also Shared Memory Graphis LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (Chen, Mag. J.) ("[A]ll courts agree that the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" (quoting *View Engineering, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000))). As the Northern District has explained with regard to its identical local patent rule,

> Patent LR 3-1 [does not] require that [a plaintiff's] preliminary infringement theories be incontrovertible or presented in excruciating detail. While the rule states that these disclosures should be "as specific as possible," there is no requirement that [a plaintiff] thoroughly present and successfully defend its theories of infringement in the confines of a PIC chart. At this stage, mapping specific elements of defendants' allegedly infringing products onto [the

1    plaintiff's] claim construction is adequate.

2    *Network Caching*, 2003 U.S. Dist. LEXIS 9881, at *14.

3          Importantly, PICs are generally prepared and served early in the litigation, and so the Court

4    is cognizant of the limited details at AntiCancer's disposal regarding how Defendants infringed on

5    AntiCancer's patents.  But, at a minimum, "a plaintiff is required to include in its infringement

6    contentions all facts known to it, including those discovered in its pre-filing inquiry," *Shared*

7    *Memory Graphics*, 812 F. Supp. 2d at 1024, and any "publicly available information which, if

8    utilized, would . . . provide[] more information to Defendants" regarding the plaintiff's

9    infringement claims, *Linex v. Techs., Inc. v. Belkin Int'l., Inc.*, 628 F. Supp. 2d 703, 709 (E.D. Tex.

10    2008).  This should include an explanation of how AntiCancer believes Defendants' accused

11    infringing products read on the asserted claim language.  *See Connectel, LLC v. Cisco Sys. Inc.*,

12    391 F. Supp. 2d 526, 528 (E.D. Tex. 2005).

13          With these considerations in mind, the Court now turns to the PICs at issue here.  Having

14    independently reviewed the PICs, the Court agrees with Pfizer that AntiCancer has done little to

15    improve upon the defective PICs that proved to be dispositive in its earlier infringement lawsuits.[5]

16    For the reasons explained, the Court finds the PICs insufficient to comply with Patent Local Rule

17    3.1.

18    ***A.  The '159 Patent***

19          Pfizer asserts that AntiCancer's PICs fail to establish that Pfizer's allegedly infringing acts

20    included practicing either the Promoter Monitoring element or the Delivering Cells element of

21    Claim 1 of the '159 patent.  And, because Claims 5, 7, 8, 9, and 10 all depend from Claim 1, Pfizer

22    asserts that these defects warrant judgment as a matter of law as to all of the asserted claims.  (MSJ

23    _____

24        [5] Pfizer points to two other cases in which this Court disposed of infringement claims filed by AntiCancer on summary judgment because AntiCancer's PICs were insufficient: *AntiCancer, Inc. v.*

25    *Cambridge Research & Instrumentation*, 07-CV-97 JLS (RBB) [hereinafter, "*CRI*"], and *AntiCancer, Inc. v. Carestream Health, Inc.*, 07-CV-1004 JLS (AJB) [hereinafter, "*Carestream*"].  Pfizer places much emphasis on these earlier cases, implying that because the Court granted the defendants'

26    motions for summary judgment there, the Court ought to do so here as well.  (*See* MSJ 4–9, ECF No. 38)  Though the cases are factually similar—and, indeed, concern one of the same patents at issue

27    here, the '159 patent—AntiCancer's PICs differ, as do the accused instrumentalities.  Thus, the Court declines Pfizer's invitation to simply walk the same path that was taken in those cases, and considers

28    anew the sufficiency of AntiCancer's PICs as well as what recourse is appropriate should the PICs be deemed insufficient.

**7**

13, ECF No. 38); *see also Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) (citing *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim.")).

*(1) The "Promoter Monitoring" Element*

In support of its allegations of infringement regarding the Promoter Monitoring element, AntiCancer's PICs point to Figure 2 and a portion of the text from the "Defects in embryonic development of EGLN1/PHD2 knockdown transgenic mice are associated with induction of Ogfbp in the placenta" paper. (Berson Decl. Ex. 2, at 7–8, ECF No. 38-4) AntiCancer's PICs assert that Figure 2 and the statement "The localization and intensity of GFP fluorescence in conceptuses from both treatment groups was varied" constitute "evidence of the accused instrumentality." (*Id.* at 8) Pfizer contends, however, that "the quote and the general reference to Figure 2 . . . fail to indicate that Pfizer's conduct involved any monitoring of a promoter." (MSJ 11–12, ECF No. 38)

Here, the Court find that the PICs insufficiently set forth how Pfizer's allegedly infringing conduct satisfies Claim 1's Promoter Monitoring element. Neither of the two bare references to the Pfizer paper supplies sufficient information for how Pfizer allegedly practiced the Promoter Monitoring element. First, the PICs cite to a single sentence from the Pfizer paper as evidence that Pfizer infringed on the Promoter Monitoring element, without providing any explanation whatsoever for how that sentence maps on to the claim language:

| Claim Language | Pfizer Paper |
| --- | --- |
| "[T]he ability of said promoter to promote expression is monitored . . . ." | "The localization and intensity of GFP fluorescence in conceptuses from both treatment groups was varied." |

(Berson Decl. Ex. 2, at 8, ECF No. 38-4) On its face, the text from the paper says nothing about "promoters" or "monitoring." And although AntiCancer "incorporates the full text of the paper" into its PICs, such a generalized reference is insufficient to satisfy the specificity requirement of Rule 3.1(c).

//

**8**

1    AntiCancer needs to connect the dots for how Pfizer's research, as detailed in the paper,

2    reads on the asserted claim language.  *See Connectel*, 391 F. Supp. 2d at 528.  Even at this early

3    stage, AntiCancer is capable of this much.  Indeed, in its opposition brief Pfizer makes this

4    connection: "[I]t is the signal of GFP fluorescence which indicates the *activity of the promoter*,

5    and the 'localization and intensity' of such fluorescence, and thereby of the promoter, is

6    determined by viewing or imaging the subject over time – in other words, by 'monitoring' it."

7    (Resp. in Opp'n 4, ECF No. 41)[6]  But this is too little, too late.[7]  *See CRI*, 07-CV-97 JLS (RBB),

8    Docket No. 214, at 7 (refusing to allow AntiCancer to "introduce new theories of infringement [in

9    its opposition brief] based on evidence which AntiCancer did not disclose in its PICs" (citing *O2*

10   *Micro Int'l*, 467 F.3d at 1368)).

11   Second, the PICs offer no explanation for how Figure 2 indicates that Pfizer practiced the

12   Promoter Monitoring element.  For this reason, the figure in no way serves to "identify specifically

13   where each element of each asserted claim is found within each Accused Instrumentality," as

14   Patent Local Rule 3.1(c) requires, and lends little to no support in creating a triable question of fact

15   that Pfizer practices this element of Claim 1.  AntiCancer asserts in its opposition brief and via a

16   declaration from Robert M. Hoffman, Ph.D., that Figure 2 "clearly indicates that the promoter was

17   monitored" because

18   Fluorescence intensity was graded as either "0, +, ++, or +++."  Therefore,
     expression of GFP varied from "0" at the lowest end to "+++" at the highest end,
19   which means the activity (intensity) of the promoter linked to GFP was varied.
     The scientist conducting this experiment could only have rated the varying
20   intensity of the GFP promoter by monitoring it.

21   (Resp. in Opp'n 4, ECF No. 41 (citing (Decl. of Robert M. Hoffman ISO Resp. in Opp'n

22

23   _____

       [6] Pfizer argues that even considering this newly asserted theory of infringement, the PICs
24   remain defective because "the Pfizer researchers correlated the location and intensity of GFP
     fluorescence to embryo malformation and growth.  They did not, as the claim language requires,
25   correlate GFP fluorescence to promoter activity."  (Reply in Supp. 6, ECF No. 43)  The Court finds
     that this argument goes more to claim construction and the ultimate infringement determination,
26   however, and as such is inappropriately raised at this early stage of the proceedings.  *Network
     Caching*, 2003 U.S. Dist. LEXIS 9881, at *12 ("PICs are not meant to provide a forum for litigation
27   of the substantive issues.").

       [7] The Court stresses that by referencing the arguments AntiCancer raises in its opposition brief,
28   the Court is <u>not</u> at this point making a determination whether those contentions—if contained in the
     PICs—would be sufficient to satisfy Patent Local Rule 3.1.

**9**

("Hoffman Decl.") ¶ 6, ECF No. 41-1))) But, again, the Court declines to rely on AntiCancer's theories of infringement introduced for the first time in opposition to summary judgment, and based on evidence which was not previously disclosed in the PICs.

Thus, the Court concludes that the PICs fail to establish with sufficient specificity that Pfizer practiced the Promoter Monitoring element of the '159 patent.

*(2) The "Delivering Cells" Element*

As to the Delivering Cells element, AntiCancer's PICs again generally point to Figure 2 with no supporting explanation, as well as a portion of the text from Pfizer's research paper that states "we generated transgenic mice expressing EGLN1 shRNA." (Berson Decl. Ex. 2, at 8, ECF No. 38-4) In its motion for summary judgment, Pfizer asserts that neither of these vague references "indicate that Pfizer's allegedly infringing conduct involved practicing this claim element." (MSJ 12, ECF No. 38)

As with the Promoter Monitoring element, the Court finds that the PICs insufficiently set forth how Pfizer's allegedly infringing conduct satisfies Claim 1's Delivering Cells element. Neither the reference to Figure 2 nor the single sentence taken from the paper supplies sufficient information for how Pfizer allegedly practiced this element. Again, the PICs cite to a single sentence from the Pfizer paper as evidence that Pfizer infringed on this element, and again the PICs provide no explanation for how that sentence maps on to the claim language:

| Claim Language | Pfizer Paper |
|---|---|
| "[D]elivering, to an animal, cells containing a nucleic acid encoding a fluorophore . . . ." | "[W]e generated transgenic mice expressing EGLN1 shRNA." |

(Berson Decl. Ex. 2, at 8, ECF No. 38-4) As Pfizer correctly notes, the cited sentence "does not mention cells. It does not mention delivering cells, fluorophores, or nucleic acids encoding fluorophores to animals. The quoted sentence only refers to animals (i.e., 'transgenic mice') with a particular genetic trait (i.e., 'expressing' a particular gene—'EGLN1 shRNA')." (MSJ 13, ECF No. 38) Thus, AntiCancer in no way attempts to make a connection between the sentence provided and the claim language, and the PICs additionally draw no connection between Figure 2 and the relevant claim language.

1       AntiCancer contends, however, that any "competent scientist, and even a layman, would

2  understand [from reading the quoted sentence and viewing the cited figure] the basic scientific

3  concept" that "GFP-labeled cells were delivered." (Resp. in Opp'n 5, ECF No. 41) Apparently,

4  the sentence and figure *imply*[8] that the Delivering Cells element is satisfied: "[S]uch delivery is so

5  implicit that it needs no statement." (*Id.*) Essentially, AntiCancer argues that because its common

6  knowledge that GFP comes from jellyfish—not mice—"the GFP gene had to have been

7  delivered," and therefore "[t]he images of mice embryos expressing GFP in the Pfizer

8  Article . . . are sufficient to indicate the delivery of cells element of this claim. (*Id.* (citing

9  Hoffman Decl. ¶ 7, ECF No. 41-1))

10       But the point of PICs is not to *imply* how the plaintiff contends the defendant is infringing

11  its patent; rather they are designed for a plaintiff to state *with specificity* its contentions of

12  infringement. To that end, the connections between the claim language and the "evidence of the

13  accused instrumentality" that AntiCancer makes in its opposition brief need to be set forth in the

14  PICs, even if they are "basic scientific concepts" that are generally known or publicly available.

15  *See Linex*, 628 F. Supp. 2d at 709. Because AntiCancer failed to do this much, the Court

16  concludes that the PICs fail to establish with the requisite specificity that Pfizer satisfied the

17  Delivering Cells element of the '159 patent.

18  **B. The RE'337 Patent**

19       Defendants contend that AntiCancer's PICs fail to establish that Pfizer and CrownBio

20  practiced the Metastasis to a Second Site element of Claim 1 of the RE'337 patent. (MSJ 13–15,

21  ECF No. 38) And, because the remaining claims asserted by AntiCancer recite the same

22  Metastasis to a Secondary Site element (claims 11, 13, 15, 19, 21, 25, and 26) or depend from

---

24       [8] At oral argument, AntiCancer used the term "inherent" rather than "implied" in order to
better explain this argument. According to AntiCancer, its theory of infringement was adequately
25  presented in the PICs because the basic scientific concept was "inherent" in the citations provided,
much as one inherently knows that tomato sauce is made with tomatoes. Applied here, AntiCancer
26  contends that it is a basic scientific concept that in order to have a transgenic mouse, cells must have
been delivered. In other words, inherent within the statement "we generated transgenic mice
27  expressing EGLN1 shRNA" is the concept that cells containing a nucleic acid encoding a fluorophore
were delivered to an animal. Ultimately, however, the Court finds that this is a distinction without a
28  difference. Without more, the bare reference does not satisfy the specificity requirement of Patent
Local Rule 3.1.

1  claims reciting that element (claims 17 and 23), Defendants move for summary judgment as to all

2  of the asserted claims.  (*Id.* at 15)

3  *(1)  The "Metastasis to a Second Site" Element*

4        With regard to its allegations of infringement of the Metastasis to a Second Site element,

5  AntiCancer's PICs cite to several portions of the text of the Pfizer-CrownBio poster, with no

6  further indication how those statements map on to the claim language:

| Claim Language | Pfizer Paper |
|---|---|
| "A nude mouse model for progression of human neoplastic disease, the progression of said disease being characterized by growth of a primary tumor site and metastasis to secondary tumor sites, wherein said mouse has . . . sufficient immuno-deficiency to allow said transplanted neoplastic tissue to grow at said primary site and metastasize to said secondary tumor sites . . . ." | "Tumor fragments derived from patient tumor tissues were surgically implanted into the left lobe of nude mouse liver."<br><br>"Sutent treatment significantly inhibited orthotopic HCC tumor growth."<br><br>"Plasma samples were collected at different time points for alpha-feto-protein (AFP) measurement.  At termination, tumors were excised from liver and their weights and sizes were recorded."<br><br>"In addition, histological analysis confirmed that orthotopically implanted primary human tumors maintained their histopathological characteristics." |

(Berson Decl. Ex. 2, at 14–15, ECF No. 38-4)  Defendants argue that the selected quotes fail to

disclose that Pfizer and CrownBio practiced the claim element of metastasizing from the primary

site to the secondary site.  (MSJ 15, ECF No. 38)  Specifically, Defendants assert that "[t]he cited

text only refers to the ***implanting*** of tumor tissues into a mouse liver [and] say nothing about the

implanted tumor 'metastasizing' to a second organ or other location."  (*Id.*)  Further, "[t]he cited

passages only refer to a researcher excising tumor tissues ***from the same site*** where they were

implanted—the mouse liver.  The quoted text does not indicate that any excised tissue came from a

'secondary tumor site' different from the 'primary site.'"  (*Id.*)

        Bordering on turning this issue into one of claim construction rather than sufficiency of

PICs, AntiCancer counters that

        the claims of the RE'337 patent are not limited by a requirement that metastasis to
        a second site occurs, but rather are limited by the requirement that the mouse
        which is receiving the implanted neoplastic tissue " . . . has sufficient immuno-

**12**

- 12 -

deficiency to allow said transplanted neoplastic tissue to grow at said primary site and metastasize to said secondary tumor sites . . . ."

(Resp. in Opp'n 5–6, ECF No. 41 (ellipses in original))  Assuming for the purposes of the instant motion that this is the correct construction of the claim language, according to AntiCancer "the growth of the tumor at the site of implantation . . . is direct evidence that the mice used were sufficiently immuno-deficient to allow for growth at the primary site and for metastasis at secondary sites . . . ."  (*Id.* at 6 (citing Hoffman Decl. ¶ 9, ECF No. 41-1))[9]

Even considering the points AntiCancer raises in its opposition brief, AntiCancer has left out the essential connection between the claim language and the allegedly infringing acts.  *How* does the growth of the tumor at the primary site provide "direct evidence" that the mice were sufficiently immuno-deficient to allow for metastasis to secondary sites?  By skipping this essential connection, AntiCancer leaves Defendants—and the Court—guessing at how the patent was allegedly infringed, hindering Defendants' ability to prepare an effective defense.  For this reason, the Court finds that the PICs are deficient.

*C. Appropriate Remedy*

Having determined that the PICs for the '159 and RE'337 patents are insufficient, the Court now turns to what the effect of this failure ought to be.  Defendants have moved for summary judgment, arguing that by failing to sufficiently set forth a prima facie case of infringement in its PICs AntiCancer has failed to create a triable issue of fact as to whether Defendants' conduct has infringed its patents, and therefore Defendants are entitled to judgment as matter of law.  Wary of such a drastic remedy for the failure to comply with a local rule, the Court ordered the parties to provide supplemental briefing on this issue.  *See, e.g.*, *Acer, Inc. v. Tech. Props.*, 2011 U.S. Dist. LEXIS 55774, at *15 (N.D. Cal. May 13, 2011) (finding any prejudice was outweighed by "the Court's interest in resolving the parties' disputes as comprehensively as

---

[9] AntiCancer further asserts that the PICs sufficiently disclose this claim element because the PICs imply that metastasis to secondary sites was measured by virtue of the fact that such metastasizing can be measured "simply by a visual examination or by palpation of the animals, as is common practice during such experiments," and that such examinations "are required by strict rules that govern the humane use of mice in research." (Resp. in Opp'n 6, ECF No. 41)  But, as the Court concluded above, it is not enough for the PICs to *imply* a theory of infringement; it must be specifically stated so that a defendant can adequately defend itself from the allegations.

**13**

- 13 -

possible"); *Halo Elecs. v. Bel Fuse, Inc.*, 2010 U.S. Dist. LEXIS 97640, at *10 (N.D. Cal. Sept. 3, 2010) (Lloyd, Mag. J.) ("[T]he court concludes that amendment will advance fair resolution of the issues on the merits without prejudice to [Plaintiff]."); *Zoltar Satellite Alarm Sys. v. Motorola, Inc.*, 2008 U.S. Dist. LEXIS 108652, at 8 (N.D. Cal. Apr. 2, 2008) (Lloyd, Mag. J.) (same); *Biogenex Labs., Inc. v. Ventana Med. Sys.*, 2006 U.S. Dist. LEXIS 57067, at *4 (N.D. Cal. Aug. 3, 2006) ("[T]he Court is extremely reluctant to dispose of substantive infringement claims based upon procedural defects."). The parties were directed to address "whether the Court could/should construe Defendants' motion for summary judgment instead as a motion to strike AntiCancer['s PICs] and to compel AntiCancer to supplement its PICs with more detailed information in compliance with Patent Local Rule 3.1." (Order, May 3, 2012, ECF No. 49). Having reviewed the parties' supplemental briefing, (ECF Nos. 51, 52, 54), and thoroughly considered the issue, the Court **DENIES** Defendants' motion for summary judgment and conditionally **GRANTS** AntiCancer an opportunity to amend its PICs.

Pfizer's arguments regarding the purposes of the patent local rules are well taken, and the Court will not lightly set aside the rules' mandate that litigants set forth their litigation strategy early on and stick to it. But the Court notes that the rules are not viewed as "a straitjacket into which litigants are locked from the moment their contentions are served. There is a modest degree of flexibility, at least near the outset." *Comcast Cable Commc'ns Corp., LLC*, 2007 U.S. Dist. LEXIS 98476, at *5 (N.D. Cal. Mar. 2, 2007). This is true especially in light of the delicate balance necessary in preparing such contentions: *Too* specific and the litigant risks being locked into a meritless position, *see Biogenex Labs., Inc. v. Ventana Med. Sys.*, 2006 U.S. 57067, at *9 (N.D. Cal. Aug. 3, 2006) ("While BioGenex may not have been required to include that level of specificity in its PICs, it chose to do so . . . ."). Not specific enough and the litigant risks losing its case for a procedural deficiency, rather than obtaining a decision on the merits.

Here, the Court has concluded that AntiCancer's PICs are deficient, and further finds that AntiCancer acted unreasonably in submitting these woefully insufficient PICs. It seems to the Court that AntiCancer was disingenuous in setting forth its theory of infringement with such vague PICs given that it was made aware of the possible repercussions of insufficient PICs on at least

**14**

two prior occasions in cases before this Court.

Even in light of this, the Court doubts that Defendants will be irreparably prejudiced if AntiCancer is given an opportunity to supplement its PICs. Though this lawsuit has been pending for over a year, the patent infringement claims were not added until AntiCancer filed its FAC—just over six months ago. The Court has not conducted a claim construction hearing, and this matter is not scheduled to be set for trial until over a year from now. Thus, the Court finds that it is too early in the lawsuit to dispose of the case for AntiCancer's failure to comply with a local rule, but too late in the lawsuit to allow AntiCancer to cure its deficiency without "mitigating conditions." *Comcast Cable*, 2007 U.S. Dist. LEXIS 98476, at *1.

Accordingly, the Court will permit AntiCancer to amend its PICs to supplement its contentions regarding the more detailed theory of infringement articulated in its papers and at oral argument. But AntiCancer may only do so on the condition that it reimburse Pfizer and CrownBio for the reasonable costs and attorneys' fees they incurred in litigating the instant motion,[10] "which would not have been brought or litigated in this fashion but for [AntiCancer's] unreasonable conduct." *Biogenex Labs.*, 2006 U.S. Dist. LEXIS 57067, at *12; *accord Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, 2007 U.S. Dist. LEXIS 39543, at *7 (N.D. Cal. May 15, 2007) (Lloyd, Mag. J.); *Comcast Cable*, 2007 U.S. Dist. LEXIS 98476, at *5 ("[T]he prejudice here is tolerable enough to be mitigated by an award of expenses and, once mitigated, pales beside the unfairness that might result from preventing a full litigation on the merits.").

At oral argument, AntiCancer indicated that it would be in a better position to make an election whether to amend its PICs or have summary judgment be entered in Defendants' favor after notice of the amount Defendants seek in reimbursement. If AntiCancer chooses the former, AntiCancer will be required to pay Defendants an amount to mitigate the expense associated with their bringing the instant motion, excluding any costs associated with the Court's request for supplemental briefing. Thus, within <u>fourteen days</u> of the date this Order is electronically docketed,

---

[10] Pfizer additionally requests fees and costs associated with its preparation of its preliminary invalidity contentions and claim construction charts. The Court finds that reimbursement for the costs and fees of the motion for summary judgment alone are sufficient and fair under the circumstances. The Court likewise concludes that Pfizer's request for reimbursement for all the costs and fees associated with the '812 patent is inappropriate.

1   Pfizer and CrownBio[11] **SHALL FILE** separately declarations of counsel setting forth the costs and

2   attorneys' fees incurred in filing and litigating the instant motion.

3       Within <u>fourteen days</u> after service of counsels' declarations, AntiCancer **MAY FILE** any

4   objection to Defendants' statements of costs and fees, or, absent any objection, **SHALL SERVE**

5   its amended PICs or a notice of objection to the Court's conditions for amendment, in which event

6   summary judgment will be granted in Defendants' favor. If AntiCancer elects to amend its PICs, it

7   shall reimburse Defendants on the same date that it serves its amended PICs, and **SHALL FILE** a

8   notice of said reimbursement with the Court.

9                     **CONCLUSION**

10      For the reasons stated above, the Court finds that AntiCancer's PICs are insufficient, but

11  that summary judgment is nevertheless be **DENIED** at this early stage. Instead, the Court

12  conditionally **GRANTS** AntiCancer an opportunity to supplement its PICs, subject to the

13  mitigating conditions outlined above.

14      It is further **ORDERED** that all pending deadlines in this case are **STAYED**. Within

15  <u>fourteen days</u> of the date AntiCancer makes its election, the parties **SHALL MEET AND**

16  **CONFER** and **SHALL SUBMIT** a joint proposal for a revised schedule. This matter is

17  **HEREBY SET** for a status hearing on <u>Friday, July 20, at 3:00p.m.</u>

18      **IT IS SO ORDERED**.

19

20  DATED:  June 1, 2012

21                               *Janis L. Sammartino*

                           Honorable Janis L. Sammartino

22                             United States District Judge

23

24

25

26

___

27      [11] The Court notes that CrownBio only joined in the motion via a notice and did not prepare any of its own briefs, and that counsel appeared telephonically at the hearing. CrownBio thus

28  indicated at oral argument that any reimbursement request with regard to the preparation of the motion would be "minimal," and that the request would otherwise be limited to the costs and fees associated with attending the May 31, 2012, hearing telephonically.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC. a California corporation, | CASE NO. 11CV107 JLS (RBB) |
| Plaintiff, | **ORDER ENTERING SUMMARY JUDGEMENT ON PATENT INFRINGEMENT CLAIMS** |
| vs. | (ECF No. 73) |
| PFIZER INC., a Delaware corporation, CROWN BIOSCIENCE, INC., a California corporation, and DOES 1–50, | |
| Defendants. | |

Presently before the Court is AntiCancer, Inc.'s ("AntiCancer") Notice of Objection to Court's Conditions for Amendment. (ECF No. 73) On June 1, 2012, the Court denied in part Defendants Pfizer Inc. ("Pfizer") and CrownBioscience, Inc.'s ("CrownBio," and collectively "Defendants") Motion for Summary Judgment of Noninfringement Based on Defective Infringement Contentions, (MSJ, ECF No. 38). (Order, June 1, 2012, ECF No. 63) Instead, the Court gave AntiCancer a choice: amend its defective Preliminary Infringement Contentions and reimburse Defendants for the costs associated with their motion for summary judgment, or object to the Court's conditions for amendment and have summary judgment be granted in Defendants' favor. (*Id.* at 16)

On June 29, 2012, AntiCancer objected to the Court's conditions for amendment. (ECF No. 73) Accordingly, summary judgment is **HEREBY GRANTED** in Defendants' favor on the fourth and fifth claims for relief in AntiCancer's Second Amended Complaint, (ECF No. 72).

**17**

The parties are reminded to meet and confer and to submit a joint proposal for a revised case management schedule <u>on or before July 13, 2012</u>.  Upon receipt of the parties' joint proposal, the Court will lift the stay in this matter and will vacate the status hearing, currently scheduled for July 20, 2012.

**IT IS SO ORDERED**.

DATED:  July 2, 2012

_Janis L. Sammartino_
Honorable Janis L. Sammartino
United States District Judge

# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

AntiCancer, Inc.

**V.**

Pfizer, Inc.; Crown Bioscience, Inc.

**JUDGMENT IN A CIVIL CASE**

**CASE NUMBER:**   11CV0107-JLS(RBB)

☐ **Jury Verdict.**  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.**  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that summary judgment is hereby granted in favor of Defendant Crown Bioscience, Inc. on the fourth and fifth claims for relief in AntiCancer's Second Amended Complaint.

| July 16, 2012 | W. Samuel Hamrick, Jr. |
|---|---|
| Date | Clerk |
| | J. Petersen |
| | (By) Deputy Clerk |
| | ENTERED ON July 16, 2012 |

**19**

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC., a California corporation, | CASE NO. 11CV107 JLS (RBB) |
| Plaintiff, | **ORDER DENYING AS MOOT DEFENDANT CROWN BIOSCIENCE INC.'S EX PARTE MOTION FOR ENTRY OF JUDGMENT** |
| vs. | |
| PFIZER INC., a Delaware corporation, et al., | (ECF No. 76) |
| Defendants. | |

Presently before the Court is Defendant Crown Bioscience Inc.'s ("CrownBio") Ex Parte Motion for Entry of Judgment. (ECF No. 76)  The clerk entered judgment in favor of CrownBio on July 16, 2012.  (ECF No. 80)  Accordingly, CrownBio's ex parte motion is hereby **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATED:  July 17, 2012

_Janis L. Sammartino_

Honorable Janis L. Sammartino
United States District Judge

**20**

- 1 -

1  CHRISTOPHER M. YOUNG (Bar No. 163319)    MATT VALENTI (Bar No. 253978)
   KATHERINE J. LARSON (Bar No. 259556)     **ANTICANCER, INC.**
2  **DLA PIPER LLP (US)**                   7917 Ostrow Street
   401 B Street, Suite 1700                 San Diego, CA 92111
3  San Diego, CA  92101-4297                Tel: 858.654.2555
   Tel:  619.699.2700                       Fax: 858.268.4175
4  Fax:  619.699.2701
   E-mail: christopher.young@dlapiper.com   Attorney for Plaintiff ANTICANCER,
5  E-mail: katherine.larson@dlapiper.com    INC.

6  RICHARD DE BODO (Bar No. 128199)
   OLGA BERSON (Bar No. 227763)
7  **DLA PIPER LLP (US)**
   2000 Avenue of the Stars, Suite 400, North Tower
8  Los Angeles, CA 90067
   Tel:  310.595.3000
9  Fax:  310.595-3300
   E-mail: richard.debodo@dlapiper.com
10 E-mail: olga.berson@dlapiper.com

11 Attorneys for Defendant PFIZER INC.

12

13                        UNITED STATES DISTRICT COURT

14                      SOUTHERN DISTRICT OF CALIFORNIA

15

16 ANTICANCER, INC., a California
   Corporation,
17                                          CASE NO.  11 CV 0107 JLS (RBB)
                    Plaintiff,
18                                          **JOINT MOTION AND STIPULATION OF**
            v.                              **VOLUNTARY DISMISSAL, WITH**
19                                          **PREJUDICE**
   PFIZER INC., a Delaware Corporation;
20 CROWN BIOSCIENCE, INC., a                District Judge:  Hon. Janis L. Sammartino
   California Corporation; and DOES 1 - 10, Magistrate Judge: Ruben B. Brooks
21                                          Courtroom:  6
                    Defendants.
22

23

24

25

26

27

28

EAST\49980322.1
                                      **21**

1    Plaintiff AntiCancer, Inc. ("AntiCancer") and Defendant Pfizer Inc. ("Pfizer") by and

2    through their respective counsel of record herein, hereby stipulate and move the Court for an

3    Order approving the voluntary dismissal of the above matter pursuant to Federal Rule of Civil

4    Procedure 41(a)(1)(ii).

5    WHEREAS on November 9, 2011, AntiCancer filed the First Amended Complaint in this

6    action, asserting claims against Pfizer for Breach of Contract, Breach of Implied Covenant of

7    Good Faith and Fair Dealing, and Unjust Enrichment (collectively, "Contract Claims"), and

8    claims for Infringement of '159 Patent and Infringement of '812 Patent.

9    WHEREAS, on November 23, 2011, Pfizer answered the First Amended Complaint and

10   asserted counterclaims against AntiCancer for Declaratory Judgment of Non Infringement and

11   Declaratory Judgment of Invalidity of the Patents In Suit.

12   WHEREAS on March 12, 2012, Pfizer filed a Motion for Summary Judgment of

13   Noninfringement Based on Defective Infringement Contentions.

14   WHEREAS on May 3, 2012, the Court ordered supplemental briefing on the issue of

15   whether the Court could/should construe Pfizer's motion for summary judgment instead as a

16   motion to strike AntiCancer's preliminary infringement contentions and to compel AntiCancer to

17   supplement its preliminary infringement contentions with more detailed information in

18   compliance with Patent Local Rule 3.1.

19   WHEREAS on June 1, 2012, the Court issued an Order granting summary judgment in

20   favor of Pfizer on AntiCancer's claim for infringement of the '812 patent, and finding

21   AntiCancer's preliminary infringement contentions regarding the '159 and '337 patents

22   insufficient to comply with Patent Local Rule 3.1;

23   WHEREAS the Court's June 1, 2012 Order granted AntiCancer an opportunity to amend

24   its preliminary infringement contentions with respect to the '159 patent and '337 patent claims on

25   the condition that AntiCancer reimburse Pfizer for the reasonable costs and attorneys' fees they

26   incurred in bringing the motion for summary judgment;

27   WHEREAS on June 22, 2012, AntiCancer filed a Second Amended Complaint asserting

28   the Contract Claims and claims for Infringement of '159 Patent and Infringement of '337 Patent.

1    WHEREAS on June 29, 2012, AntiCancer filed a Notice of Objection to the Court's

2 conditions for amendment;

3    WHEREAS on July 2, 2012, the Court entered summary judgment in favor of Defendants

4 on the claims for Infringement of '159 Patent and Infringement of '337 Patent asserted in

5 AntiCancer's Second Amended Complaint;

6    WHEREAS on July 30, 2012, the Parties appeared before Judge Brooks for a settlement

7 conference and have reached a settlement in this action and agreed to the dismissal, with

8 prejudice, of the remaining Contract Claims pending before the Court;

9    NOW THEREFORE, IT IS STIPULATED AND AGREED AS FOLLOWS:

10    1.    AntiCancer's Second Amended Complaint is dismissed, WITH PREJUDICE.

11    2.    Each Party shall bear their respective attorney's fees and costs of suit.

12                                          Respectfully Submitted,

13 Dated:  September 26, , 2012

14                                          DLA PIPER LLP (US)

15                                          By /s/Christopher M. Young

16                                              CHRISTOPHER M. YOUNG
                                               Attorneys for Defendant
17                                              PFIZER INC.

18 Dated:  September 26, 2012

19                                          ANTICANCER, INC.

20                                          By /s/Matt Valenti

21                                              MATT VALENTI
                                               Attorneys for Plaintiff
                                               ANTICANCER, INC.
22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 401 B Street, Suite 1700, San Diego, California 92101-4297. On September 26, 2012, I served the within document(s):

**JOINT MOTION AND STIPULATION OF VOLUNTARY DISMISSAL, WITH PREJUDICE**

☐     by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, for delivery via overnight/express service carrier at San Diego, California addressed as set forth below.

☐     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set forth below.

☐     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below on this date before the close of normal business hours.

☐     by transmitting via electronic mail a copy of the document(s) listed above in .pdf format, with no transmission errors reported, to the person(s) at the e-mail address(es) denoted on the Electronic Mail notice list.

☒     I hereby certify that on the below date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

I declare that I am employed in the office of a member of the Bar of or permitted to practice before this Court at whose direction the service was made.

Executed on September 26, 2012, at San Diego, California.

_Bonnie K. Lott_
Bonnie K. Lott

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

ANTICANCER, INC., a California corporation,

                    Plaintiff,

   vs.

PFIZER INC., a Delaware corporation, et al.,

                    Defendants.

CASE NO. 11CV107 JLS (RBB)

**ORDER GRANTING JOINT MOTION AND STIPULATION OF VOLUNTARY DISMISSAL, WITH PREJUDICE**

(ECF No. 85)

     Presently before the Court is the parties' Joint Motion and Stipulation of Voluntary Dismissal, With Prejudice. (ECF No. 85). The parties having reached a settlement of this action,

**IT IS HEREBY ORDERED**:

     1.     AntiCancer's Second Amended Complaint is dismissed, **WITH PREJUDICE**.

     2.     Each party shall bear their respective attorney's fees and costs of suit.

**IT IS SO ORDERED.**

DATED: September 28, 2012

_Janis L. Sammartino_
Honorable Janis L. Sammartino
United States District Judge

**25**

11cv107